UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 05-11738-EFH

Brendan M. McGUINNESS, PRO SE,
    Plaintiff,

vs.

James BENDER, et al.,
    Defendants.

---

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT.

## Introduction.

Plaintiff brings this memorandum of law in support of his Motion for Partial Summary Judgment. Since the Department of Correction ("DOC") defendants are the only ones who have been served and are represented by counsel at present, plaintiff will confine his motion to those issues raised against the DOC defendants in the Amended Complaint---all of which require the Court to interpret the relevant law rather than arbitrate over questions of fact.

## Pertinent Facts.

At all times relevant to the events discussed below, plaintiff was a pretrial detainee. He was arrested in the county of Norfolk on March 8, 2004, and he was not sentenced until September 28, 2005. For this eighteen (18) month period, certain officials at the Norfolk County Correctional Facility ("NCCF") in Dedham transferred plaintiff to other counties on three separate occasions; on two other occasions they transferred him to DOC custody.

In Massachusetts, M.G.L. c.276, sec. 52A, is the only law which provides

a procedure for effecting such transfers. That law allows the commissioner of correction to transfer pretrial detainees who have previously been sentenced to serve time in a correctional institution (for a felony) to a correctional institution pending trial.

Plaintiff was in DOC custody as a pretrial detainee on two occasions, one of which lasted from September 29, 2004, until March 7, 2005 (hereafter "the first time") and the other time ("the second time") from July 8, 2005, until September 28, 2005. See Plaintiff's Affidavit, par. 5-6 (which is detailed and goes beyond what is necessary to the issue at hand). Despite the fact that the DOC houses so-called "52A detainees" at almost all of its facilities state-wide (id. at par. 3 ), i.e. at Level 4 and 5 (medium-security) institutions, plaintiff was transferred directly to Walpole (Level 6, maximum-security) and later to the Souza-Baranowski Correctional Center ("SBCC") in Shirley. The decision of whether to send plaintiff to a Level 4 (contact visits, unlimited out-of-cell time, canteen privileges, etc.)(id., par. 4 ) or Level 6 (totally punitive conditions of confinement) was made by somebody without any written policy or regulations for guidance. The practice of confining detainees at Walpole is so novel that there are no laws to regulate the DOC's whimsical decisions to send Peter here and Paul over there. No classification or proper assessment takes place.

While at Walpole on October 17, 2004, plaintiff was involved in a fight with a convicted felon. From there he was transferred to the other maximum-security prison in Massachusetts, SBCC, and placed in the Special Management Unit ("SMU") to await action (see 103 CMR 430.19) on the disciplinary process. On January 30, 2005, while in SBCC's SMU and out of his cell in handcuffs to receive medication, plaintiff was involved in another altercation with two

guards. Both disciplinary reports ("D-Reports") would ultimately be referred to a special hearing officer for the Departmental Disciplinary Unit ("DDU") at Walpole. See 103 CMR 430.25( )( )(allowing for "sentences" of up to ten [10] years). The first D-Report, however, was not issued to plaintiff until late-February.

On March 7, 2005, plaintiff went to Concord District Court to clear up an outstanding warrant for money he owed. Plaintiff's Affidavit, par. 6 . The judge let plaintiff go to Billerica jail at $30 per diam to pay the fine; he remained there until March 26, 2005. In anticipation of leaving Billerica and returning to SBCC or DOC custody in general, plaintiff wrote several letters. To officials at NCCF he explained the legal problems he asserts here; he also did this to defendant Bender. EXHIBIT A, p. 15. In this letter, plaintiff told Bender when the Billerica sentence would end; he explicitly addressed the very issues now before the Court, utterly exhausting them.

Nevertheless, when plaintiff was picked up by Norfolk county on March 26, 2005, he was taken to Plymouth county (an alternative he recommended in his letter to defendant Riley---see EXHIBIT A, p. 10); the DOC made no attempt at all to adjudicate the D-Reports which remained outstanding when he left DOC custody on March 7, 2005. EXHIBIT A, pp. 15-17 (letter to Bender). Although the defendants knew where plaintiff was, or could have found out with a phone call to Norfolk county, they failed to exercise due diligence in pushing the disciplinary matter ahead. Plaintiff stopped receiving his weekly notice that the process was pending, etc.

Four months later, the NCCF defendants moved plaintiff from Plymouth to SBCC. Plaintiff's Affidavit, par. 7 . On July 8, 2005, when plaintiff was returned to SBCC, the defendants (viz. Russo) placed him back into the SMU; the two old D-Reports were dredged up and plaintiff (still a presumedly innocent

pretrial detainee) was ultimately sentenced to five (5) years in the DDU. Id., par. 8 . Of course plaintiff appealed. See EXHIBIT A, pp. 13-14 and attachments. Bender would not bend. Id., p. 23. It should be noted that none of the alleged victims of the alleged assaults received serious injury. Plaintiff's Affidavit, par. 5 .

**Argument.**

**1.) The Transfer to Walpole State Prison.**

This practice of placing pretrial detainees at Walpole, whether or not they have served "state" time before or not, is quite new. Plaintiff's Affidavit, par. 3 . The defendants will look to M.G.L. c. 276, sec. 52A; they will point out the clause dealing with ex-offenders and try to persuade the Court that Walpole is a "correctional institution of the commonwealth" and therefore plaintiff may be placed there pending trial. But the clause dealing with ex-offenders was placed into sec. 52A over thirty years ago. The DOC's fresh take on the matter is customary with them. See, e.g., Connery v. Commissioner of Correction, 33 Mass. App. Ct. 253, 257 (1992)(the Appeals Court taking judicial notice of the DOC's "sudden awareness of the correct mandate to be drawn from their view of the plain language of" a different statute, pointing out further that Connery's view and interpretation had been the DOC commissioner's until only recently).

Confinement at the prison in Walpole has been declared by the Massachusetts Supreme Judicial Court (SJC) an "infamous punishment." Brown v. Commissioner of Correction, 394 Mass. 89, 91-94 (1985), reaffirming Jones v. Robbins, 8 Gray 329, 349 (1857)(stating that confinement in the State prison "for any term of time ... is an infamous punishment and cannot be imposed without both indictment and trial by jury")(emphasis added). Cf. Article XII, Massachusetts Declaration

of Rights (forbidding the legislature from enacting any law that would subject anybody to an "infamous punishment without trial by jury").

Article XII strictly prohibits imposing infamous punishment upon people absent trial by jury (or waiver, of course). Brown explicitly upheld the rule of Jones stating that State prison is an infamous punishment and cannot occur absent indictment and trial by jury! The DOC is in violation of law so clearly established that it existed before Grant took Richmond. In Brown, the inmate who was placed at Walpole pointed to Jones for the "indictment" aspect of the ruling (he was proceeded against by complaint in the District Court, therefore he was never indicted). The SJC agreed with the inmate there that Jones was applicable and his placement or retention at Walpole was illegal. Plaintiff's claim is just as strong as Brown's was---"both indictment and trial by jury" are prerequisites to Walpole placement; Brown wasn't indicted, plaintiff wasn't afforded a trial.

The statute which the DOC argued allowed the transfer of unindicted Brown to Walpole is M.G.L. c.127, sec. 97. It differs from SEC. 52A only insofar as the inmates to be transferred are sentenced in sec. 97 and are pretrial in sec. 52A. In fact, the commissioner in Brown argued, in pushing for the repudiation of Jones, that the Jones rule should be confined to "accused criminal defendants." Brown, supra at 92. In other words, the position plaintiff forwards at the moment was forwarded by the DOC when it suited their needs.

Is SBCC the State prison? When Jones was decided, Walpole did not exist. The DOC was quick to point this out in Brown; they argued that State prison was much harsher in the 1800s and, therefore, the Jones rule is an anachronism. In squarely rejecting this argument, the SJC stated that what makes Walpole the State prison is not only conditions, but the fact that it is the maximum-security prison in Massachusetts and it houses the most serious and dangerous of

offenders and inmates. Thus the "character of infamy" remains and Walpole is the State prison for purposes of Jones. For the very same reason SBCC is today a State prison. It did not exist when Brown came down, but it is now the only maximum-security prison in the state beside Walpole. It is operated as a Level 6 facility and it is on a par with Walpole in every way. Plaintiff's Affidavit, par. 3 and 4.

For these reasons, the DOC defendants violated art. XII's proscription of infamous punishment of anyone prior to trial. If they are viewing sec. 52A so as to allow for pretrial detainees at Walpole, then (as the Superior Court in Brown noted) the law violates the statute, hence sec. 52A is unconstitutional as applied. Plaintiff is entitled to judgment as a matter of law. He is now a sentenced prisoner; his 5 year sentence to the DDU has stuck with him and he is there to this day. Since it is clear beyond cavil that he was illegally held in maximum-security prior to trial, subjected to infamous punishment, the DDU sanction imposed upon him for alleged misconduct during that period of illegal confinement should be declared null and void. Plaintiff was sentenced on September 28, 2005; he has yet to be classified. He should be returned to population as if a new prisoner.

2.) **Particular Due Process Problems.**

In addition to the fact that the transfer to Walpole and SBCC was unconstitutional, the sanction to the DDU is constitutionally infirm for several other reasons. The incident at Walpole on October 17, 2004, resulted in plaintiff's transfer to SBCC's SMU and his retention there without any action on the charges until March 7, 2005---almost five (5) months. 103 CMR 430.19 does allow for the placement of inmates in segregation to await the disciplinary process, but what took so long? The charges involved a fist fight with a convicted inmate and the

-6-

resulting wrestling match with responding staff. Plaintiff's Affidavit, par. 5 . It was videotaped, witnessed by a score of guards---what was the hold-up? The disciplinary process should have been pretty simple. Awaiting Action status cannot go on indefinitely. "At some point in time, confinement, even with review, becomes unreasonable." Puckett v. Commissioner of Correction, 28 Mass. App. Ct. 448, 451 (1990). In Puckett, 5½ months on such status was declared "unreasonable as a matter of law." Id.

First, plaintiff here is a pretrial detainee. His right to procedural protection should be concomitantly greater than would be Puckett's. Second, plaintiff was not even issued a D-Report until late-February; and it was not until that same time-frame that the DOC finally decided that they would refer plaintiff to the DDU. So by the time they started to move on the issue, on March 7, 2005, plaintiff left custody to an intervening jurisdictional override, i.e. an actual sentence, whereas he had merely been pretrial for a year up until then. See Plaintiff's Affidavit, generally, and EXHIBIT A, passim.

As stated previously in the facts, plaintiff wrote to defendant Bender and told him where he was and when he would be done with that sentence. EXHIBIT A, pp. 15-17. Bender's failure to take steps to continue the disciplinary process is tantamount to a waiver. Plaintiff was no longer sent weekly notices of the on-going nature of the investigation/process. The matter was over.

After four (4) months out of DOC custody, plaintiff was returned to DOC custody, placed in SBCC's SMU, and the old D-Reports were revived. Substantive due process dictates that plaintiff has a right to be heard in a meaningful time and manner. The facts here would not even be constitutional if plaintiff were convicted at the time. Segregation confinement on awaiting action status is "an interim measure destined to be terminated 'at some identifiable point in time'." Puckett, supra at 450-451, quoting Royce v. Commissioner of Correction, 390 Mass.

425, 430 n.9 (1983). See also Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983). By first allowing the so-called investigation to drag out over five months while plaintiff languished in segregation without taking action on the allegations, and then (after he had left DOC custody) taking absolutely no action with an eye toward resolving the matter, the defendants have effectively waived the right to attempt to adjudicate the allegations when plaintiff returned to SBCC after four months away.

Normally, a prisoner attacking a disciplinary decision would first have to show that the deprivation which resulted therefrom was an atypical and significant hardship in relation to the ordinary conditions which attach to life at the institution. Sandin v. Conner, 515 U.S. 472 (1995). But plaintiff was a pretrial detainee; Sandin's rationale does not apply to detainees because they are not serving time, they cannot be subjected to punitive conditions, and if that protection is to mean anything at all, the teachings of Wolff v. McDonnell, 418 U.S. 539 (1974) must control here. Bell v. Wolfish, 441 U.S. 550 (1979) is instructive here. "Bell teaches that punishment cannot be inflicted upon pretrial detainees prior to an adjudication of guilt in accordance with due process of law." Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995), citing Bell, supra at 535-537.

Collazo-Leon stands for the proposition that even presumedly innocent pretrial detainees may be punished for misconduct by prison officials, but that punishment must stay "within appropriate limits." Id. at 318. The detainee in that case received D-Reports for attempting to escape and attempting to bribe a prison guard to help him in return for one million dollars. Id. at 316. The sanction imposed was 90 days in segregation and 6 months loss of visitation and use of the phone. Id. (Ironically, if plaintiff were at NCCF where he should've been, the law limits disciplinary confinement for detainees to 10 days for each

offense. See M.G.L. c. 127, section 41.)

Five (5) years in the DDU for a pretrial detainee is preposterous. The plaintiff was immediately strangled with the inability to progress through the system once sentenced. No classification to determine what would become of him, just like there was no classification when he was a detainee, illegally placed at Walpole. See Plaintiff's Affidavit, par. 3 and 4. Plaintiff's alleged misconduct did not result in serious harm; 5 years was way out of all proportion to the allegations. Id., par. 5.

Collazo-Leon also stands for the proposition that the goal to be served by subjecting detainees to punishment must bear a "reasonable relation" to the severity of the sanction. Id., citing Bell, supra at 538-539. And the sanction may not be excessive in light of the misconduct. Id. But plaintiff here was slapped with a whopping 5 years. His pretrial captors hit him with a sanction prior to his actual service of a sentence; that sanction now carries over to his service of a sentence which did not even exist at the time of the sanction! This is too much.

Finally, as discussed above, confinement at Walpole is an infamous punishment; the SJC has declared that no one may be placed or retained at Walpole if he has not been "both indict[ed] and tri[ed] by a jury." Brown, supra; Jones, supra. As a pretrial detainee, plaintiff was unquestionably subjected to the infamous punishment which is Walpole State Prison; this was illegal because article XXII forbids such punishment absent trial by jury. Ergo, any misconduct complained of from that illegal period of confinement must fail as a matter of law. The DDU is at Walpole. Pretrial detainees cannot be sentenced there by a special hearing officer. Article XXII is clear: trial by jury must precede any infamous punishment.

## CONCLUSION

For the foregoing reasons, this Court should declare the five year sentence to the DDU null and void. Judgment should enter in plaintiff's favor as a matter of law.

**WHEREFORE**, this motion should be allowed for cause shown.

RESPECTFULLY SUBMITTED,

*Brendan M. McGuinness*
Brendan M. McGuinness, PRO SE
S.B.C.C.
P.O. BOX 8000
SHIRLEY, MA 01464-8000

DATE: 2/28/06