UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NO. 05-11738-EFH

Brendan M. McGUINNESS, PRO SE,
    Plaintiff,

vs.

James R. BENDER, et al.,
    Defendants.

AFFIDAVIT OF THE PLAINTIFF,
BRENDAN M. McGUINNESS.

I, Brendan M. McGuinness, the plaintiff in the above-entitled matter, do hereby depose and state as follows:

1.) I am a state prisoner serving a sentence to MCI-Cedar Junction @ Walpole of 3½ years. This sentence's effective date is 3/7/04, therefore it will expire on 9/7/07.

2.) From 3/8/04 until 9/28/05, I was awaiting trial out of Norfolk Superior Court in Dedham. During these eighteen months as a pretrial detainee, I was moved all over the state to county and state correctional facilities by the staff at the Norfolk County Correctional Facility ("NCCF") in Dedham. This affidavit will be confined to the Department of Correction ("DOC") defendants' activities.

3.) On 9/29/04, plaintiff was transferred from NCCF to Walpole State Prison ("Walpole"). I was told by defendant Riley prior to leaving the jail that the DOC had decided that I would go to Walpole rather than Concord or Old Colony or Norfolk, i.e. one of the relatively comfortable institutions in which pretrial detainees are housed by the DOC. I personally know that of all the facilities available to the DOC for housing pretrial detainees, none are worse than Walpole and Souza-Baranowski Correctional Center ("SBCC"), the only two maximum-security prisons in Massachusetts. I was never given a chance to dispute this classification or be heard on the

-1-

matter of where I would be placed pending trial. I state to this Court from personal knowledge that the reason for this is that the DOC has not historically housed pretrial detainees anywhere other than Concord. There are no guidelines, polices or written procedures governing or limiting DOC discretion in such classifications.

4.) I objected vociferously to both the NCCF and the DOC defendants. I was told that my placement at Walpole was authorized by M.G.L. c. 276, sec. 52A. But, as I've said, the difference between Walpole and Concord (for instance) is enormous. The DOC's regulation outlining security levels (see 103 CMR 101.03[1-6]) places the ranking of institutions on a Level 1 through 6, 6 being the most secure. Id., sec. 101.04. Walpole and SBCC are the only two Level 6 facilities. The difference between Walpole and a Level 4 such as Concord is far-reaching; from the time out-of-cell to the availability of library, activities, social visits (non-contact at Walpole; contact at Levels 4 and 5), phone calls and the degree of actual violence encountered on a day to day basis, pretrial detention at Levels 4 or 5 is immeasurably better than Walpole.

5.) On 10/17/04 at Walpole, I got into a fight with one of the many convicted felons at Walpole. Responding staff alleged that I assaulted them when they responded. In reality, I simply refused to submit to restraints while the other guy was still running free. (I have seen a man hacked up in just such a scenario.) For these allegations, I was transferred the next day to SBCC's Special Management Unit ("SMU") to "Await Action/Pending Investigation" ("AA/PI"). I remained there without any action at all until 1/30/05 when, while out of my cell in handcuffs to receive medication, I was involved in another altercation with two guards. Both of these guards received no serious injury.

6.) These two disciplinary reports ("D-Reports") would ultimately be referred to a special hearing officer for possible placement in the Departmental Disciplinary Unit ("DDU"). However, while still on AA/PI status, I went to Concord District Court on 3/7/05 and received a small sentence to the Billerica house of correction. Therefore, I was released from the custody of the DOC because Norfolk county no longer had jurisdiction of me.

7.) On 7/8/05, I was transferred by the NCCF defendants from Plymouth via

NCCF to SBCC. Four months had gone by; while I was at Billerica I wrote several letters to defendant Bender, Riley, et al. I had told Bender when that Billerica sentence was set to end. He never made any effort to regain custody of me; the DOC stopped sending me notices that the investigation was on-going. So when I went to SBCC on 7/8/05 and I was returned to SMU, I wrote to defendant Russo to ask why. She told me in a letter that I would be held to answer for the alleged misconduct from the previous period of pretrial confinement.

8.) I argued that it was unlawful to place pretrial detainees in the DDU; I did this in letters to Bender and Russo. I was still sent before the special hearing officer. I pled guilty to the charges in order to hurry the process up. Once I knew that they were going to put me in DDU, I was resigned to the present litigation. The amount of pretrial detainees in the DDU can be counted on one hand; this new practice is illegal. When I pled guilty to the D-Reports, I did so solely to speed things up. I was sentenced to five (5) years in the DDU. I appealed to the commissioner's designee for DDU affairs, defendant Bender, in order to exhaust available remedies. He denied my appeal and upheld my appeal.

9.) 103 CMR 421.00 et seq. allows for the placement in segregation of inmates who pose a threat to the safety and security of the institution. This is a non-punitive measure which is still used at Walpole to address security matters. I was singled out for punishment; the 5 year sanction was imposed before I was even serving a sentence. On 9/28/05, I was sentenced; the DDU sanction is still being enforced. I am there now. I will be here for my entire sentence absent judicial intervention.

Signed under the pains and penalties of perjury as a true statement of fact this 18th day of January, 2005.

_____
BRENDAN M. McGUINNESS, PRO SE
S.B.C.C.
P.O. BOX 8000
SHIRLEY, MA 01464-8000