UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRENDAN McGUINNESS,                          CIVIL ACTION NO. 05-11738-EFH

      Plaintiff,

      v.

JAMES R. BENDER,
LOIS RUSSO,
MICHAEL D. FARLEY,
JASON J. OLIVER,
DAVID M. SHAW,
JUAN MEZA,
JOHN A. BELAIR, and
JOHN A. FLOWERS,

      Defendants.

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

      Defendants James Bender, Lois Russo, Michael D. Farley, Jason J. Oliver, David M. Shaw, Juan Meza, John A. Belair and John A. Flowers, by counsel, submit this memorandum in opposition to the plaintiff's motion for partial summary judgment, and in support of the defendants' cross-motion for partial summary judgment.

## INTRODUCTION

      This is a *pro se* civil rights action brought by Brendan McGuinness ("McGuinness"), a state prisoner who is currently confined at the Souza Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts. According to Department of Correction records, McGuinness is currently serving a sentence a sentence for unarmed robbery (G.L. c. 265, § 19(b), imposed September 28, 2005 by the Norfolk Superior Court.

McGuinness' allegations in the original and amended complaint concern the period of his pretrial detention in county and state custody. The original complaint (docket entry 2) alleges that Department of Correction officers (defendants Farley, Oliver, Shaw Meza, Belair and Flowers) employed excessive force against McGuinness on January 31, 2005, while McGuinness was awaiting trial at SBCC. The original complaint also names Lois Russo, the Superintendent of SBCC, and James R. Bender, the Deputy Commissioner of Correction.

McGuinness' amended complaint (docket entry 8) is actually a supplemental complaint, since it adds allegations to, rather than supercedes, the original complaint. The amended complaint names three additional defendants, all employed by the Norfolk County Jail and House of Correction; Deputy Superintendent David Riley, Superintendent James Matesanz, and Director of Security Castille ("the Norfolk County defendants").[1] The allegations of the amended complaint concern McGuinness' pretrial detention at Norfolk County and at the Department of Correction. With respect to the Norfolk County defendants, McGuinness challenges his pretrial transfer to await trial at other county facilities and at the Department of Correction (Amended Complaint, Count Three). With respect to the Department of Correction defendants, McGuinness challenges the validity of disciplinary sanctions, in total, a five-year commitment to the Departmental Disciplinary Unit ("DDU"), imposed for offenses he committed while awaiting trial in Department custody. (Amended Complaint, Counts Four, Five, Six and Seven).

McGuinness now moves for partial summary judgment in his favor on the claims asserted in the amended complaint against the Department of Correction defendants.

---

[1] The Norfolk County defendants have not yet been served.

Specifically, he seeks a declaration that the DDU sanctions he received as a pretrial detainee, and for which he continues to serve as a convicted prisoner, were unlawfully imposed. He bases this contention upon the following theories set forth in his summary judgment memorandum:

First, McGuinness asserts that his pretrial detention at SBCC occurred in violation of Article 12 of the Massachusetts Declaration of Rights.[2] McGuinness contends that since his placement at SBCC was unlawful, he should be immune from sanction for his misconduct during his pretrial detention.

Second, McGuinness asserts that the disciplinary process did not comport with due process. He alleges that the length of time between the incidents and the resolution of the disciplinary charges was excessive, during which time he "languished" in punitive conditions, amounting to punishment prior to adjudication of guilt.[3] (This theory is plead in count four of the amended complaint).

Third, he asserts that the 5-year DDU sanctions were unconstitutionally excessive when applied to a pretrial detainee.[4]

Fourth, he asserts that Article 12 of the Massachusetts Declaration of Rights precludes imposing a DDU sanction on a pretrial detainee.[5] He also asserts in count five of the amended complaint that the combination of a DDU sanction and new criminal charges amount to unconstitutional double jeopardy.

---

[2] Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (docket entry 19), at 4-6.
[3] Id., at 6-9.
[4] Id., at 9.
[5] Id., at 9.

Fifth, he asserts in count six of the amended complaint that he was denied a classification upon his sentencing as required by state regulations. He asserts in count seven of the amended complaint that carrying over sanctions imposed during detention to his the period of incarceration under his new sentence violates due process.

For the reasons set forth below, McGuinness' motion for partial summary judgment should be denied, and the DOC defendants' cross-motion for summary judgment should be allowed.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The plaintiff, Brendan McGuinness ("McGuinness") is currently serving his third state sentence of 3 ½ years to 3 ½ years and a day for unarmed robbery (G.L. c. 265, § 19), imposed by the Norfolk Superior Court on September 8, 2005. He had served two prior adult sentences, a "reformatory" or "Concord" sentence for armed robbery (G.L. c. 265, § 17) , and a state sentence for and for assault and battery on a correction officer (G.L. c. 127, § 38B), committed during the course of his state sentence.[6]

2.      Mr. McGuinness' prior institutional history at the Department of Correction has been poor, and has included four Departmental Disciplinary Unit ("DDU") placements.[7] In June 1991, he committed a serious assault on another prisoner, who required 17 sutures in his head. He was placed on DDU status on May 13, 1992 for 18 months due to the assault on a correction officer.[8] He received a two-year DDU sentence on March 22, 1994 for

---

[6] Affidavit of Roland Rheault, ¶ 3. Roland Rheault, has worked for the Department of Correction for over 32 years. He is the Department's county, Federal, Interstate Manager. In this capacity, he oversees the transfer of pretrial detainees and sentenced prisoners between the Department of Correction and other correctional facilities. Affidavit of Roland Rheault, ¶ 1.
[7] Affidavit of Roland Rheault, ¶ 4.
[8] Id.

butting a correction officer in the face, causing serious injuries. He was also prosecuted criminally, resulting in the aforementioned sentence for assault and battery on a correction officer.[9] He received a one-year DDU placement on February 8, 1995 for assaulting a correction officer with urine and feces.[10] He set a fire in his cell causing breathing problems for other inmates. On March 15, 1996, he received his fourth DDU placement of 18 months for having two flat stock-type weapons in his cell. All told, he amassed over 120 disciplinary reports.[11]

3.    McGuinness' horrendous institutional history is well-known to the courts. See, e.g., McGuinness v. DuBois, 891 F.Supp. 25 (D.Mass. 1995) (rejecting challenge to 6-month Departmental Disciplinary Unit sanction for attempting to flush his sweatshirt down his cell toilet), aff'd McGuinness v. DuBois, 1996 U.S. App. Lexis 13338 (1st Cir. 1996); McGuinness v. DuBois, 893 F.2d 2 (D.Mass. 1995) (rejecting challenge to loss of yard time as sanction for additional disciplinary offenses McGuinness committed in the DDU), aff'd McGuinness v. DuBois, 1996 U.S. App. Lexis 13338 (1st Cir. 1996); McGuinness v. DuBois, 1994 U.S. App. Lexis 10677 (1st Cir. 1994) (noting that as of February 1992, McGuinness had "44 disciplinary reports in two years, including six assaults on staff, four violations for possession of a weapon, and two drug-related offenses," and noting that at the time he attempted to flush his sweatshirt, he was in the Departmental Segregation Unit ("DSU") for assaulting a staff member.); McGuinness v. Commonwealth, 424 Mass. 1004) (1997) (rejecting double jeopardy challenge to an indictment for assault and battery on a correction officer on theory the DDU sanction already constitutes punishment.).

---

[9] Id.
[10] Id.
[11] Id.

4.     While awaiting trial on the charges that resulted in his current state incarceration, McGuinness was committed to the Norfolk County Jail. His pretrial commitment was marked by significant disruptive acts. On March 24, 2004, on the pre-trial max unit, McGuinness, threatened officers, attempted to incite other inmates and brandished a weapon.[12] On the same date, McGuinness required a "Code 99" response after he was observed lying face-down in his cell with a white braided cloth around his neck. He was transported to the medical unit, then to Bridgewater State Hospital, where he remained until his discharge on April 20, 2004.[13] McGuinness was held briefly in Bristol County, where on June 6, 2004, he participated in a group disturbance.[14] Returning to Norfolk County custody, McGuinness received disciplinary reports on August 20, 2004 for attempting to steal canteen bags from another inmate, and for possession of contraband.[15]

5.     On August 23, 2004, Norfolk County officials requested that the Norfolk County District Attorney seek McGuinness' removal to await trial in state custody, as

[12] Affidavit of Roland Rheault, ¶ 5, and Exhibit 1, thereto, Norfolk County Sheriff's Office Disciplinary Report 04-03-41. This report documents that McGuinness was speaking loudly, calling the jail control officer a "fucking asshole." Then he called the reporting officer a "fucking asshole." McGuinness made a general statement that he was going to "beat these assholes." The reporting officer called McGuinness over, and McGuinness told him to "fuck off." When McGuinness stood up as the reporting officer approached, McGuinness was wearing rubber gloves and holding a comb. He refused to go to into his cell and stood in an aggressive manner with left hand clinched. Upon a second order to go to his cell, McGuinness went slowly into his cell, and he was locked in. He was restrained through the door and removed from the cell. The reporting officer found a comb in the cell doorway that was altered with a razor blade weaved through it. McGuinness denied the comb was his.
[13] Affidavit of Roland Rheault, ¶ 6, and Exhibit 2, thereto, Norfolk County Sheriff's Office Informational/Incident Report.
[14] Affidavit of Roland Rheault, ¶ 7, and Exhibit 3, thereto, Bristol County Sheriff's Office Disciplinary Report No. 06-058-04. McGuinness ran out of his cell after another inmate opened the cell doors on the top tier. He and several other inmates ran down the stairs and attempted to enter an inmate's cell. He refused to lock into his cell and along with other inmates, yelled, threatened and called on officers in an attempt to cause a riot or an altercation between inmates and officers.
[15] Affidavit of Roland Rheault, ¶ 8, and Exhibits 4 and 5 thereto.

provided by G.L. c. 276, § 52A. On September 9, 2004, the Office of the District Attorney agreed to request that the Commissioner of Correction exercise her discretion to transfer McGuinness to state custody.[16] McGuinness was admitted to MCI-Cedar Junction on September 29, 2004.[17]

6.    On Sunday, October 17, 2004, McGuinness and several other prisoners participated in a group assault on a prisoner in the MCI-Cedar Junction Orientation Unit. McGuinness threw numerous closed-fist punches and shod foot kicks to the victim's upper body, head and face. He then assaulted two responding officers with closed-fist punches to the face.[18] A disciplinary report issued on February 8, 2005. On July 27, 2005, McGuinness plead guilty to disciplinary charges of disobeying an order, lying and insolence; violating and Department rule or regulation; conduct which disrupts; fighting with, assaulting, or threatening another person with any offense person or property; and violating any law. He was sanctioned with 36-month Departmental Disciplinary Unit ("DDU") sanction, with 34 months to serve.[19]

7.    On October 18, 2004, McGuinness received a disciplinary report after an officer discovered a sharpened toothbrush weapon and a homemade heating device in McGuinness' cell. McGuiness plead guilty to the disciplinary charges and received a 15-day isolation sanction.[20] The same day, McGuinness was transferred to the Special Management Unit ("SMU") at the Souza Baranowski Correctional Center.[21]

---

[16] Affidavit of Roland Rheault, ¶ 9, and Exhibit 6 thereto.
[17] Affidavit of Roland Rheault, ¶ 9.
[18] Affidavit of Roland Rheault, ¶ 10, and Exhibit 7, thereto, Disciplinary Report 51097.
[19] Id.
[20] Affidavit of Roland Rheault, ¶ 11, and Exhibit 8, thereto, Disciplinary Report 44460.
[21] Affidavit of Roland Rheault, ¶ 11.

8.      On January 30, 2005, McGuinness assaulted officers Daniel McGinty and Alejandro Santiago who were escorting Nurse Jason Kavanaugh on medication rounds in the SMU. Responding correction officers placed McGuinness in leg irons and escorted him to L-3, cell #2, where he was placed on 15-minute watch. A disciplinary report issued on the same day. On July 27, 2005, McGuinness plead guilty to disciplinary charges of violating any Department of Correction rule or regulation; conduct which disrupts; fighting with, assaulting, or threatening another person with any offense against person or property; violating any law; and attempting to commit any offense. McGuinness received a 24-month DDU sanction, with 22 months to serve. Additionally, a criminal complaint entered against him in the Clinton District Court.[22]

9.      On January 31, 2005, after McGuinness was observed to be lying under his bed and unresponsive, an extraction team entered McGuinness' cell, removed a ligature from his neck, and removed him from under the bed. He was taken to the health services unit where he received stitches for a laceration above his eye, then placed in restraints on 15-minute watch status.[23] This is the incident that gave rise to the excessive force allegations in McGuinness' original complaint.

10.     On March 7, 2005, McGuinness was transported to the Concord District Court pursuant to a habeas order. McGuinness alleges that the judge ordered him to serve 24 days at the Billerica House of Correction to satisfy an old fine, at a rate of $30 per day of custody.[24] In his motion for partial summary judgment, McGuinness alleges that Norfolk

---

[22] Affidavit of Roland Rheault, ¶ 12, and Exhibit 9, thereto, Disciplinary Report 50624.
[23] Affidavit of Roland Rheault, ¶ 13.
[24] Amended Complaint, ¶ 69; Affidavit of Roland Rheault, ¶ 14.

County then transported him to the Plymouth County Correctional Facility ("PCCF") on March 26, 2005.

11.    McGuinness' record at PCCF includes the following. On June 20, 2005, McGuinness was involved in a fight with five other inmates. Responding officers found a "shank" in the day room, and the unit was slow locking in.[25] On July 7, 2005, McGuinness received a disciplinary report for ripping apart his cell wall light fixture, then taking a threatening stance with broken parts in his hands. McGuinness had indicated that he had a violent history and wanted a transfer back to the Norfolk jail. Apparently, he was unaware that he was already slated for return to Norfolk County. [26] Later the same day in a segregation unit, McGuinness handed an officer a shank and stated that he would tell where he got it if the officer would help him get moved from the facility. In response to the officer's question where the shank was hidden, McGuinness stated, "It was up my ass wrapped in cellophane and toilet paper. I flushed all that down the toilet after I shit." He identified the material as part of the floor drain of the slop sink. [27] On the same date, an inmate who appeared to have been assaulted reported that McGuinness had entered his cell and punched him several times.[28]

12.    McGuiness returned to Norfolk County on July 8, 2005.[29] The same date he was transferred back to SBCC. McGuinness asserts that he refused to go and was dragged to the van.[30] On September 26, 2005, he appeared in court where he plead guilty to his pending

---

[25] Affidavit of Roland Rheault, ¶ 15, and Exhibit 10, thereto, PCCF Disciplinary Report.
[26] Affidavit of Roland Rheault, ¶ 15, and Exhibits 11 to 14, thereto, PCCF Informational Reports.
[27] Affidavit of Roland Rheault, ¶ 15, and Exhibit 15, thereto, PCCF Informational Report.
[28] Affidavit of Roland Rheault, ¶ 15, and Exhibit 16, thereto, PCCF Disciplinary Report.
[29] Amended Complaint, ¶ 76.
[30] Amended Complaint, ¶¶ 77, 83.

state charges. He was sentenced to 3 ½ years to 3 ½ years and a day.[31] On September 28, 2005, he was received by SBCC as a sentenced prisoner.

13.    McGuinness is currently serving his DDU sanctions in the Special Management Unit ("SMU") at SBCC. The DDU building, located at MCI-Cedar Junction, has been closed since the end of July 2005 for extensive repairs to the door locking mechanisms.[32]

## ARGUMENT

I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE McGUINNESS HAS FAILED TO DEMONSTRATE COMPLIANCE WITH THE EXHAUSTION REQUIREMENTS OF THE FEDERAL AND STATE PRISON LITIGATION REFORM ACTS.

As a preliminary matter, McGuinness' amended complaint should be dismissed because he failed to assert and demonstrate compliance with the administrative exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and its state analogue, G.L. c. 127, § 38F, to the extent he invokes the Court's supplemental jurisdiction to adjudicate state law claims. The Federal statute bars civil claims by prisoners under 42 U.S.C. § 1983 or claims under any other Federal statute "until such administrative remedies are exhausted." See Casanova v. DuBois, 289 F.3d 142, 147 (1st Cir. 2002) (holding that the exhaustion requirement is mandatory). Before proceeding in court, the record must affirmatively demonstrate that the plaintiff has pursued to final resolution any available remedy or procedure that might address his claim or issue. Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998), cert. denied, 525 U.S. 833 (1998). The state statute, G.L. c. 127, § 38F, provides that "[a]n inmate shall not file any claims that may be the subject of a

---

[31] Amended Complaint, ¶ 81; Affidavit of Roland Rheault, ¶ 16.
[32] Affidavit of Roland Rheault, ¶ 16.

grievance under section 38E unless the inmates has exhausted the administrative remedy established pursuant to said section 38E." Ryan v. Pepe, 2006 Mass. App. LEXIS 356, __ Mass.App.Ct. __ (2006).

At bar, McGuinness' state law challenges, including his challenges to the lawfulness of his pretrial detention at MCI-Cedar Junction and SBCC under Article 12 of the Massachusetts Declaration of Rights and his challenge to the denial of a classification review while under DDU sanction, are subject to the state law exhaustion requirement. These claims must be dismissed because he has failed to assert and demonstrate compliance with the Department's administrative grievance process. See Ryan v. Pepe, 2006 Mass. App. LEXIS 356, __ Mass.App.Ct. at __ (holding that a prisoner's claim of excessive time in segregation on awaiting action status must be dismissed for failure to comply with the state and federal exhaustion requirements).

II.    BECAUSE McGUINNESS' PRETRIAL CONFINEMENT AT THE SOUZA BARANOWSKI CORRECTIONAL CENTER DID NOT CONSTITUTE "PUNISHMENT" WITHIN THE MEANING OF ARTICLE 12 OF THE DECLARATION OF RIGHTS, HE WAS PROPERLY DISCIPLINED FOR OFFENSES HE COMMITTED AS A PRETRIAL DETAINEE.

McGuinness asserts that because his pretrial detention at the Department of Correction was allegedly unlawful, he cannot be subjected to discipline for offenses he committed while so detained. This contention is patently unreasonable. The lawfulness of McGuinness' pretrial detention at a maximum-security facility and the validity of the punishment imposed by the Department of Correction for offenses he admittedly committed therein are independent issues. Cf. Haverty v. Commissioner of Correction, 440 Mass. 1, 12-13 (2003) (holding that the administrative decision that resulted in the plaintiffs' wrongful confinement in the East Wing units of MCI-Cedar Junction was unrelated to the

Commissioner's decision to offer fewer East Wing inmates opportunities to earn good time credits). Pretrial detainees may be subjected to disciplinary measures for infractions of prison regulations that address concerns of safety and security. Collazo-Leon v. United States Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995). Holding McGuinness immune from discipline, even if his confinement at maximum security were later held invalid, would undermine the compelling governmental interest of prison safety and security that a disciplinary system is intended to foster. See Commonwealth v. Forte, 423 Mass. 672, 676 (1996) ("prison authorities have a right to make changes in the conditions of a wrongdoer's confinement in order to maintain institutional security and order; that prompt discipline within the penal system brings home to the wrongdoer and other inmates the importance of good conduct...").

In any event, McGuinness' disciplinary challenge based upon the status of his incarceration must fail because McGuinness' "removal" from county custody to await trial in state custody was lawful. The removal of a pretrial detainee from county custody to await trial in state custody is governed by G.L. c. 276, § 52A, which provides in pertinent part:

> Persons held in jail for trial may, with the approval of the district attorney, and shall, by order of a justice of the superior court, be removed by the commissioner of correction to a jail in another county, and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail whence they were removed. *In addition, such persons, if they have been previously incarcerated in a correctional institution of the commonwealth under sentence for a felony, may, with the approval of the district attorney, be removed by the commissioner of correction to a correctional institution of the commonwealth,* and said commissioner shall, at the request of the district attorney, cause them to be returned to the jail where they were awaiting trial. (Emphasis added)

The removal of a pretrial detainee from county to state custody occurs solely at the discretion of the Commissioner of Correction. Commissioner of Correction v. Superior

<u>Court</u>, 446 Mass. 123 (2006) (holding that § 52A does not authorize a justice of the superior court to order the removal of county detainees to state custody).

McGuinness asserts that the Commissioner's statutory authority to effect a detainee's removal to a "correctional institution of the commonwealth" is circumscribed by Article 12 of the Massachusetts Declaration of Rights, which he contends precluded his pretrial detention at SBCC. Article 12 provides in pertinent part:

> No subject shall be held to answer for any crimes or offense, until the same is fully and plainly, substantially and formally, described to him...

> And the legislature shall not make any law, that shall subject any person to a capital or infamous *punishment*, excepting for the government of the army and navy, without trial by jury. (Emphasis added)

McGuinness relies on <u>Brown v. Commissioner of Correction</u>, 394 Mass. 89 (1985), which holds that Article 12 precludes the confinement at the state prison of a *convicted* prisoner who has neither been indicted nor has waived indictment. <u>Brown</u> follows the decision in <u>Jones v. Robbins</u>, 74 Mass. 329 (1857), which interprets Article 12 as mandating that "punishment in the state prison is an infamous punishment, and cannot be imposed without both indictment and trial by jury." <u>Brown v. Commissioner of Correction</u>, 394 Mass. at 92 (quoting <u>Jones v. Robbins</u>, 74 Mass. at 349). Section 1(o) of G.L. c. 125 defines the term "State Prison" to mean the "Massachusetts Correctional Institution, Cedar Junction."[33] McGuinness argues that because Article 12 precludes state prison confinement of a prisoner who has not been indicted and convicted by a jury, it must also preclude pretrial detention at the state prison under any circumstance. He argues further that because SBCC and MCI-Cedar Junction are both maximum-security correctional institutions, the

---

[33] A crime punishable by imprisonment in the state prison is defined as a felony by G.L. c. 274, § 1.

import of the <u>Brown</u> decision should extend to SBCC, even though the Massachusetts Legislature has not seen fit to extend the "state prison" designation to SBCC.[34]

A distinction of constitutional significance lies between committing a convicted felon to the state prison as a criminal sanction versus detaining an indicted criminal defendant, and one who necessarily has served prior felony time in the state correctional system, in the state prison to await trial. The Commonwealth's interests furthered by a criminal commitment include deterrence, incapacitation, rehabilitation and punishment. <u>See</u> <u>Commonwealth v. McIntyre</u>, 436 Mass. 829, 833 (2002).[35] In contrast, the Commonwealth's interests warranting pretrial detention include guaranteeing a defendant's presence at trial, <u>Querubin v. Commonwealth</u>, 440 Mass. 108, 114 (2003), and "assur[ing] compliance with its laws and to preserve the integrity of the judicial process by exacting obedience with its lawful orders." <u>Paquette v. Commonwealth</u>, 440 Mass. 121, 129-130 (2003). Punishment, of course, is not a proper function of pretrial detention. <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-537 (1979); <u>Richardson v. Sheriff of Middlesex County</u>, 407 Mass. 455, 461 (1990). Therefore, "[i]n evaluating the constitutionality of conditions or restrictions of

---

[34] Whether Article 12 prohibits pretrial detention at MCI-Cedar Junction or SBCC is a state constitutional issue of first impression currently pending before the Supreme Judicial Court in <u>MacDougall v. Commonwealth</u>, SJC-09509. Inmate Mark MacDougall, who also was transferred from Norfolk County pursuant to G.L. c. 276, § 52A to await trial in state custody, requested the superior court justice presiding over his criminal case to order him returned to the jail. After the judge denied his request, MacDougall filed a *pro se* petition for extraordinary relief pursuant to G.L. c. 211, § 3. A single justice of the Supreme Judicial Court denied the motion on May 17, 2005, and MacDougall appealed to the full bench of the Supreme Judicial Court. The case was entered in the Supreme Judicial Court on June 2, 2005. The Commissioner of Correction, who is not a party to the criminal case, but who has a compelling interest in this issue, has filed an amicus brief.

[35] Hence, a prisoner who has been committed to serve a state prison sentence may be classified to any Department of Correction facility at the Commissioner's discretion. <u>See</u> <u>Jackson v. Commissioner of Correction</u>, 388 Mass. 700, 703 (1983) (The decision where to place prisoners within the correctional system is simply a matter of administrative discretion invoked for varied reasons such as security, convenience or rehabilitation.)

pretrial detention that implicate only the protection against deprivation of liberty without due process of law, ... the proper inquiry is whether those conditions amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. at 535. In this regard, it is critical to acknowledge that "effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." Bell v. Wolfish, 441 U.S. at 540.[36]

Conditions of pretrial detention that are reasonably calculated to achieve the governmental purpose of pretrial detention do not amount to *punishment* in the constitutional sense. See O'Connor v. Huard, 117 F.3d 12, 16 (1st Cir. 1997) (The government may impose administrative restrictions and conditions upon a pretrial detainee that effectuate his detention and maintain security and order in the detention facility); Cf. Commonwealth v. Forte, 423 Mass. 672, 677-678 (1996) (prisoner failed to demonstrate that DDU conditions were so extreme in purpose or effect to be equivalent to a criminal penalty triggering double jeopardy).[37] Even a restriction or condition viewed as having a

_____

[36] "The Government also has legitimate interests that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial. For example, the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees. Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell v. Wolfish, 441 U.S. at 540.

[37] "In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[such] considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in

punitive effect on a pretrial detainee is constitutional if it furthers a legitimate governmental interest. Collazo-Leon v. United States Bureau of Prisons, 51 F.3d at 318. "It cannot be doubted that the department has a compelling interest in ensuring the safety of its staff and its inmates and the integrity of its institutions." Rasheed v. Commissioner of Correction, SJC-09617, __ Mass. ___, ___ (2006).

In an appropriate case, the level of restriction necessary to effect secure pretrial detention may be no less than maximum-security. For example, the pretrial detention of a defendant at MCI-Cedar Junction to await trial on charges of a murder committed during his prior incarceration was authorized by G.L. c. 276, § 52A, and did not contravene the Double Jeopardy prohibition because it did not amount to punishment. Commonwealth v. Bloom, 53 Mass. App. Ct. 476, 478-479 (2002), further app. rev. den. 435 Mass. 1109 (2002). While serving a sentence at MCI-Cedar Junction, Bloom killed another prisoner and was indicted for murder in the first degree. The Department of Correction imposed a DDU sanction for Bloom's violation of prison rules. When his underlying criminal sentence expired, Bloom was transferred directly to await trial in a segregation unit at MCI-Cedar Junction. Bloom appealed his second-degree murder conviction on the ground that his continued pretrial detention at MCI-Cedar Junction following the completion of his previous state prison sentence violated principles of double jeopardy. Commonwealth v. Bloom, 53 Mass. App. Ct. at 477. The Appeals Court affirmed the judgment:

> [T]he defendant has provided no basis on the present record to establish that his pretrial detention at MCI, Cedar Junction, was anything other than as authorized by G. L. c. 276, § 52A. Moreover, the defendant has provided no authority for his argument that jeopardy should attach to his continued pretrial detention at the correctional facility. ... There is nothing in the present case to distinguish, for

such matters."" Bell v. Wolfish, 441 U.S. at 540, n. 23 (quoting Pell v. Procunier, 417 U.S. 817, 827 (1974).

purposes of double jeopardy, the defendant's pretrial detention from any other situation in which a defendant is held in custody while awaiting trial.

Id. at 478-479.

Similarly, McGuinness's pretrial detention at the state prison cannot be deemed "punishment" within the ambit of Article 12. Rather, McGuinness' dismal record of extremely violent and disruptive behavior during his prior state incarcerations and while awaiting trial in county and state custody belies any assertion that pretrial confinement at maximum security was imposed for the constitutionally impermissible purpose of punishment. McGuinness' record during his earlier state incarceration included numerous disciplinary reports, plus additional charges and a criminal conviction for committing assault and battery on a correction officer. While in Norfolk County custody as a pretrial detainee, he refused orders, threatened officers, attempted to incite other inmates, and brandished weapons. In Bristol County custody, he participated in a group disturbance, apparently intended to attack another inmate. After returning to Norfolk County custody, he received disciplinary reports for attempting to steal canteen items from another inmate. Following his transfer to state custody under G.L. c. 276, § 52A, McGuinness participated in a group assault on another inmate at MCI-Cedar Junction and assaulted the responding officers. He sharpened a toothbrush into a weapon. He assaulted two officers at SBCC, precipitating yet another criminal complaint. Transfer to Plymouth County afforded McGuinness a second chance to demonstrate that he was capable awaiting trial in county custody. However, McGuinness engaged in a fight with other inmates, hid a weapon in his cell, and destroyed his light fixture to create new weapon parts. McGuinness readily admitted that he would continue to wreck havoc to force his return to Norfolk County. By his own actions, McGuinness has made evident that his removal under § 52A to await trial at the highest

level of security was necessary and proper to further the Commonwealth's legitimate interests in securing his presence at trial, exacting obedience with its laws, and maintaining the safety and security within the facilities of the county and state correctional systems. Accordingly, McGuinness' challenge to disciplinary sanctions imposed during his pretrial confinement at SBCC should be rejected.

II.     AWAITING ACTION PENDING RESOLUTION OF THE DISCIPLINARY CHARGES NEITHER DEPRIVED McGUINNESS OF DUE PROCESS NOR CONSTITUTED PUNISHMENT PRIOR TO THE ADJUDICATION OF GUILT.

McGuinness' asserts that the disciplinary process did not comport with due process because of an excessive amount of time between the disciplinary charges and the imposition of the sanction, thereby amounting to punishment prior to adjudication of guilt. McGuinness' claim is not supported by the record. Disciplinary Report 51097 issued on February 8, 2005, charging with McGuinness with participating in a group assault of another MCI-Cedar Junction inmate and with assaulting responding officers on October 17, 2004. Given that this incident involved numerous inmates, an investigation period of four months between the event and the time of issuance is reasonable.

Disciplinary Report 50625 issued after McGuinness assaulted two officers at SBCC on January 30, 2005. McGuinness was outside of Department of Correction custody for the four month period between March 7 and July 8, 2005. Upon his return to state custody, McGuinness plead guilty to both reports on July 27, 2005. He received DDU sanctions of 36 months, with 34 months to serve, on the former, and 24 months, with 22 months to serve, on the latter. The facts that he plead guilty and received credit for awaiting action time belies his assertion of due process violations. Therefore, count four of the amended complaint must be dismissed.

III.    IMPOSING DEPARTMENTAL DISCIPLINARY UNIT SANCTIONS FOR
        EXTREMELY SERIOUS OFFENSES COMMITTED DURING PRETRIAL
        DETENTION DOES NOT AMOUNT TO UNLAWFUL PUNISHMENT UNDER
        THE FOURTEENTH AMENDMENT OR UNDER ARTICLE 12.

A pretrial detainee has a Fourteenth Amendment right to be free from punishment prior to conviction. Suprenant v. Rivas, 424 F.3d 5, 13 (1st Cir. 2005), citing Bell v. Wolfish, 441 U.S. 520 (1979). While a pretrial detainee may be disciplined for a specific institutional infraction committed during the period of his detention, the discipline imposed must be roughly proportionate to the gravity of the infraction. Id., citing Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st Cir. 1995). An arbitrary, or disproportionate sanction, or one that furthers no legitimate penological objective, constitutes punishment (and, thus, is proscribed by the Fourteenth Amendment). See Bell, 441 U.S. at 538-39.

The record reflects that the DDU sanctions are reasonably proportional to the extremely serious nature of the offenses; (1) 36 months for participating in a group assault on another prisoner and assaulting responding correction officer, and (2) 24 months for assaulting corrections officers escorting a nurse during medication rounds. McGuinness has already been convicted criminally of assault and battery on a correction officer. His record of behavior is horrendous. Moreover, the magnitude of his DDU sanctions are consistent with the sanctions imposed during his earlier incarcerations: 18 months for the 1991 assault of a correction officer; 24 months for the 1994 assault of a correction officer; 12 months for the 1995 assault of a correction officer with urine and feces; and 18 months for the 1996 weapon posession.

McGuinness' DDU confinement is reasonably calculated to serve two permissible purposes, a punitive purpose and also the purpose of deterring misconduct by other inmates. Commonwealth v. Forte, 423 Mass. at 677 "[P]rison authorities have a right to

make changes in the conditions of a wrongdoer's confinement in order to maintain institutional security and order; that prompt discipline within the penal system brings home to the wrongdoer and other inmates the importance of good conduct... Id. at 676. Moreover, the Court should accord "[p]rison administrators . . . wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-22 (1986). Therefore, the defendants are entitled to judgment.[38]

---

[38] The Supreme Judicial Court construes Article 12 to afford due process protection equivalent to that supplied by the Fourteenth Amendment to the United States Constitution. City of Boston v. Keene Corporation, 406 Mass. 301, 308 (1989) (citing Opinion of the Justices, 373 Mass. 883, 885 (1977); Commissioner of Public Health v. Bessie M. Burke Memorial Hospital, 366 Mass. 734, 744 & n.18 (1975)). In prison cases, the Supreme Judicial Court has determined that analysis of Article 12 due process violations requires the same standard as cases arising under the U.S. Constitution. Hudson v. Commissioner of Correction, 46 Mass. App. Ct. 538, 543 (1999). To wit, deprivation of a due process liberty interest occurs in the prison setting if official actions create "an atypical and significant hardship." Hudson, 46 Mass. App. Ct. at 543 (citing Sandin v. Conner, 515 U.S. 472, 480 (1985)). To implicate the due process clause under Article 12, one must first prove that a property or liberty interest is at stake and that the liberty interest is being violated. Smith v. Commissioner of Mental Retardation, 409 Mass. 545, 548-549 (1991). While the Supreme Judicial Court has ruled that Article 12, like the Fourteenth Amendment's due process clause, applies to prison disciplinary proceedings, the Court stated that Article 12 does not require prison proceedings to "involve all constitutional principles applicable to criminal proceedings." Murphy v. Superintendent, Massachusetts Correctional Inst., Cedar Junction, 396 Mass. 830, 833 (1986).

IV.    THE IMPOSITION OF A DEPARTMENTAL DISCIPLINARY UNIT
SANCTION IN CONJUNCTION WITH A CRIMINAL PROSECUTION DOES
NOT CONSTITUTE DOUBLE JEOPARDY; NOR IS THE DEPARTMENT OF
CORRECTION PRECLUDED FROM REQUIRING A CONVICTED PRISONER
TO SERVE A DEPARTMENTAL DISCIPLINARY UNIT SANCTION AFTER
THE IMPOSITION OF HIS CRIMINAL SENTENCE.

McGuinness' asserts that the imposition of a DDU sanction in conjunction with a

criminal prosecution violates the constitutional prescription against double jeopardy. This

claim has been soundly rejected. In Commonwealth v. Forte, 423 Mass. at 671 the

Supreme Judicial Court held that DDU sentences did not bar, on double jeopardy

grounds, the subsequent criminal prosecutions of the defendants for the same offenses.

The Court concluded that confinement in the DDU served two related purposes: a

punitive purpose and also the purpose of deterring misconduct by other inmates. Id., at

677. Accordingly, the Court found "that confinement to the DDU has a remedial

purpose." Id.

> [P]rison authorities have a right to make changes in the conditions of a
> wrongdoer's confinement in order to maintain institutional security and order; that
> prompt discipline within the penal system brings home to the wrongdoer and
> other inmates the importance of good conduct; and that there is no reason why the
> State must make a choice between criminal punishment and institutional
> discipline.

Id., at 676. For the same reason, the maintenance of institutional security and order, the

Department may lawfully require that McGuinness continue to serve his DDU sanction

after the imposition of his unrelated underlying criminal sentence. If held otherwise,

violent detainees could engage in serious rules violations with impunity. Therefore,

counts five and seven of the amended complaint must be dismissed.

V.    A PRISONER SERVING A DDU SANCTION IS NOT ENTITLED TO CLASSIFICATION REVIEWS.

There is no merit to McGuinness' contention that he has been deprived classification reviews while serving his DDU sanction. It is logical that the <u>only</u> placement option for a prisoner serving a DDU sanction is segregation unit. Therefore, count six of the amended complaint should be dismissed.

CONCLUSION

For the aforementioned reason, the plaintiff's motion for partial summary judgment should be DENIED, the defendants' cross-motion for partial summary judgment should be ALLOWED, and counts four through seven of the amended complaint should be DISMISSED.

Dated: April 11, 2006                    Respectfully submitted,

                                         NANCY ANKERS WHITE
                                         Special Asst. Attorney General

                                         /s/ William D. Saltzman
                                         William D. Saltzman, BBO No. 439749
                                         Department of Correction Legal Division
                                         70 Franklin Street, Suite 600
                                         Boston, Massachusetts 02110
                                         (617) 727-3300, Ext. 154
                                         wdsaltzman@doc.state.ma.us

CERTIFICATE OF SERVICE

I hereby certify that this memorandum of law, and the accompanying affidavit of Roland Rheault, along with the exhibits to thereto, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 11, 2006.

Dated: April 11, 2006                    /s/ William D. Saltzman
                                         William D. Saltzman

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRENDAN McGUINNESS,                          CIVIL ACTION NO. 05-11738-EFH

      Plaintiff,

      v.

JAMES R. BENDER,
LOIS RUSSO,
MICHAEL D. FARLEY,
JASON J. OLIVER,
DAVID M. SHAW,
JUAN MEZA,
JOHN A. BELAIR, and
JOHN A. FLOWERS,

      Defendants.

<u>AFFIDAVIT OF ROLAND RHEAULT</u>

I, Roland Rheault, hereby depose and say:

1.      I have been an employee of the Department of Correction for over 32 years. I am the Department's county, Federal, Interstate Manager, and in this capacity, I oversee the transfer of pretrial detainees and sentenced prisoners between the Department of Correction and other correctional facilities.

2.      The information contained in this affidavit is based upon my personal knowledge and upon my review of the attached official records, and is true and complete to the best of my knowledge.

3.      I am familiar with the plaintiff, Brendan McGuinness. Mr. McGuinness is currently serving his third state sentence of 3 ½ years to 3 ½ years and a day for unarmed robbery (G.L. c. 265, § 19), imposed by the Norfolk Superior Court on September 8, 2005. He had served two prior adult sentences, a "reformatory" or "Concord" sentence for armed

robbery (G.L. c. 265, § 17), and a state sentence for and for assault and battery on a correction officer (G.L. c. 127, § 38B), committed during the course of his state sentence.

4.    Mr. McGuinness' prior institutional history at the Department of Correction has been poor, and has included four Departmental Disciplinary Unit ("DDU") placements. In June 1991, he committed a serious assault on another prisoner, who required 17 sutures in his head. He was placed on DDU status on May 13, 1992 for 18 months due to the assault on a correction officer. He received a two-year DDU sentence on March 22, 1994 for butting a correction officer in the face, causing serious injuries. He was also prosecuted criminally, resulting in the aforementioned sentence for assault and battery on a correction officer. He received a one-year DDU placement on February 8, 1995 for assaulting a correction officer with urine and feces. He set a fire in his cell causing breathing problems for other inmates. On March 15, 1996, he received his fourth DDU placement of 18 months for having two flat stock-type weapons in his cell. All told, he amassed over 120 disciplinary reports.

5.    While awaiting trial on the charges that resulted in his current state incarceration, Mr. McGuinness was committed the Norfolk County Jail. His pretrial commitment was marked by significant disruptive acts. On March 24, 2004, on the pre-trial maximum security unit, Mr. McGuinness, threatened officers, attempted to incite other inmates and brandished a weapon. Exhibit 1 is the Norfolk County Sheriff's Office Disciplinary Report 04-03-41. This report documents that Mr. McGuinness was speaking loudly, calling the jail control officer a "fucking asshole." Then he called the reporting officer a "fucking asshole." Mr. McGuinness made a general statement that he was going to "beat these assholes." The reporting officer called Mr. McGuinness over, and Mr.

McGuinness told him to "fuck off." When Mr. McGuinness stood up as the reporting officer approached, Mr. McGuinness was wearing rubber gloves and was holding a comb. He refused to go to cell and stood in an aggressive manner with left hand clinched and a comb. Upon a second order to go to his cell, Mr. McGuinness went slowly into his cell, and he was locked in. He was restrained through the door and removed from the cell. The reporting officer found a comb in the cell doorway that was altered with a razor blade weaved through it. Mr. McGuinness denied the comb was his.

6.      Exhibit 2 is the Norfolk County Sheriff's Office Informational/Incident Report. This report documents that on the same date, Mr. McGuinness required a "Code 99" response after he was observed lying face-down in his cell with a white braided cloth around his neck. He was transported to the medical unit, then to Bridgewater State Hospital, where he remained until his discharge on April 20, 2004.

7.      Mr. McGuinness was held briefly in Bristol County, where on June 6, 2004, he participated in a group disturbance. Exhibit 3 is the Bristol County Sheriff's Office Disciplinary Report No. 06-058-04. The report documents that Mr. McGuinness ran out of his cell after another inmate opened the cell doors on the top tier. He and several other inmates ran down the stairs and attempted to enter an inmate's cell. He refused to lock into his cell and along with other inmates, yelled, threatened and called on officers in an attempt to cause a riot or an altercation between inmates and officers.

8.      Returning to Norfolk County custody, Mr. McGuinness received disciplinary reports on August 20, 2004 (Exhibits 4 and 5) for attempting to steal canteen bags from another inmates, and for possession of contraband.

9.      On August 23, 2004, Norfolk County officials requested that the Norfolk County District Attorney seek Mr. McGuinness' removal to await trial in state custody, as provided by G.L. c. 276, § 52A. Exhibit 6 is the September 9, 2004 letter from the Office of the District Attorney agreeing to request that the Commissioner of Correction exercise her discretion to transfer Mr. McGuinness to state custody. Mr. McGuinness was admitted to MCI-Cedar Junction on September 29, 2004.

10.      On Sunday, October 17, 2004, Mr. McGuinness and several other prisoners participated in a group assault on a prisoner in the MCI-Cedar Junction Orientation Unit. Disciplinary Report 51097 (Exhibit 7) documents that Mr. McGuinness threw numerous closed-fist punches and shod foot kicks to the victim's upper body, head and face. He then assaulted two responding officers with closed-fist punches to the face. The disciplinary report issued on February 8, 2005. On July 27, 2005, Mr. McGuinness plead guilty to disciplinary charges of disobeying an order, lying and insolence; violating and Department rule or regulation; conduct which disrupts; fighting with, assaulting, or threatening another person with any offense person or property; and violating any law. He was sanctioned with a 36-month DDU sanction, with 34 months to serve.

11.      On October 18, 2004, Mr. McGuinness received Disciplinary Report 44460 (Exhibit 8) after an officer discovered a sharpened toothbrush weapon and a homemade heating device in Mr. McGuinness' cell. Mr. McGuiness plead guilty to the disciplinary charges and received a 15-day isolation sanction. The same day, Mr. McGuinness was transferred to the Special Management Unit ("SMU") at the Souza Baranowski Correctional Center.

12.    On January 30, 2005, Mr. McGuinness assaulted officers Daniel McGinty and Alejandro Santiago who were escorting Nurse Jason Kavanaugh on medication rounds in the SMU. (Disciplinary Report 50624 Exhibit 9). Responding correction officers placed Mr. McGuinness in leg irons and escorted him to L-3, cell #2, where he was placed on 15 minute watch. The disciplinary report issued on the same day. On July 27, 2005, Mr. McGuinness plead guilty to disciplinary charges of violating any Department of Correction rule or regulation; conduct which disrupts; fighting with, assaulting, or threatening another person with any offense against person or property; violating any law; and attempting to commit any offense. Mr. McGuinness received a 24-month DDU sanction, with 22 months to serve. Additionally, a criminal complaint entered against him in the Clinton District Court.

13.    On January 31, 2005, after Mr. McGuinness was observed to be lying under his bed and unresponsive, an extraction team entered Mr. McGuinness' cell, removed a ligature from his neck, and removed him from under the bed. He was taken to the health services unit where he received stitches for a laceration above his eye, then placed in restraints on 15-minute watch status.

14.    On March 7, 2005, Mr. McGuinness was transported to the Concord District Court pursuant to a habeas order. He was subsequently transferred to the Plymouth County Correctional Facility ("PCCF").

15.    Mr. McGuinness' record at PCCF includes the following. On June 20, 2005, McGuinness was involved in a fight with five other inmates. Responding officers found a "shank" in the day room, and the unit was slow locking in. (Exhibit , PCCF Disciplinary Report.) On July 7, 2005, Mr. McGuinness received a disciplinary report for ripping apart

his cell wall light fixture, then took a threatening stance with broken parts in his hands. Mr. McGuinness had indicated that he had a violent history and wanted a transfer back to the Norfolk jail. Apparently, he was unaware that he was already slated for return to Norfolk County. (Exhibits 11 to 14, PCCF Informational Reports.) Later the same day in a segregation unit, Mr. McGuinness handed an officer a shank and stated that he would tell where he got it if the officer would help him get moved out of the facility. In response to the officer's question where the shank was hidden, Mr. McGuinness stated, "It was up my ass wrapped in cellophane and toilet paper. I flushed all that down the toilet after I shit." He identified the material as part of the floor drain of the slop sink. (Exhibit 15, PCCF Informational Report ) On the same date, an inmate who appeared to have been assaulted reported that Mr. McGuinness had entered his cell and punched him several times. (Exhibit 16, PCCF Disciplinary Report )

16.    Mr. McGuiness returned to SBCC on July 8, 2005. On September 26, 2005, he appeared in court where he plead guilty to his pending state charges. He was sentenced to 3 ½ years to 3 ½ years and a day. On September 28, 2005, he was received by SBCC as a sentenced prisoner. He is currently serving his DDU sanctions in the Special Management Unit ("SMU") at SBCC. The DDU building, located at MCI-Cedar Junction, has been closed since the end of July 2005 for extensive repairs to the door locking mechanisms.

Subscribed under the pains and penalties of perjury this 12th day of April, 2006.

/s/ Roland Rheault
Roland Rheault

**NORFOLK COUNTY SHERIFF'S OFFICE**
**DISCIPLINARY REPORT**

INMATE: McGuiness, Brendan     DATE: 3-24-04     TIME: 9:27am

MODULE: Pre trial MAX     ROOM: 17     REPORT NUMBER: 04-03-41

OFFENSE/(S)CODE NUMBER OF RULE (S) VIOLATED:

1 disobeying an order from, lying to ,or insolence towards a staff member. 3-Being out of place  8-conduct which disrupts the security or orderly running of the facility. 15 - possession, manufacture or introduction of weopon, sharpened instrument, knife or tool. 19-use of obscene , abusive or threatening  language, action or gesture against person.

STATEMENT OF OFFENSE:

I officer Burke was assigned to the pre-trial max for the 7-3 shift on 3-24-04. At 9:27am inmate McGuiness was seated at a dayroom table. McGuiness was speaking very loudly calling the jail control officer a fucking asshole. McGuiness then pointed to me and called me a fucking asshole. McGuiness then made a general statement  in the dayroom that he was going to beat these assholes. I motioned to McGuiness to come over to the rec yard door area so I could speak to him . McGuiness told me to fuck off. I approached McGuiness and as I did McGuiness stood up. He had rubber gloves on his hands a comb in his hand. I ordered him to go to his cell. McGuiness  refused then stood in an aggressive manner with his left hand clenched and a comb  clenched in his right hand he also challenged me to come and try to put him in his cell. I ordered the unit to lockdown. McGuiness  remained standing in the dayroom. I called jail control to notify zone A. I ordered Mcguiness a second time to step into his cell at this time  McGuiness slowly made his way to his cell and locked in. SGT. Farretta and officer Mulcahy entered the unit. McGuiness was ordered to back up to the cell door bend at the waist and put his hands behind his back. Mcguiness was secured and removed from the cell at this time I found a comb in the cell doorway that was altered with a razor blade weaved into it. I asked McGuiness 's roomate if the comb was his. He Stated "no"

PRINT/SIGNATURE OF OFFICER:  OFFicer  Ed  Burke        *Ed Burke*

SIGNATURE (U/MO) _____     SIGNATURE (FSC) _____

DISPOSITION OF EVIDENCE(Transcribe from Statement of Offense)

ACION TAKEN (Including use of force)  MOVED  TO  D-ISO  AWAITING ACTION

AWAITING ACTION  ☒          MINOR SANCTION ☐          MAJOR VIOLATION ☒
REFERRED TO DA ☐            INVESTIGATION ☐           DATE COMMENCED: __/__/__

SIGNATURE _____

REVIEWING AUTHORITY: _____     DATE:  __/__/__

**EXHIBIT**
**1**

## NORFOLK COUNTY SHERIFFS OFFICE

### INFORMATIONAL/INCIDENT REPORT

Date and time of Incident/Occurrence:

Name of inmate/person:     McGuinness,Brendan

Reporting Officer/Staff Member:     c/o Carvello

Nature of Incident/Occurrence to be communicated:

On 3-24-04 Capt. Vito assigned me (C/o Carvello) to the Iso module.  At 11:45a.m. I went into the unit to conduct my detex checks.  Upon looking into cell# 9 I noticed inmate Mcguinness, Brendan lying on the floor face down with his head close to the cell door.  At this point I called out to inmate Mcguinness.  Inmate Mcguinness did not responed to my calling.  At this time I noticed a white braided cloth around inmate Mcguinness's  neck.  At this time I called for a medical code 99 and informed Sgt. Holmes (Seg control) of situation.  Zone A responded (Officer Cox - Sgt. Harland - Officer Reynolds - Capt Campbell) along with the nurses.(RN Walsh,Ann - Lpn Fitzgerald - Rn Burke) At this time I (C/o Carvello)  opened the cell door,unravelled the nouse that was around inmate McGuinness's neck along with Capt.Campbell assisting me. Nurse Fitzgerald enterd the cell and evaulated inmate McGuinness.  After the nouse was taken off, inmate McGuinness began to cough and catch his breath.  At this time no First aid or CPR was needed.   Inmate McGuinness was helped to his feet be myself and Capt. Campbell.  Handcuffs were applied and inmate McGuinness was transported to the medical dept. by wheelchair. End of Report....

Print Name: _John Carvello_ _John Carvello_                          _3-24-04_
Signature (reported)
Print Name: _E.F.Walsh_                                      Date    /    /

FSC Signature (received) _E.F.Walsh_                    Date _3/24/4_

CSD 404
Attachment C

EXHIBIT

2



**D-REPORT NO.**
06-058-04
**D-BOARD USE ONLY**

## BRISTOL COUNTY SHERIFF'S OFFICE
### 400 Faunce Corner Road
### North Dartmouth, MA 02747

## FORMAL DISCIPLINE REPORT

INMATE NAME _Brendan Mcguinness_ ID NUMBER _130368_ HOUSING UNIT _HB_

DIVISION/FACILITY _DHOC_ DATE _6-5-04_ TIME _2116_
(DHOC Ash Street, DRNCAC, Pre-Release, DPW, etc.)

OFFENSE(S) _1,2,4,8,14,18,19,33_ LOCATION OF INCIDENT _DHOC HB Unit_

### _DESCRIPTION OF OFFENSE_

   On the above date and time inmate Brendan Mcguinness #130368 ran out of his cell after inmate Kevin Cabral opened the cell doors on the top tier. Inmate Mcguinness, along with several other inmates ran down the stairs and attempted to enter cell C3-17 which housed inmate Lydell Pina. Inmate Mcguinness then refused to lock in to his cell, and along with several other inmates, yelled at, threatened and called on officers in an attempt to cause a riot or some sort of altercation between inmates and officers. —E.O.R.—

HAS INMATE BEEN PLACED ON AWAITING ACTION STATUS? YES ✓    NO _____

REPORTING STAFF PERSON'S SIGNATURE _J. Carlton #455_

SHIFT COMMANDER'S SIGNATURE _____

DISCIPLINARY OFFICER'S SIGNATURE _____

FINDING AND SANCTION(S) (IF ANY) _____ | DATE IN _____
APPEAL RESULTS _____ | DATE OUT _____

REVIEWING AUTHORITY _____ DATE: _____

DISTRIBUTION:
White - Disciplinary Officer
Canary - Inmate
Pink - A.D.S. Security

01/01/03

**EXHIBIT**
3

## DISCIPLINARY REPORT

INMATE:  McGuinness Brendan          DATE:  08/20/04      TIME:  1015

MODULE:  PMX          ROOM #  10          REPORT NUMBER:  04-08-31  A

**OFFENSE/(S)/CODE NUMBER (S) OF RULE (S) VIOLATED**

#2 Violating any rule. #4 Being out of place #8 Conduct which disrupts. # 26 Stealing.

**STATEMENT OF OFFENSE:**

On 08/20/04 upon the conclusion of an investigation of this reporting officer you are hereby charged with the above offenses. By your own admission you were out of place in PMX cell #7, were the theft of canteen owned by inmate #7 James Sardina occurred . You were also witnessed exiting the cell with two canteen bags in hand. Inmate on A.A. Status- SEG.

PRINT/SIGNATURE OF OFFICER: *CAPT. Dennis F. Casey  Cpt. Dennis F. Casey*

SIGNATURE (U/M) _____  SIGNATURE (FSC) *Cpt. Dennis F. Casey*

DISPOSITON OF EVIDENCE (Transcribe from Statement of Offence): _____
_____
_____

ACTION TAKEN (Including use of force) :  *A.A - Seg* _____
_____

AWAITING ACTION  _X_    MINOR SANCTON _____    MAJOR VIOLATION  _XXXX_

REFERRED TO DA _____    INVESTIGATION _____    DATE COMMENCED: ___/___/___

SIGNATURE (Disciplinary Officer): _____

REVIEWING AUTHORITY: _____    DATE: ___/___/___

EXHIBIT
4

**NORFOLK COUNTY SHERIFF'S OFFICE**
**DISCIPLINARY REPORT**

INMATE: McGuinness, Brendan    DATE: 08-20-04    TIME: 2100

MODULE: PMX    ROOM: Cell #10    REPORT NUMBER: 04-08-31 B

OFFENSE/(S)CODE NUMBER OF RULE (S) VIOLATED:

02. Violating any NCSO Correctional Facility rule or regulation. 09. Escape or possession of escape tools. 24. Possession of itmes, including money currency, not authorized for rentention or receipt by the inmate.

STATEMENT OF OFFENSE:

On 08-20-04 at approx. 2100hrs, I, C/O Lawrence, while assigned to PMX and inventorying the property of Im. McGuinness, Brendan, found a paper clip in his property. This paper clip was of a larger size, bent at two ninety degree angles with one side folded over. It was found within a small cardboard container of a canteen item, along with four markers and several papers. I gave this paper clip to FSC Capt. Casey at approx. 2125hrs. This item was placed into evidence by FSC Capt. Casey.

PRINT/SIGNATURE OF OFFICER:    Scott Lawrence  *Scott Lawrence*

SIGNATURE (U/MO)    _____    SIGNATURE (FSC)  *Capt Deano (Casey)*

DISPOSITION OF EVIDENCE(Transcribe from Statement of Offense)

Paper clip placed into evidence, # 04-08-20.

ACION TAKEN (Including use of force)

AIA  A0-Se8

| | | | |
|---|---|---|---|
| AWAITING ACTION | XXX | MINOR SANCTION ▣ | MAJOR VIOLATION ☒ |
| REFERRED TO DA | ▣ | INVESTIGATION ▣ | DATE COMMENCED: __/__/__ |

SIGNATURE    _____

REVIEWING AUTHORITY:    _____    DATE: __/__/__

**EXHIBIT**

5

PAGE  02/03



The Commonwealth of Massachusetts

OFFICE OF THE DISTRICT ATTORNEY
FOR THE NORFOLK DISTRICT

WILLIAM R. KEATING
DISTRICT ATTORNEY

September 9, 2004

45 SHAWMUT ROAD
CANTON, MA 02021
(781) 830-4800
FAX (781) 830-4801

Via Facsimile (781-326-1079) & First Class Mail

Robert W. Harnais, Esquire
General Counsel
Office of the Norfolk County Sheriff
P. O. Box 149
200 West Street
Dedham, MA 02027

Re: ███████████████████████████
Brendan McGuinness (DOB: ████ SSN: ████

Dear Mr. Harnais:

We are in receipt of your letters dated August 23, 2004, concerning respectively the above ████████ and Brendan McGuinness. We appreciate your concern about both these individuals being housed at the Norfolk County Jail, and in the eventuality that Commissioner Kathleen Dennehy agrees to have them housed within the Massachusetts correctional system, we consent to such action.

Assistant District Attorney Brian Wilson is assigned to the prosecution of ████ and Assistant District Attorney Lynn Beland is assigned to the prosecution of Brendan McGuinness. Both these matters are next scheduled for the Superior Court list on September 27, 2004. In conjunction with this letter, we have requested Norfolk Superior Court to issue process for their return to Norfolk Superior Court on the 27th. We anticipate that that process will be faxed to the Sheriff's office today. We only request that any movement approved by Commissioner Dennehy not take place until the process is with the bodies so that wherever they are moved, they will be present at Norfolk Superior Court on the 27th. In the eventuality that the date on one or both of these should get changed, we would request from you the location where they are being housed.

Very truly yours,

Dennis C. Mahoney
First Assistant District Attorney

DCM:sc
cc:    William R. Keating
       Kathleen M. Dennehy, Commissioner of Correction
       Lynn Beland
       Brian Wilson

#0464 P.002/002

EXHIBIT
G

# COMMONWEALTH OF MASSACHUSETTS @

## DEPARTMENT OF CORRECTION

### DISCIPLINARY REPORT

| Inmate | MCGUINESS, BRENDAN M | Commit No | A91830 | Housing Unit | M3 |
|---|---|---|---|---|---|
| Date | 08-FEB-2005 | D- Report No. | 51097 | Institution | SOUZA-BARANOWSKI CORRECTIONAL |

**OFFENSE(S) & CODE NO.:**

01-DISOBEYING AN ORDER, LYING, INSOLENCE
02-VIOLATING ANY DEPARTMENT RULE OR REGULATION
08-CONDUCT WHICH DISRUPTS
18-FIGHTING WITH, ASSAULTING, OR THREATENING ANOTHER PERSON WITH ANY OFFENSE AGAINS
PERSON OR PROPERTY
32-VIOLATING ANY LAW

**Major [X]**          **Minor [ ]**

**Description of Offense(s)**

On October 17, 2004 an investigation was initiated into a physical altercation which occurred in the Orientation One Housing Unit between Inmates Jonathen Sokorelis, Brendan McGuiness, David Amaral, Eric Bargoot and Ryan Abramo. Through the use of staff reports, informant information, photo and video evidence, the following has been determined:

On Sunday, October 17, 2004 inmate Brendan McGuiness participated in a group assault on Inmate Ryan Abramo in the Orientation One Unit. Inmate McGuiness threw numerous closed fist punches and shod foot kicks to the upper body, head and face of Inmate Abramo. Upon emergency Response Procedures being implemented Inmate McGuiness was given a direct order to stand by with Officer Michael Buckley while staff secured other combatants. Inmate McGuiness then disobeyed this order by assaulting Officer Buckley and Lieutenant Ernie Silva with closed fist punches to the face of both staff while attempting to become re-involved with the altercation.

This inmate's combative and uncooperative behavior necessitated that staff use force in order to secure him. Upon escorting the inmate form the unit he was seen by medical staff. Due to the severity of Inmate Abramo's injuries it was necessary for him to be transported to an outside hospital via ambulance.

These actions greatly disrupted the orderly running of the institution, jeopardizing both staff and inmate's safety.

| Has Inmate been placed on Awaiting Action Status | | Yes [X] | No [ ] | | |
|---|---|---|---|---|---|
| Referred to DA | [X] Yes | [ ] No | Referred to DDU | [X] Yes | [ ] No |
| Reporting Staff | Jason Vital | | Date | 08-FEB-2005 | Time 14:41 |
| Days off | Fri  Sat | | | | |
| Shift | 7-3 | | | | |

**EXHIBIT**

**7**

20050802 11:34

# COMMONWEALTH OF MASSACHUSETTS @

## DEPARTMENT OF CORRECTION

### DISCIPLINARY REPORT

| Inmate | MCGUINESS, BRENDAN M | Commit No | A91830 | Housing Unit M3 |
|---|---|---|---|---|
| Date | 08-FEB-2005 | D- Report No. | 51097 | Institution SOUZA-BARANOWSKI CORRECTIONAL |

| Shift Commander | Martin Leonard D | Date | 08-FEB-2005 | Time | 16:56 |
|---|---|---|---|---|---|

| Disciplinary Officer | Ernest Therien J | Date | 15-FEB-2005 | Time | 07:00 |
|---|---|---|---|---|---|

Results GUILTY

| Code Description | Sanctions | Start Date | End Date | # of Units | SS | Amount |
|---|---|---|---|---|---|---|
| 01-DISOBEYING AN ORDER, LYING INSOLENCE | Comb W/#18 | | 20050801 | 0 | | |
| 02-VIOLATING ANY DEPARTMENT RULE OR REGULATION | Comb W/#18 | | 20050801 | 0 | | |
| 08-CONDUCT WHICH DISRUPTS | Comb W/#18 | | 20050801 | 0 | | |
| 18-FIGHTING WITH, ASSAULTING, OR THREATENING ANOTHER PERSON WITH ANY OFFENSE AGAINST HIS PERSON OR PROPERTY | Rec. DDU | | 20050801 | 1030 | | |
| 32-VIOLATING ANY LAW | Comb W/#18 | | 20050801 | 0 | | |

| Reviewing Authority | Thomas Dickhaut E | Date | 21-APR-2005 | Time | 14:11 |
|---|---|---|---|---|---|

20050802 11:34





*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Office of the Deputy Commissioner*
*P.O. Box 9125*
*Concord, MA  01742-9125*
*(978) 405-6622*
*Fax:  (978) 405-6619*
*www.mass.gov/doc*

**Mitt Romney**
*Governor*
**Kerry Healey**
*Lieutenant Governor*
**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*
**James R. Bender**
*Deputy Commissioner*

TO:        David Nolan, Superintendent
           MCI-Cedar Junction

FROM:    Susan McDonald, Administrative Assistant to the Deputy Commissioner

RE:        **Department Disciplinary Unit Referral (s)**

DATE:     February 17, 2005

Be advised that Deputy Commissioner James R. Bender has **approved** the attached disciplinary matter(s) for DDU hearing(s).

1.        <u>**McGuiness, Brendan M. A91830 SBCC #51097 Approved**</u>

If you have any questions, please feel free to contact me at 978-405-6623.

cc:        Lois Russo, Superintendent, SBCC
           Patrick Depalo, Special Hearing Officer, MCI-Cedar Junction
           Ernest Therien, Disciplinary Officer, MCI-Cedar Junction
           James Hart, Disciplinary Officer, SBCC
           File

@

MASSACHUSETTS DEPARTMENT OF CORRECTION

DISCIPLINARY HEARING SUMMARY

INMATE: Brendan McGuiness                    #: A-91830

REPORT#: 51097                    DATE OF REPORT: February 8, 2005

DATE OF HEARING: July 27, 2005     SPECIAL HEARING OFFICER:   Captain Patrick DePalo

HEARING HELD AT: Souza Baranowski Correctional Center

1.   The inmate was given at least 24 hours notice of the hearing (if no, attach 24-hour waiver).  YES   NO (X)*
                                                                    *Waiver attached

2.   The inmate is present before the hearing officer (if not, attach refusal to appear form).  YES  (X)  NO

3.   The inmate has been advised of his right to remain silent, since the offense charged has, or may be referred to
     the District Attorney.  The inmate has been further advised that his silence may be used to draw an adverse
     inference against him, but his silence alone may not be used to support a guilty finding.  YES  NO  (X)
                                                                    **Pleaded Guilty see form

4.   The inmate requested representation.  YES  (X)  NO
     The inmate is represented by an attorney/law student.  YES     NO (X)
     Name of legal representative:  H.P.L.A.P. (no name given)

5.   The inmate requested the presence of the reporting staff.  YES  (X)  NO

     The reporting staff person is present.  YES     NO (X) initially requested but waived presence at hearing,
     report submitted pursuant to 103 CMR 430.14 (5)

     If the inmate's request is denied, indicate the reason:  (N/A)

6.   Inmate challenges impartiality of the Hearing Officer.
     YES     NO (X)

     If yes, state reasons why:

7.   The hearing was tape-recorded.  YES  (X)  NO

..................................................................................................

Requests and Motions

Inmate McGuiness made a request for documentary evidence; however waived his request and pleaded guilty:

@

**Page 2**

INMATE: Brendan McGuiness                    #: A-91830                    D-REPORT #: 51097

8.     Witness:  If none requested, check here  XXX

      A.     **REQUESTED BY INMATE:**          (If any witness request is denied, a written explanation of the reasons
                                                                  must be included as part of the record)

          (1)  Officer Michael Buckley          initially requested but waived at hearing

          (2)  Lt. Ernie Silva                  initially requested but waived at hearing

          (3)  Inmate Brian Birks              initially requested but waived at hearing

          (4)  Inmate Eric Bargoot            initially requested but waived at hearing

      B.  **REQUESTED BY HEARING OFFICER:**

          (1)

          (2)  N/A

          (3)

*****************************************************************************

9.     Presentation of evidence:

      A.  Inmate Statement

      PLEA: Guilty plea entered –   (1), (2), (8), (18) and (32)

      Statement in defense (summary):

      -Inmate McGuiness pleaded guilty (see attached form)

    B.  Reporting Staff Person's Statement:

      -Officers report submitted as true pursuant to 103 CMR 430.14 (5) and the inmate's admission of guilt.

@

Page 3

INMATE: Brendan McGuiness                    #: A-91830                    D-REPORT #: 51097

C: Other Witness Statements:  (If witness has been denied, indicate reason(s) for denial in this space below).

     Witness #1  Name:

     Statement:          N/A

     Witness #2  Name:

     Statement:          N/A

     Witness #3  Name:

     Statement:          N/A

*********************************************************************************************************************

C: Documentary Evidence:

     In addition to the Disciplinary Report, the Hearing Officer accepted into evidence, and considered the following documents, physical evidence, photographs/video tapes:  N/A

@

**PAGE 4**

**INMATE:** Brendan McGuiness                    **#:** A-91830                    **D-REPORT #:** 51097

**FINDINGS:** Guilty to charge – (1), (2), (8), (18), and (32) in accordance with the Disciplinary Code of Offenses.

**Statement of Evidence Relied upon to Support Findings:  (continue on Pg. 4a if necessary)**

Using the standard of *'a preponderance of the evidence'* (as set forth in the Disciplinary Regulations 103 CMR 430.06), this Special Hearing Officer (SHO) has concluded that culpable intent on the part of Inmate McGuiness has been established. This decision is predicated on the disciplinary report submitted by IPS Officer Vital and the inmate admission of guilt. The report shows that inmate McGuiness participated in a group assault on another inmate.  I was noted during this assault inmate McGuiness not only used closed fists but also a shod foot (32).  Due to the severity of the assault and multiple combatants emergency response was initiated (8).  Several orders were given to inmate McGuiness to stop, however he refused (1).  While staff tried to restrain inmate McGuiness he turned his assault against them.  This inmate used closed fist punches against Officer Buckley and Lt. Silva striking them about the face area (18).  Force was needed to stop inmate McGuiness from his combative and uncooperative behavior (2).  Due to the severity of the assault the inmate that was assaulted needed to be transported to an outside hospital for evaluation via ambulance.

**SANCTIONS AND RECOMMENDATIONS:**

Charge  - (1), (2), (8), (18), and (32) / - 36 months DDU/ 2 months credit/ 34  months DDU to serve not concurrent with any other DDU sanction, but from and after.

**Reason for Sanction:**

This decision is intended as a means of educating the inmate as to the consequences of his actions and to hopefully provide an adequate future deterrent, although other sanctions have not waivered this inmate from his steadfast path. This inmate is reminded that his actions in the correctional environment serves to compromise the safety of others and greatly undermines institutional security. Assaults against staff or other inmates will not be tolerated. A review of this individual's administrative chronology reveals that he has been the recipient of over ten (10) disciplinary reports since his incarceration. These reports are all for a multiple of offenses, to include but not limited to: insolent to staff, refusing staff orders, disruptive conduct, possession of a weapon and flooding his cell and threats against staff to name a few. Hence it is the determination by this SHO that this individual's placement in the department's most secure setting is warranted.

The inmate has been advised of his right to appeal this decision within 15 days upon receipt of the hearing officer's findings to the Deputy Commissioner of Corrections:   YES (X)    NO

**Special Hearing Officer:** Captain Patrick DePalo                    **Date:  July 29, 2005**

The inmate has been advised of the Hearing officer's decision and a copy of this document has been delivered to the inmate:      YES (X)    NO

**Staff Signature:**                    **Date:  8.2.05**

**Commonwealth of Massachusetts**
**Department of Correction**

## DDU REFERRAL



Entry of Guilty Plea

I HAVE BEEN ADVISED THAT I HAVE THE RIGHT TO (an interview - Minor Matter) (appear before a hearing officer - Major Matter) concerning the charges pending against me in Disciplinary Report#: <u>51097</u>

I DO NOT WISH TO (have an interview) (appear before a Hearing Officer) and hereby waive that right per 103 CMR 430.11 (4). I further waive my twenty-four hour notice of hearing per 103 CMR 430.11 (3).

I HEREBY ENTER A PLEA OF GUILTY, CONCERNING THE CHARGES PENDING; BUT RESERVE MY RIGHT TO APPEAL ANY SANCTION WHICH MAY BE IMPOSED. I AM SIGNING THIS DOCUMENT OF MY OWN FREE WILL AND AM UNDER NO DURESS, COERCION OR THREATS, AND FULLY UNDERSTAND THE CONTENTS AND MEANING OF THIS DOCUMENT. I ALSO STATE THAT I HAVE NO OBJECTION TO THE OFFICER WHO IS CONSIDERING THIS CASE.

INMATE SIGNATURE: _B~ McG~_

TYPE OR PRINT NAME: <u>BRENDAN MCGUINESS</u>          #: <u>A91830</u>

DATE: _7/27/05_          TIME: _1 10/pm_

WITNESSED BY: _____          TITLE: _Capt/DDU-SHO_

TYPE OR PRINT NAME: _Patrick DePalo Capt_

BASED ON THE INMATE'S PLEA OF GUILTY ON CHARGES, AND THE INFORMATION PROVIDED IN THE REPORTING STAFF'S REPORT; THE INMATE IS FOUND GUILTY AND THE FOLLOWING SANCTIONS(S) IMPOSED:

A:
B:          _36 months DDU to_
C:          _Serve / 2 Month Credit - 34_
_Months to serve Not concurrent with_
_any other DDU Sanction, but from and_
_after_

INMATE HAS BEEN GIVEN A COPY OF THIS DOCUMENT AND HAS BEEN ADVISED OF HIS RIGHT TO APPEAL THIS MATTER.

STAFF SIGNATURE: _____          DATE/TIME: _7/27/05_

SOUZA-BARANOWSKI CORRECTIONAL

@

Department of Correction

Request for Evidence Form    **DDU REFERRAL**

TO: MCGUINESS BRENDAN M _____         #: A91830

RE: 51097 _____                    Date: 02/17/2005

I understand that I will be served at a reasonable time prior to my disciplinary hearing with any documents which may be used against me. In addition to any such documents, I wish to request access to the following document(s) prior to my hearing which I believe will show me not guilty of the alleged infraction(s) contained in the D-Report. I understand that, in the event the Disciplinary Officer at the institution where the alleged disciplinary infraction(s) occurred denies my request for these documents(s), it will be up to the Hearing Officer to decide if I am entitled to the document(s) for the reason(s) I have stated. The Hearing Officer will determine if the requested document(s) are relevant and not merely repetitive and whether they are central to the preparation of my defense. The Hearing Officer may deny my request for documents if he/she determines that producing them would be hazardous in the particular situation. If the Hearing Officer decides that the document(s) need not be provided, his/her reason(s) will be included in the final report.

I am requesting the following specific document(s): _All use of force reports on any_
_individual named in my D-Report, medical reports, also, Photos,_
_videos, informant summaries, etc. All reports of staff witnesses._
Each document is central to my defense for the following reasons: _If it's mentioned in the_
_Report, I need it to counter the Reports allegations._

_____

_____

_____

Please be advised that failure to return this form to the Disciplinary Officer within 24 hours of receiving it will be considered as a waiver of request for any evidence.

*Please record
proceeding.

SOUZA-BARANOWSKI CORRECTIONAL

Videos & photos of myself,
any alleged victim, — all necessary
to defend against charges.

I want to know who gave
me a direct order to " stand
by" as said in report.

@

## SOUZA-BARANOWSKI CORRECTIONAL

*DDU REFERRAL*

### REQUEST FOR REPRESENTATION/WITNESS FORM

TO: INMATE ___BRENDAN MCGUINESS M___    COMMITMENT#: ___A91830___

DISCIPLINARY REPORT #: ___51097___    DATE : ___02/17/2005___

You must complete this form and return it to the Disciplinary Officer within 24 hours of receiving it. Failure to do so may be considered as a waiver for representation and/or witnesses pursuant to 103 CMR 430.11 (5).

1. If you wish to be represented by an attorney or a law student at the disciplinary hearing regarding the attached disciplinary report, fill in the representative's name, address and phone number. (see 103CMR430.12).
   You are responsible for contacting this person and arranging for representation (see 103CMR430.12).

   Name: _____
        Last    *H. P. L. A. P.* →    First _____   MI ____ Suffix ____
   Address: _____
        Street    City _____    State ____ Zip ____
   Phone: _____
        Home    Work

2. If you do not speak English, do not understand the charges pending against you, you may request the use of the AT&T language line.
   Please check here:    [ ]

3. Do you wish to have a Reporting Staff Person present at the Disciplinary Hearing?    Yes ☒ No [ ]

4. Do you wish to call the other witnesses at the Disciplinary hearing? If yes, please list the names of the witnesses you wish to call and provide a brief statement of the expected testimony as required by 103 CMR 430.14 (4) (e).    Yes ☒ No [ ]

**WITNESS INFORMATION**

| Last Name | First Name | MI | Suffix | Testimony |
|---|---|---|---|---|
| Buckley | Michael | | COI | I'm alleged to have assaulted him. |
| Silva | Ernie | | COII | Same as above, but different assault. |
| Birke | Brian | | Inmate | He will say that staff were using excessive force on inmate Sokereli's. |
| Bargoot, | Eric | | Inmate – | He'll say that staff used excessive force on inmate McGuinness. Also, McGuinness did not assault Abramo. |

Reported By: _____
     Name    Date

RETURN SIGNED COPY
TO DISCIPLINARY OFFICE

Department of Correction

Notice of Continuance

@

DDU REFERRAL

To: MCGUINESS BRENDAN M

#: A91830

RE: 51097

Date: 08-FEB-2005

As provided under the Disciplinary Regulations, 103 CMR 430.11 (2), at the request of the Disciplinary Officer, a continuance has been granted for your disciplinary hearing.

Your hearing has been rescheduled for: _4.4.05_ *
(Date)

_0900_
(Time)

Notice Served By: _____
(Staff Person's Signature)

_SGT_
(Title)

_3-3·05_
(Date)

_1000_
(Time)

_____
(Disciplinary Chairman / Officer's Signature)

* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

SOUZA-BARANOWSKI CORRECTIONAL

@
RETURN SIGNED COPY
TO DISCIPLINARY OFFICE

# DEPARTMENT OF CORRECTION
## NOTICE OF DISCIPLINARY HEARING

M3

TO:  BRENDAN MCGUINESS M                    I.D.#:      A91830

Re: Disciplinary Report #:          51097          Date :      02/17/2005

You have been charged with a disciplinary offense(s) which has been referred to the Hearing Officer for a hearing. A description of the offense(s) is contained in the attached Disciplinary Report. Your disciplinary hearing has been scheduled for:

*OPEN*

# DDU REFERRAL

(Date of Hearing)

If you wish to be represented, request the presence of the reporting staff person, request other witnesses, and/or request a taped hearing, please fill out the attached Request for Representation/Witness Form. If you wish to request evidence, please fill out the attached Request for Evidence Form.

Notice Served By:                  Date:                      Time:

Inmate's Signature:                Date:                      Time:

***When an Inmate has been given copies of the above enumerated documents, but refuses to sign this acknowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this Notice, Disciplinary Report, Request for Representation/Witness Form, and Request for Evidence Form to :

BRENDAN MCGUINESS M

(Inmate's Name)

and he/she refused to sign.

Staff Person's Signature: _____          Date:  2.17.05

Print Name:  J. Haas                                         Time:  1200

**The actual scheduling of the hearing may be delayed if circumstances require; however, you will be notified of the actual date of the re-scheduled hearing at least twenty-four(24) hours in advance of that date.
ATT Language Line Needed  [ ]

SOUZA-BARANOWSKI COF

02/17/2005 THU 10:10  FAX 5086608012                                    @002/002

@

**Department of Correction**

**Waiver of Procedural Time Limits**

TO:     MCGUINESS, BRENDAN M , A91830                    **DDU REFERRAL**
        Inmate's Name

FROM:   *David Nolan, Superintendent*

In accordance with the provisions of 103 CMR 430.23, I am waiving all procedural time limits concerning

Disciplinary Report # 51097

_____
                    Superintendent's Signature

_____
                    Date

SOUZA-BARANOWSKI CORRECTIONAL

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### DISCIPLINARY REPORT

| Inmate | MCGUINNESS, BRENDAN | Commit No | W86294 | Housing Un | TEN BLOCK |
|---|---|---|---|---|---|
| Date | 20041018 | D- Report No | 44460 | Institution | MCI CEDAR JUNCTION |

| Category | Offense(s) |
|---|---|
| 5 | 15-POSS/MANUF/INTRO OF A WEAPON |
| 5 | 24-POSS OF ITEMS, NOT AUTHORIZED |
| 5 | 33-ATTEMPTING TO COMMIT ANY OFFENSE |

**Description of Offense(s**

On October 18, 2004 at approximately 13:45 I CO. John Semedo was assigned to search cell 210 within the Orientation unit.

During this search I recovered one home made heating device approximately 12" in length. On the bed under the mattress I recovered a toothbrush approximately 7" in length and sharpened to a point.

IPS CO Rosario was notified and the weapon was handed over to him for evidence purposes.

**Disciplinary Report Type:** Major

**Has Inmate been placed on Awaiting Action Status** Yes [X] No [ ]

**Referred to DA** [ ] Yes [X] No     **Referred to DDU** [ ] Yes [X] No

| | | | |
|---|---|---|---|
| **Reporting Staff** | John S Semedo | Date 20041018 | Time 14:14 |
| **Days off** | Sun  Sat | | |
| **Shift** | 7-3 | | |
| **Supervisor** | CONVERT USER  CONVERT USER | Date 20041018 | Time 14:16 |
| **Shift Commander** | John W Brodbeck | Date 20041018 | Time 14:16 |
| **Disciplinary Officer** | Ernest J Therien | Date 20041019 | Time 07:00 |
| **Results** | PLEA GUILTY | | |

**Continuance Length** _____  **Continuance Date** _____  **Projected Date** _____

| Offenses | Sanctions | Start Date | Unit | #of Units | Credits | End Date | Amount |
|---|---|---|---|---|---|---|---|
| 5-15-POSS/MANUF/INTRO OF A WEAPON | Isolation | 20041122 | | 15 | | 20041207 | |

**Appeal result of the Superintendent:**

| Offenses | Sanctions | Start Date | #of Units | #Credits | End Date |
|---|---|---|---|---|---|

**Reviewing Authority** _____  Date _____  Time _____

**EXHIBIT**

8

20060315 16:05

**DEPARTMENT OF CORRECTION**
**REQUEST FOR REPRESENTATION AND/OR WITNESS FORM**

Inmate    MCGUINNESS, BRENDAN    Commitment# :    W86294

DISCIPLINARY REPORT #: 44460    DATE OF HEARING 20041207

You must complete this form and return it to the Disciplinary Officer within twenty-four (24) hours of receiving it. Failure to do so may be considered as a waiver for representation and/or witnesses pursuant to 103 CMR 430.11(6).

1.  If you wish to be represented by an attorney or a law student at the disciplinary hearing regarding the attached disciplinary report, fill in the represntative's name, address and phone number.

    **You are responsible for contacting this person and arranging for representation - see 103 CMR 430.12(1)**

    NAME:_____

    ADDRESS:_____

    TELEPHONE:_____

2.  Are you requesting a good cause continuance to secure legal representation?
    Yes _____    No _____

3   If you do not speak English, you may request the use of the telephonic services.
    Yes _____    No _____

4.  If you do not understand the charges pending against you, you may request assistance from a staff member.
    Yes _____    No _____

5.  Do you wish to have the reporting staff person present at the disciplinary hearing?
    Yes_____    No _____

6.  Do you wish to call other witnesses at the disciplinary hearing?    Yes _____    No _____

    If yes, please list the names of the witnesses you wish to call and provide a brief offer of proof of expected testimony as required by 103 CMR 430.11.2(d) and 14(4) (Use additional paper if necessary).

    Witness:_____

    Testimony::_____

    Witness:_____

    Testimony:_____

7.  Do you wish to have a taped hearing in accordance with the provisions of 103 CMR 430. 12 (3)?
    Yes _____    No _____

    Received by _____    Date/Time: _____

## DEPARTMENT OF CORRECTION

### EVIDENCE REQUESTED BY INMATE FORM

TO: MCGUINNESS, BRENDAN                              Commit # : W86294

RE: 44460                                            Date: 20060315

I understand that I will be served at a reasonable time prior to my disciplinary hearing with any documents which may be used against me in accordance with 103 CMR 430.11 (1).  I wish to request access to the following document(s) prior to my hearing which I believe will show me not guilty of the alleged infraction(s) contained in the D-Report. I understand that, in the event the Disciplinary Officer at the institution where the alleged disciplinary infraction(s) occurred denies my request for these document(s), it will be up to the Hearing Officer to decide if I am entitled to the document(s) for the reason(s) I have stated. The Hearing Officer will determine if the requested document(s) are relevant and not merely repetitive and whether they are central to the preparation of my defense. The Hearing Officer may deny my request for document(s) if they determine that producing them would be hazardous in the particular situation. If the Hearing Officer decides that the document(s) need not be provided, the reason(s) will be included in the written decision.

I am requesting the following specific document(s): _____

_____

_____

Each document is central to my defense for the following reasons: _____

_____

_____

_____

_____

_____

Please be advised that failure to return this form to the Disciplinary Officer within 24 hours of receiving it will be considered as a waiver of request for any evidence.

Received by: _____    Date: _____    Time: _____

MCI CEDAR JUNCTION

**DEPARTMENT OF CORRECTION**

**NOTICE OF CONTINUANCE**

TO: MCGUINNESS, BRENDAN                    ID#: W86294

REPORT DATE: 20041018                         REPORT #: 44460

AS PROVIDED UNDER DISCIPLINARY REGULATIONS 103 CMR 430.11 AND 430.12, A CONTINUANCE HAS BEEN GRANTED FOR YOUR PENDING DISCIPLINARY HEARING.

YOUR HEARING HAS BEEN RESCHEDULED FOR: _____
                                                              DATE/TIME

NOTICE SERVED BY: _____
                              (STAFF PERSON'S SIGNATURE)

DATE/TIME:_____

INMATE SIGNATURE:_____DATE/TIME:_____

I PERSONALLY DELIVERED A COPY OF THIS NOTICE TO INMATE  MCGUINNESS, BRENDAN

AND THEY REFUSED TO SIGN.

STAFF PERSON'S SIGNATURE:_____DATE:_____

PRINT NAME:_____TIME:_____

* If an open date, you will be notified of the new date at least 24 hours prior to the hearing.

### MASSACHUSETTS DEPARTMENT OF CORRECTION
### MCI CEDAR JUNCTION

### RESULTS OF APPEAL

TO: ___MCGUINNESS, BRENDAN___   I.D. No __W86294__   Housing Unit: _____J3_____

Re: D-Report No. ___44460___                       Date : ____20060315____

A.

| Code Description | Sanctions | Start Date | Unit | # of Units | End Date | #Credits | Amount |
|---|---|---|---|---|---|---|---|
| 5-15-POSS/MANUF/INTRO OF A WEAPON | ISO | 20041122 | | 15 | 20041207 | | |

Grounds for Appeal:

B. By the Superintendent        Decision _____    Date of Decision _____

After reviewing your case involving the above cited Disciplinary Report, I find as follows

| Code Description | Sanctions | Start Date | #of Units | # Credits | End Date |
|---|---|---|---|---|---|
| 5-15-POSS/MANUF/INTRO OF A WEAPON | ISO | | | | |

Superintendent's Appeal Notes:

_____                    _____
Superintendent                                         Date

A copy of this decision has been served on the inmate ___MCGUINNESS, BRENDAN___

Served by: _____    Date _____
              Staff Signature

MASSACHUSETTS DEPARTMENT OF CORRECTION

DISCIPLINARY HEARING

INMATE: **MCGUINNESS, BRENDAN**              #:          Unit/Cell/Bed: **J3/10/A**

REPORT #:          DATE OF REPORT: **20041018**              Type: **Formal**

REFERRED to DA:   **No**

OFFENSE:   **5-15, 5-24, 5-33**

DATE OF HEARING: **20041207**              HEARING OFFICER:  **Maillet, Joel P**

HEARING HELD AT:

1. The Inmate was given at least 24 hours notice of the hearing (if no,
   attach 24 waiver)          YES          NO          WAIVED

2. The Inmate is present before the hearing officer (if not, attach
   refusal to appear form) YES          NO          REFUSED

3. The inmate has been advised of his right to remain silent, since the offense
   charged has, or may be referred to the District Attorney. The inmate has
   been further advised that his silence may be used to draw an adverse
   inference against him, but his silence alone may not be
   used to support a guilty finding     YES          NO

4. The Inmate requested representation
   The Inmate is represented by an attorney/law student  YES          NO
   Name of legal representative:

5. The Inmate requested the presence of the reporting staff
   The reporting staff person is present          YES          NO
   If the Inmate's request was denied, indicate the reason:

6. Inmate challenges impartiality of the Hearing Officer.   YES          NO
   If yes, state reasons why:

7. Witness: if None requested, check here
   A. REQUESTED BY INMATE: (If any witness request is denied, a written explanation of
                            the reasons must be included as part of the record)
   B. REQUESTED BY HEARING OFFICER:
   ************************************************************************
   Reason For Exclusion Of Witnesses And/OR Evidence

8. Presentation of evidence:
   A. Inmate Statement
      PLEA:

      Statement in defense(summary):

   B.Reporting Staff Person's Statement:

   C. Disciplinary Officer Statement:

   D. Other Statements: (If witness has been denied, indicate reasons for
      denial in this space)
   ************************************************************************
   E. Documentary Evidence:
   In addition to the Disciplinary Report, The Hearing Officer accepted

MASSACHUSETTS DEPARTMENT OF CORRECTION

DISCIPLINARY HEARING

INMATE: **MCGUINNESS, BRENDAN**                #:              Unit/Cell/Bed: **J3/10/A**

into evidence, and considered the following documents, physical evidence, photographs/video tapes:

Evidence Submitted by Inmate

Statement Of Evidence Relied Upon To Support Findings:

Sanction Rationale

The Inmate has been advised of the Hearing Officer's decision & a copy of document has been delivered to the Inmate.

The Inmate has been advised of his/her right to appeal this decision within 15 days of his/her receipt to the Superintendent:

Staff Signature                    Date **20041207**    Time

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### DISCIPLINARY REPORT

| | | | | | |
|---|---|---|---|---|---|
| **Inmate** | MCGUINESS, BRENDAN M | | **Commit No** A91830 | **Housing Unit** L-3NSMU | |
| **Date** | 30-JAN-2005 | **D- Report No.** | 50624 | **Institution** | SOUZA-BARANOWSKI CORRECTIONAL |

**OFFENSE(S) & CODE NO.:**

02-VIOLATING ANY DEPARTMENT RULE OR REGULATION
08-CONDUCT WHICH DISRUPTS
18-FIGHTING WITH, ASSAULTING, OR THREATENING ANOTHER PERSON WITH ANY OFFENSE AGAINS
PERSON OR PROPERTY
32-VIOLATING ANY LAW
33-ATTEMPTING TO COMMIT ANY OFFENSE

**Major** [X]      **Minor** []

**Description of Offense(s)**

At approximately 12:30 PM while escorting the nurse on afternoon medication rounds, I, C.O. McGinty, was assaulted by inmate McGuiness, Brendan A91830 housed in cell 16 in unit L-3.

During the medication rounds inmate McGuiness was handcuffed in the front for medication distribution. The cell door was opened and inmate McGuiness took his first dose of medication and then struck me with his restrained wrists on the right side of my head. Inmate McGuiness pushed the medication cart away from his cell and exited the cell violently assaulting Officer Santiago as well. While inmate McGuiness was being subdued, he continued to assault staff with his hands and feet as well as spitting striking this officer in the head and uniform collar with saliva. Responding staff helped subdue the inmate by placing him in waist chains and leg irons. I had no further contact with inmate McGuiness. EOR

**Has Inmate been placed on Awaiting Action Status**      **Yes** [X]      **No** []

**Referred to DA** [X] **Yes** [] **No**     **Referred to DDU** [X] **Yes** [] **No**

**Reporting Staff** _____ Daniel McGinty S _____     **Date** 30-JAN-2005     **Time** 13:52

**Days off** Wed  Thu

**Shift** 7-3

**Shift Commander** _____ William Ryan _____     **Date** 30-JAN-2005     **Time** 19:09

**Disciplinary Officer** _____ James Hart R _____     **Date** 31-JAN-2005     **Time** 07:05

**Results** GUILTY

| Code Description | Sanctions | Start Date | End Date | # of Units | SS | Amount |
|---|---|---|---|---|---|---|
| 02-VIOLATING ANY DEPARTMENT RULE OR REGULATION | Comb W/#18 | 20050801 | | 0 | | |

20050802 11:35

**EXHIBIT**
*9*

# COMMONWEALTH OF MASSACHUSETTS

## DEPARTMENT OF CORRECTION

### DISCIPLINARY REPORT

| Inmate | MCGUINESS, BRENDAN M | | Commit No | A91830 | Housing Unit | L-3NSMU |
|---|---|---|---|---|---|---|
| Date | 30-JAN-2005 | D- Report No. | 50624 | Institution | SOUZA-BARANOWSKI CORRECTIONAL | |

| | | | | |
|---|---|---|---|---|
| 08-CONDUCT WHICH DISRUPTS | Comb W/#18 | | 20050801 | 0 |
| 18-FIGHTING WITH, ASSAULTING, OR THREATENING ANOTHER PERSON WITH ANY OFFENSE AGAINST HIS PERSON OR PROPERTY | Rec. DDU | | 20050801 | 665 |
| 32-VIOLATING ANY LAW | Comb W/#18 | | 20050801 | 0 |
| 33-ATTEMPTING TO COMMIT ANY OFFENSE | Dismissed | | | |

| Reviewing Authority | Thomas Dickhaut E | | Date | 15-APR-2005 | Time | 15:09 |
|---|---|---|---|---|---|---|

20050802 11:35



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety*
*Department of Correction*
*Office of the Deputy Commissioner*
*P.O. Box 9125*
*Concord, MA  01742-9125*
*(978) 405-6622*
*Fax: (978) 405-6619*
*www.mass.gov/doc*



**Mitt Romney**
*Governor*
**Kerry Healey**
*Lieutenant Governor*
**Edward A. Flynn**
*Secretary*

**Kathleen M. Dennehy**
*Commissioner*
**James R. Bender**
*Deputy Commissioner*

TO:        David Nolan, Superintendent
           MCI-Cedar Junction

FROM:    Susan McDonald, Administrative Assistant to the Deputy Commissioner

RE:        **Department Disciplinary Unit Referral (s)**

DATE:

Be advised that Deputy Commissioner James R. Bender has **approved the attached disciplinary**
matter(s) for DDU hearing(s).

1.        Brendan McGuiness, A91830 (SBCC #50622 and 50624) Approved

If you have any questions, please feel free to contact me at 978-405-6623.

cc:    Lois Russo, Superintendent, Souza Baranowski Correctional Center
       Patrick Depalo, Special Hearing Officer, MCI-Cedar Junction
       Ernest Therien, Disciplinary Officer, MCI-Cedar Junction
       James Hart, Disciplinary Officer, Souza Baranowski Correctional Center
       File

Printed on Recycled Paper

MASSACHUSETTS DEPARTMENT OF CORRECTION

## DISCIPLINARY HEARING SUMMARY

**INMATE:** Brendan McGuiness          **#:** A-91830

**REPORT#:** 50624                     **DATE OF REPORT:** January 30, 2005

**DATE OF HEARING:** July 27, 2005     **SPECIAL HEARING OFFICER:**   Captain Patrick DePalo

**HEARING HELD AT:** Souza Baranowski Correctional Center

1.    The inmate was given at least 24 hours notice of the hearing (if no, attach 24-hour waiver).  YES   NO  (X)*

                                                                                 *Waiver attached
2.    The inmate is present before the hearing officer (if not, attach refusal to appear form).  YES (X)  NO

3.    The inmate has been advised of his right to remain silent, since the offense charged has, or may be referred to the District Attorney.  The inmate has been further advised that his silence may be used to draw an adverse inference against him, but his silence alone may not be used to support a guilty finding.  YES  NO (X)

                                                                          **Pleaded Guilty see form
4.    The inmate requested representation.  YES  NO (X)
      The inmate is represented by an attorney/law student.  YES     NO (X)
      Name of legal representative:  N/A

5.    The inmate requested the presence of the reporting staff.  YES   NO (X)

      The reporting staff person is present.  YES      NO (X)
      If the inmate's request was denied, indicate the reason:  (N/A)

6.    Inmate challenges impartiality of the Hearing Officer.
      YES      NO (X)

      If yes, state reasons why:

7.    The hearing was tape-recorded.  YES  (X)   NO

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### Requests and Motions

Inmate McGuiness made no request for documentary evidence:

Page 2

INMATE: Brendan McGuiness                    #: A-91830                        D-REPORT #: 50624

8.    Witness:  If none requested, check here  XXX

      A.      REQUESTED BY INMATE:        (If any witness request is denied, a written explanation of the reasons
                                          must be included as part of the record)

          (1)

          (2)  N/A

          (3)

      B. REQUESTED BY HEARING OFFICER:

          (1)

          (2)  N/A

          (3)

**********************************************************************

9.    Presentation of evidence:

    A.  Inmate Statement

    PLEA: Guilty plea entered –  (2), (8), (18), (32) and (33)

    Statement in defense (summary):

      -Inmate McGuiness pleaded guilty (see attached form)

B.  Reporting Staff Person's Statement:

    -Officers report submitted as true pursuant to 103 CMR 430.14 (5).

PAGE 4

INMATE: Brendan McGuiness                #: A-91830                D-REPORT #: 50624

FINDINGS: Guilty to charge – (2), (8), (18) and (32)/ dismissed (33) in accordance with the Disciplinary Code of Offenses.

Statement of Evidence Relied upon to Support Findings: (continue on Pg. 4a if necessary)

Using the standard of *'a preponderance of the evidence'* (as set forth in the Disciplinary Regulations 103 CMR 430.06), this Special Hearing Officer (SHO) has concluded that culpable intent on the part of Inmate McGuiness has been established. This decision is predicated on the disciplinary report submitted by Officer McGinty and the inmate admission of guilt. The report shows that inmate McGuiness while inmate McGuiness was receiving his medication struck staff without provocation in the head with his restrained hands (18). The report shows this inmate exited his cell without authorization (2) and struck another staff member. As a result of this inmates action emergency response was initiated (8). This inmate not only struck staff with is hands but used his feet (32) and spit at staff striking them in the head and collar area.

SANCTIONS AND RECOMMENDATIONS:

Charge – (1), (2), (8), (18), and (32) / - 24 months DDU/ 2 months credit/ 22 months DDU to serve not concurrent with any other DDU sanction, but from and after.

Reason for Sanction:

This decision is intended as a means of educating the inmate as to the consequences of his actions and to hopefully provide an adequate future deterrent, although other sanctions have not waivered this inmate from his steadfast path. This inmate is reminded that his actions in the correctional environment serves to compromise the safety of others and greatly undermines institutional security. Assaults against staff or other inmates will not be tolerated. A review of this individual's administrative chronology reveals that he has been the recipient of over ten (10) disciplinary reports since his incarceration. These reports are all for a multiple of offenses, to include but not limited to: insolent to staff, refusing staff orders, disruptive conduct, possession of a weapon and flooding his cell and threats against staff to name a few. Hence it is the determination by this SHO that this individual's placement in the department's most secure setting is warranted.

The inmate has been advised of his right to appeal this decision within 15 days upon receipt of the hearing officer's findings to the Deputy Commissioner of Corrections.   YES (X)   NO

Special Hearing Officer: Captain Patrick DePalo                Date:  July 29, 2005

The inmate has been advised of the Hearing officer's decision and a copy of this document has been delivered to the inmate:        YES (X)   NO

Staff Signature:                                          Date:  8/2/05

Commonwealth of Massachusetts
Department of Correction

Entry of Guilty Plea

# DDU REFERRAL

I HAVE BEEN ADVISED THAT I HAVE THE RIGHT TO  (an interview - Minor Matter) (appear before a hearing officer - Major Matter) concerning the charges pending against me in Disciplinary Report#: <u>50624</u>

I DO NOT WISH TO  (have an interview)  (appear before a Hearing Officer)  and hereby waive that right per 103 CMR 430.11 (4).  I further waive my twenty-four hour notice of hearing per 103 CMR 430.11 (3).

I HEREBY ENTER A PLEA OF GUILTY, CONCERNING THE CHARGES PENDING; BUT RESERVE MY RIGHT TO APPEAL ANY SANCTION WHICH MAY BE IMPOSED. I AM SIGNING THIS DOCUMENT OF MY OWN FREE WILL AND AM UNDER NO DURESS, COERCION OR THREATS, AND FULLY UNDERSTAND THE CONTENTS AND MEANING  OF THIS DOCUMENT. I ALSO STATE THAT I HAVE NO OBJECTION TO THE OFFICER WHO IS CONSIDERING THIS CASE.

INMATE SIGNATURE: _B. McG._

TYPE OR PRINT NAME: <u>BRENDAN MCGUINESS</u>                                    #: <u>A91830</u>

DATE: _7/27/05_                                              TIME: _10/Am_

WITNESSED BY: _____                             TITLE: _Cept DDU-SHO_

TYPE OR PRINT NAME: _Patrick DeCola, Cept_

BASED ON THE INMATE'S PLEA OF GUILTY ON CHARGES, AND THE INFORMATION PROVIDED IN THE REPORTING STAFF'S REPORT;  THE INMATE IS FOUND GUILTY AND THE FOLLOWING SANCTIONS(S) IMPOSED:

_24 month DDU - 2 month credit / 22 months to serve DDU Not concurrent with any other DDU sanctions but from and after_

INMATE HAS BEEN GIVEN A COPY OF THIS DOCUMENT AND HAS BEEN ADVISED OF HIS RIGHT TO APPEAL THIS MATTER.

STAFF SIGNATURE: _____                    DATE/TIME: _7/27/05_

SOUZA-BARANOWSKI CORRECTIONAL

RE, JRN SIGNED COPY
TO DISCIPLINARY OFFICE

L3

# DEPARTMENT OF CORRECTION
## NOTICE OF DISCIPLINARY HEARING

TO:  BRENDAN MCGUINESS M                                    I.D.#:      A91830

Re: Disciplinary Report #:          50624                  Date :     01/31/2005

You have been charged with a disciplinary offense(s) which has been referred to the Hearing Officer
for a hearing. A description of the offense(s) is contained in the attached Disciplinary Report. Your
disciplinary hearing has been scheduled for:

*OPEN*

# DDU REFERRAL

(Date of Hearing)

If you wish to be represented, request the presence of the reporting staff person, request other
witnesses, and/or request a taped hearing, please fill out the attached Request for
Representation/Witness Form. If you wish to request evidence, please fill out the attached Request
for Evidence Form.

Notice Served By:                    Date:                        Time:

Inmate's Signature:                  Date:                        Time:

***When an inmate has been given copies of the above enumerated documents, but refuses to sign this
acknowledgement, the staff person who delivered the documents shall complete the following:

I personally delivered copies of this Notice, Disciplinary Report, Request for Representation/Witness
Form, and Request for Evidence Form to :

BRENDAN MCGUINESS M

(Inmate's Name)

and he/she refused to sign.

Staff Person's Signature: *JHart*                             Date:   *1·31·05*

Print Name: *JAMES HART*                                      Time:   *0800*

**The actual scheduling of the hearing may be delayed if circumstances require; however, you will be notified of the
actual date of the re-scheduled hearing at least twenty-four(24) hours in advance of that date.
ATT Language Line Needed   [ ]

SOUZA-BARANOWSKI COF

**Department of Correction**

**Waiver of Procedural Time Limits**

TO:    <u>MCGUINESS, BRENDAN M , A91830</u>
       Inmate's Name

FROM:  S6T JAMES KIMPT

★ *MENTAL HEALTH WATCH*

**DDU REFERRAL**

In accordance with the provisions of 103 CMR 430.23,  I am waiving all procedural time limits concerning

Disciplinary Report # <u>50624</u>

_____
Superintendent's Signature

_____
2/3/05
Date

SOUZA-BARANOWSKI CORRECTIONAL

03/20/2006 11:49 FAX 5088306201                                                     ☑012



# Plymouth County Correctional Facility

## Disciplinary Report

| | | |
|---|---|---|
| **Report Date** 2005/06/20 | **Incident Date** 2005/06/20 | **Incident Time** 19:48 |

**Booking Number** 501370                      **Inmate ID** 38381

**Inmate Name:** MCGUINNESS, BRENDAN MICHAEL

**Location:** E-3                      **Reporting Officer:** Danielle Webb

**Offense:** 08 – CONDUCT WHICH DISRUPTS THE SECURITY/ORDERLY RUNNING OF INSTITUTION, 18A – FIGHTING,ASSAULTING INMATE WITH OFFENSE AGAINST INMATE/PROPERTY

**Persons Involved:** BRODY, JEROME  CROSS, JOSEPH  HANNAH, AL  MORGAN, ETHAN  PETRILLO, JASON

**Report Subject:** fight

**Statement of Offense:**

On June 20, 2005, I, Officer Danielle Webb, was assigned to Unit E-3 with Officer Sherrie Miller for the 1500-2300 shift. Just after the dayroom opened for rec at 1912 hrs, a fight broke out behind the stairs by cells E316 and E317. Involved in the fight were the following inmates: McGuinness, Brendan (#38381), Morgan, Ethan (#30352), Brody, Jerome (#40271), Petrillo, Jason (#40165), Cross, Joseph (#34454) and Hannah, Al (#34315). A Code 1 Fight was called by Officer Miller and the unit was told to step in. Lt. Pampalone and CERT officers Hurley, Jones, Polasino, Facchini, and Buttner responded immediately. The inmates were separated, handcuffed, and escorted to Unit G without further incident. Let it be noted that a shank was found in the dayroom in front of cell 316 after the inmates were escorted to Unit G. Also note that the unit was extremely slow locking in. At 1941hours BCI Officer Ballinger entered the unit to take photos of the blood in the dayroom.

**Reporting Officer:** Danielle Webb

**Signature** _____      **FSC Approval:** vpampalone

                                          **Signature** _____

**Disposition of Evidence:**

**Action Taken (Including Use of Force):**

Awaiting Action _____      Minor Sanction _____      Major Violation _____

Referred to D.A. _____      Investigation _____      Date Commenced _____

**Disciplinary Officer:** Vito Pampalone

**Signature** _____                      **Date** _____

**Reviewing Authority (print name):** _____

Printed:    3/20/2006    10:39                      Page 1

**EXHIBIT**

**10**



# Plymouth County Correctional Facility

## Informational Report

| | Report Date: 2005/07/07 | Incident Date: 2005/07/07 | Incident Time: 19:56 |
|---|---|---|---|

**Name/Event:** MCGUINNESS, BRENDAN MICHAEL      **Booking** 501370
**Location:** GNE      **Reporting Officer:** Richard Telford
**Persons Involved:**
**Report Subject:**

NARRATIVE

SIR ,
TONIGHT , JULY 7 , 2005 AT ABOUT 1914 HRS I WAS IN UNIT G CONDUCTING AN INTERVIEW WITH INMATE ISHMAEL MALAVE WHEN LT. ROTH ADVISED ME OF A SITUATION IN UNIT GNE.

LT. ROTH , THE UNIT G- SUPERVISOR ADVISED ME THAT NORFOLK CTY INMATE BRENDAN MCGUINESS IN CELL # 210 HAD JUST RIPPED HIS CELL LIGHT FIXTURE FRONT PIECE OFF THE CELL WALL . HIS DESTRUCTION HAS RENDERED THE CELL UNAVAILABLE UNTIL REPAIRED BY MAINTENANCE . WHEN G-FLOOR OFFICER GIOVE HEARD THE NOISE IN THE CELL HE WENT TO INVESTIGATE AND FOUND THIS INMATE STANDING WITH BROKEN PARTS OF HIS CELL LIGHT HELD IN HIS HANDS AS HE TOOK A THREATENING STANCE. OFFICER GIOVE VERBALLY ORDERED INMATE MCGUINESS TO DROP THE WEAPONS WHICH HE DID. HE WAS THEN ORDERED TO PRESENT HIMSELF TO BE CUFFED AND WAS.THE INMATE AT THIS TIME WAS ESCORTED TO G-FLOOR. LT. ROTH REQUESTED THAT BCI COME TO PHOTOGRAPH THE DAMAGE AND THIS WAS DONE. EARLIER IN THE SHIFT I HAD BEEN MADE AWARE OF THIS INMATES DISPLEASURE AT BEING HELD HERE AT PCCF AND WANTED A TRANSFER BACK TO DEDHAM HOC. HE HAD WRITTEN A LETTER TO DIRECTOR MONIZ THAT HAD THREATS OF WHAT KIND OF VIOLENT HISTORY HE HAS.

I THEN AUTHORIZED THAT THIS INMATE BE REMOVED FROM THE SPECIAL MANAGEMENT UNIT TO BOOKING CELL # 114 . DIRECTOR MONIZ WAS ADVISED OF THIS MOVE. INMATE MCGUINESS HAS A LONG VIOLENT HISTORY WITH THE DOC SO EVERY PRECAUTION WAS TAKEN TO SAFELY MOVE THIS INMATE TO BOOKING. OFFICERS GRABOWSKI AND MENTON WEARING PROTECTIVE GEAR ESCORTED THIS INMATE TO BOOKING. USE OF O/C SPRAY WAS AUTHORIZED BY ME AMD PROVIDED BY LT. ANDERSON WHO ALSO FILMED THE MOVE. THERE WAS ONLY ONE MEDICAL OFFICER ON DUTY SO I TOOK IT UPON MYSELF TO

**Action(s) Completed:** 7/7/2005
**FSC Reviewed:**

Printed:    3/20/2006    10:37            Page 1

**EXHIBIT**
Exhibit
11

05/20/2006 11:49 FAX 5088306201                                    PAGE  09/12
@009



# Plymouth County Correctional Facility
## Informational Report

| Report Date: 2005/07/07 | Incident Date: 2005/07/07 | Incident Time: 18:42 |
|---|---|---|

Name/Event: MCGUINNESS, BRENDAN MICHAEL
Location: GNE                                          Booking 501370
Persons Involved:                    Reporting Officer: Thomas Giove
Report Subject: Destruction of property to affect a transfer

NARRATIVE

Sir, On Thursday 07/07/2005 at approximately 1842 hours I was working on the east side of G-floor. I was sent by the east side control officer to check on inmate Brendan Mcguinness #38381 in cell 210 GNE. I arrived at the cell and saw inmate Mcguinness standing at the door with a large metal object in his hand. The light in his cell had been torn off the wall and the brackets bent off, one of which was the object in his hand. I ordered Mcguinness to put the object down and he complied. I then ordered him to cuff up and he complied. He was escorted down to G-floor and I placed leg irons on him. Once the legs were secured the hand cuffs were moved from his front to the back. Mcguinness stated that this was not personal and that he would do what he needed to do to get transferred. He claimed that he was not the property of Plymouth county and was illegally sent here by Norfolk county. He stated that he had written to people about his concerns and was not satisfied with his situation here. Inmate Mcguinness was to be moved to the Booking department. Captain Telford checked the restraints and they were double locked by myself. Mcguinness was then escorted to Booking on camera By Lt. Roth and C/Os Menton and Grabowski without further incident. Myself and C/O K. Murphy went to cell 210 packed the inmates property and collected the light cover and items from it. The light and items were locked in the tack locker to be brought to the maintenance department. The cell was cleaned and then secured until the repairs are completed.

DATE  | ACTION ENTERED BY   | STATUS OF CORRECTIVE ACTION          | Comp.

Action(s) Completed: 7/7/2005
FSC Reviewed:

Printed:      3/20/2006    10:36                    Page  1

EXHIBIT

12



# Plymouth County Correctional Facility
## Informational Report

**Report Date:** 2005/07/07     **Incident Date:** 2005/07/07     **Incident Time:** 19:14

**Name/Event:** MCGUINNESS, BRENDAN MICHAEL

**Location:** BOOK                                    **Booking** 501370

**Persons Involved:**                     **Reporting Officer:** Charles Roth

**Report Subject:** DESTRUCTION OF COUNTY PROPERTY

NARRATIVE

--1914 HRS; As the G Lieutenant, an incident occurred prompting this report. I received notification from Officer McKinnon that we needed to check cell GNE 210.

--Officer Giove went to the cell to investigate and found that Brendan McGuiness 38318 had destroyed the light fixture in the cell and was brandishing to pieces of metal that Officer Giove ordered McGuiness to put down. McGuiness complied. At that time Officer Giove told McGuiness to place his hands in the trap to be handcuffed. McGuiness complied. At this time Officer Giove stated that I should have a look at the cell. When I went to examine the cell I found that McGuiness had pulled the cover off the fixture and in the process, had broken a light bulb and generally made a mess of his cell. He did this by ripping apart his bed sheets and wedging them behind the fixture and pulling down. In doing so he pulled the cover and all screws holding it out of the fixture.

--The inmate was placed in leg irons and handcuffs for security. He was not agitated or resisting. I asked why he did it and he stated that he was a "Norfolk" inmate and wanted out of this jail.

--Cpt Telford had been in the office interviewing another inmate and I notified him of the situation. He and I agreed that McGuiness should be housed in the soft cell (R113) until his situation could be disposed. Apparently he is being moved to Dedham tomorrow, however, the inmate was not informed of that decision. We had Officers Menton and Grabowski put on body armor to escort the inmate to Booking. We were made aware of his assaultive behavior during the shift brief by Lt Nye. It was decided that we would take little chance with this inmate for any injuries or assaultive behavior during his transport to Booking. The inmate was informed of what was going to happen relative to his move to Booking. He stated that he understood. His property was packed and sent to Property for safekeeping until his departure. McGuiness was placed in Cell R113 and will remain until he is transported out of the facility. The inmate was strip searched and placed in R113.

**Action(s) Completed:** 7/7/2005
**FSC Reviewed:**           Lt C R Roth

Printed:     3/20/2006     10:38                    Page  1

EXHIBIT
13

03/20/2006 11:49 FAX 5088306201                                                PAGE  11/12

                                                                                  ☑011



# Plymouth County Correctional Facility
## Informational Report

**Report Date:** 2005/07/07    **Incident Date:** 2005/07/07    **Incident Time:** 19:14

**Name/Event:** MCGUINNESS, BRENDAN MICHAEL                    **Booking** 501370
**Location:** BOOK                              **Reporting Officer:** Charles Roth
**Persons Involved:**
**Report Subject:** DESTRUCTION OF COUNTY PROPERTY

--Lt Anderson was on the camera, see attached report, and McGuiness' transport to Booking was authorized by Cpt Telford. OC was on hand if the inmate decided against compliance. There were no further issues. Maintenance report submitted by Officer Murphy, attached information report by Officer Giove, d-report by Officer McKinnon and information report by Lt Anderson. Cell GNE 210 will remain vacant until repairs are made by the Maintenance Section. BCI called in to take pictures of the damaged cell. Deputy Ballinger reporting in. BCI Control #05-201.

--Addendum to initial report;

--Went back to booking to give the inmate his mattress and he was let out to use the toilet in R114, upon exiting the cell he turned over a hand made sharpened instrument. I asked if this was the last of the problems and he stated that it was. He stated that it was nothing personal, he just wanted to see his daughter again. Nothing further.

DATE   |  ACTION ENTERED BY   | STATUS OF CORRECTIVE ACTION           | Comp.

**Action(s) Completed:** 7/7/2005
**FSC Reviewed:**       Lt C R Roth

Printed:      3/20/2006    10:38                    Page  2

EXHIBIT
14

---

03/20/2006 11:48 FAX 5088306201                                          ☒004



# Plymouth County Correctional Facility
## Informational Report

**Report Date:** 2005/07/07    **Incident Date:** 2005/07/07    **Incident Time:** 20:55

**Name/Event:** MCGUINNESS, BRENDAN MICHAEL    **Booking** 501370
**Location:** GNE
**Persons Involved:**    **Reporting Officer:** Mark Holmes
**Report Subject:** SHANK

NARRATIVE

On 07/07/05 at approx. 2055 ad-seg inmate Brendan Mcguinness, housed temporarily in cell R114, was placed into cell R113 to use the toilet. Upon completion inmate Mcguinness was moved back into cell R114. Inmate Mcguinness then stated that he had a shank to give me and that all he wanted in return was to be moved out of this facility, so he could see his daughter. Inmate Mcguinness handed me the shank (see attached photocopy). I asked Mcguinness where he had the shank hidden. Mcguinness stated, "You help me get moved and I'll tell you." I told inmate Mcguinness I would look into a move tomorrow. Inmate Mcguinness then stated, "It was up my ass wrapped in cellophane and toilet paper. I flushed all that down the toilet after I shit." I asked Mcguinness where he got the shank and where the material came from. Inmate Mcguinness stated that the material was part of the floor drain of the slop sink in DN3. Inmate Mcguinness stated that he made took the metal from the floor drain, made the shank, and that a search was conducted in DN3 when this piece was discovered missing. I told inmate Mcguinness that I would look into getting him moved to another facility as soon as possible. Inmate Mcguinness is scheduled to be moved to Norfolk County on 07/08/05. Inmate Mcguinness is not aware of the pending move at this time. The shank was turned over to Capt. Telford.

| DATE | ACTION ENTERED BY | STATUS OF CORRECTIVE ACTION | Comp. |
|---|---|---|---|

**Action(s) Completed:** 7/7/2005
**FSC Reviewed:** mholmes

Printed:    3/20/2006    10:38                    Page 1



EXHIBIT
15

03/20/2006 11:49 FAX 5086306201          CLASSDIV          PAGE 08/12
                                                          ☑008



# Plymouth County Correctional Facility
## Disciplinary Report

**Report Date** 2005/07/07

**Incident Date** 2005/07/07     **Incident Time** 08:08

**Booking Number** 501370          **Inmate ID** 38381

**Inmate Name:** MCGUINNESS, BRENDAN MICHAEL
**Location:** DN-3
**Offense:**          **Reporting Officer:** Edward Barrett
01C - INSOLENCE TOWARDS A STAFF MEMBER, 02 - VIOLATING ANY INSTITUTIONAL RULE OR REGULATION, 04 - BEING OUT OF PLACE, 08 - CONDUCT WHICH DISRUPTS THE SECURITY/ORDERLY RUNNING OF INSTITUTION, 32 - VIOLATING ANY LAW OF THE COMMONWLTH OF MASS OR THE UNITED STATES, 33 - ATTEMPTING TO COMMIT ANY OFFENSE,AIDING ANOTHER PERSONTO COMIT AN OFF

**Persons Involved:**

**Report Subject:**

**Statement of Offense:**
ON 07-05-05, AT APPROXIMATELY 1440 HOURS, DN-3 OFFICER WOOD CALLED ME AND SAID THAT HE WANTED TO SPEAK TO AN INMATE IS HIS UNIT THAT APPEARED TO HAVE BEEN ASSAULTED. I HAD OFFICER WOOD SEND THIS INMATE OUT TO THE ZONE 3 UTM'S OFFICE. WHEN HE CAME OUT TO THE OFFICE I DID OBSERVE SOME SLIGHT SWELLING ON THE LEFT OF HIS FACE. I ASKED HIM IF HE WAS IN A FIGHT OR WAS ASSAULTED AND HE ANSWERED NO. AFTER A FEW MINUTES OF QUESTIONING HE DID TELL ME HE GOT HIT SEVERAL TIMES IN HIS CELL BUT REFUSED TO ELABORATE MORE. AFTER THIS CONVERSATION, I MOVED THE INMATE THAT APPARENTLY WAS ASSAULTED TO UNIT G.
I THEN STARTED AN INVESTIGATION INTO THIS MATTER TRYING TO DETERMINE IF THE INMATE WAS ASSAULTED OR FOUGHT, AND WHO THE OTHER INMATE INVOLVED WAS. AFTER TWO DAYS, WITH THE HELP OF ANOTHER LIEUTENANT, IT WAS DETERMINED THAT INMATE BRENDAN MCGUINNES #38381 ASSAULTED THE OTHER INMATE.
INMATE MCGUINNES WENT INTO THE OTHER INMATE'S CELL AND PUNCHED HIM SEVERAL TIMES IN THE HEAD AND UPPER TORSO. THIS INFORMATION WAS OBTAINED AFTER SPEAKING WITH A RELIABLE CONFIDENTIAL INFORMANT WHO WITNESSED THE ASSAULT AND SEVERAL INMATES WHO LIVE IN DN-3.

**Reporting Officer:** Edward Barrett          **FSC Approval:** ebarrett
**Signature**                                   **Signature**

**Disposition of Evidence:**

**Action Taken (Including Use of Force):**
Printed:     3/20/2006     10:38                Page 1

> EXHIBIT
> 16