UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

No. 05-11738-EFH

Brendan M. McGUINNESS, PRO SE
    Plaintiff,

vs.

James R. BENDER, et al.
    Defendants.

---

**MOTION TO SUPPLEMENT, AND/OR JOIN
DEFENDANTS TO PLAINTIFF'S COMPLAINT
TO ENSURE A JUST ADJUDICATION.**

Now comes the plaintiff PRO SE to respectfully request, pursuant to the provisions of Fed. R. Civ. P. 15 and 19, that this Honorable Court allow him one last time to supplement his complaint, and/or join parties to the matter. As reasons, the plaintiff argues that the issues in the proposed supplemental complaint (attached) are essential to prove certain claims in the original complaint and vice versa. For instance, these new claims deal with the decision of certain medical staff at the prison to abruptly discontinue plaintiff's prescription for Oxycodone after he had an altercation with staff at the medication line. Oxycodone is a highly addictive opiate-based drug; plaintiff was in the process of two surgical procedures for a couple of broken bones which required pins and a plate to fix.

-1-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action
No.05-11738-EFH

Brendan M. McGUINNESS, PRO SE
    Plaintiff,

vs.

U Mass Correctional Health;
Russell PHELPS, Health Service
Administrator; Doctor Marsha
TANUR; Nurse Jason KAVANAUGH;
Nurse Louise MERRILL,
    Defendants.

PROPOSED SUPPLEMENTAL
VERIFIED CIVIL RIGHTS COMPLAINT

**Cause of Action.**

    The plaintiff, a prisoner currently serving a lawful sentence of incarceration at the prison in Shirley, brings this complaint alleging that the defendants collectively and individually violated his right to due process of law as a pretrial detainee by deliberately disregarding his serious medical needs, and this resulted in serious injury. Said injury was foreseeable (namely, that plaintiff would suffer withdrawal from the abrupt and pointless discontinuation of his prescription for Oxycodone, a powerful opiate-based narcotic which plaintiff had been taking for several months due to surgery on his hand) and the failure to gradually wean plaintiff off of this highly addictive drug did in fact result in pain and suffering which culminated in a suicide attempt.

-1-

**Parties:**

1.) The plaintiff, Brendan M. McGuinness, is a citizen of the United States of America and a resident of Massachusetts. He brings this complaint seeking compensation for the violation of his substantive due process rights and the injury which resulted while he was a pretrial detainee in the custody and care of the Department of Correction ("DOC"). He is currently housed at the Souza-Baranowski Correctional Center ("SBCC") in Shirley, MA---P.O. Box 8000, Shirley, MA 01464. (Commitment number W-86294.)

2.) The defendants named in the caption on page one of this complaint, supra, are all employees of U Mass Correctional Health; U Mass Correctional Health in turn has a contract with the DOC and is responsible for the health care concerns of inmates confined within the DOC. Plaintiff asserts that these defendants were, therefore, acting under color of state law when they demonstrated deliberate indifference to a substantial risk to plaintiff which would result from the discontinuation of properly prescribed medication. They are being sued as individuals and also in their official capacity as employees of the state. They too can be served at SBCC, P.O. Box 8000, Shirley, MA 01464.

**Jurisdiction:**

3.) The jurisdiction of this court is invoked pursuant to 42 U.S.C., section 1983. See also 28 U.S.C.A., sections 31 (federal question), 1343(a)(3) and (4)(civil rights) and 1367 (supplemental).

**Statement of the Facts:**

4.) The foregoing is hereby incorporated herein by reference.
5.) In September of 2004, plaintiff was transferred as a pre-

       trial detainee to the custody of the DOC, which placed him at Walpole State Prison.

6.) While at Walpole in October of 2004, plaintiff suffered two broken bones in his right hand. He was sent to an outside hospital for treatment.

7.) On October 18, 2004, plaintiff was transferred by the DOC to SBCC in Shirley, Massachusetts. Plaintiff was placed in their Special Management Unit ("SMU").

8.) Upon arrival at SBCC, plaintiff complained of extreme pain resulting from his broken hand. Plaintiff's mental health needs were also assessed at this time; plaintiff was taking Wellbutrin and Prozac for, among other things, depression (recurrent type).

9.) Plaintiff's file states clearly that he is a suicide risk, having made several serious attempts to take his own life in the recent past.

10.) In January of 2003, plaintiff was held on suicide watch at SBCC after he tried to kill himself while free on parole. Plaintiff had cut his wrist with a butcher knife, severing six tendons and an artery in his left arm.

11.) In March of 2004, plaintiff was referred to Bridgewater State Hospital for evaluation from the Norfolk County Correctional Facility after he was found by a guard on the floor of his cell, blue in the face and not breathing with a ligature around his neck. The referring doctor said clearly that this suicide attempt was serious.

12.) The doctors at Bridgewater described plaintiff's mental illness as ADHD, depression with suicidality (recurrent type) and Anti-Social Personality Disorder.

13.) Upon arrival at SBCC on 10/18/04, plaintiff had already been seeing mental health in the DOC and all of the above was apparent on the file. Staff at SBCC immediately spoke to plaintiff about his suicidal tendencies.

14.) In November of 2004 while housed at SBCC's SMU, plaintiff met with a doctor Oladipo regarding his broken hand. The doctor scheduled a date for surgery and placed plaintiff on Percocet for pain, forty (40) miligrams per day.

15.) At some point in the next couple of months, the Percocet was changed to Oxycodone. This drug is a morphine derivative and it is highly addictive. Plaintiff was kept on this drug for over two months.

16.) On January 30, 2005, plaintiff became involved in an altercation with two officers while he was out of his cell (but in hand-cuffs) to receive medication.

17.) As a result of this altercation, Doctor Marsha Tanur placed a "hold" on plaintiff's medical order for Oxycodone.

18.) The order for Oxycodone was made by an outside doctor from Boston Medical Center; when Dr. Tanur cut plaintiff off, she was not at the prison. Dr. Tanur was on-call. In fact, the plaintiff and Dr. Tanur have never had any dealings with one another personally, and this "hold" she put on his medical order was the first time they had any dealings.

19.) Dr. Tanur, as a doctor, is aware of the fact that there exists a correlation between opiate withdrawal and suicide.

20.) Dr. Tanur neglected to take appropriate steps to determine whether plaintiff was at risk for suicide as a result of withdrawal.

21.) Dr. Tanur told defendant Nurse Jason Kavanaugh to monitor plaintiff every eight (8) hours for signs of withdrawal. Defendant Nurse Merrill wrote "noted" in plaintiff's chart to acknowledge this order.

22.) Dr. Tanur's "every 8 hours" order was grossly negligent, in fact rising to the level of deliberate indifference. Both defendants Kavanaugh and Merrill, in any event, did not in fact monitor plaintiff for signs of withdrawal.

23.) On January 31, 2005, plaintiff attempted to kill himself at

    approximately noon by hanging himself. He suffered serious physical as well as psychological injury. The anguish which opiate withdrawal entails lasted all night, no sleep, then culminated in this suicidal episode.

24.) There existed at this time several means by which the defendants could have weaned plaintiff off of the Oxycodone, either by a weaker drug (Vicadin) or with Methadone pills. Both of these methods were practiced by U Mass Correctional Health at the time in question.

25.) The abrupt discontinuation of this drug in question was the result of deliberate indifference to what it would put the the plaintiff through; no lesser measures were attempted to spare plaintiff what followed.

26.) Russell Phelps, the Health Services Administrator at SBCC, denied plaintiff's grievance at the administrative level due to his opinion that the grievance was too late. Plaintiff sought reconsideration based on the fact that he had no access to his own medical records for nine (9) months after the incident and also because plaintiff had only become aware of his rights regarding medical attention the week prior to his filing the grievance. Plaintiff never received a reply. He has exhausted his administrative remedies.

## Claims for Relief:

i.) Oxycodone is a powerful and highly addictive opiate-based narcotic used for pain relief. Plaintiff was on this drug for a period of months; he was dependent on the drug. In connection with his past history of depression with suicidal tendencies, Doctor Marsha Tanur's decision to discontinue the order "cold turkey" amounted to deliberate indifference to a substantial risk that plaintiff would suffer serious harm and injury. Such harm and injury did in fact result. This represents a violation of plaintiff's rights as a pre-trial detainee to due process of law (i.e. punishment prior to trial). U.S.C.A. XIV.

ii.) Defendants Kavanaugh and Merrill were ordered to monitor plaintiff for signs of withdrawal from the drug which the doctor discontinued. Plaintiff asserts that, while this order was insufficient to ensure his safety, the defendants nevertheless displayed deliberate indifference by failing to carry out the order and/or notify Dr. Tanur that this plaintiff was a serious suicide risk. U.S.C.A. XIV.

iii.) Russell Phelps deprived plaintiff of due process when he refused to address plaintiff's grievance on the merits. A clear record exists demonstrating that plaintiff received sub-standard care and the failure to address this evinces yet another case of deliberate indifference---as well as a procedural due process violation. U.S.C.A. XIV.

**Prayers for Relief:**

1.) Plaintiff seeks compensatory damages from Dr. Tanur in the amount of $40,000; punitive damages in the amount of $30,000.

2.) From defendants Kavanaugh and Merrill, plaintiff seeks compensation for his suffering in the amount of $5,000 each.

3.) Plaintiff seeks $5,000 in damages from Russell Phelps for compensation of pain and suffering as well as $5,000 in punitive damages for depriving plaintiff of the opportunity for redress.

4.) Plaintiff seeks a declaratory judgment in his favor stating his rights as a pretrial detainee were violated by the way he was treated, described above.

5.) Plaintiff seeks trial by jury on all counts so triable.

RESPECTFULLY SUBMITTED, PRO SE

*Brendan M. McG[...]*
BRENDAN M. McGUINNESS
S.B.C.C.

## VERIFICATION OF FACTS

I, Brendan M. McGuinness, am the plaintiff in this matter. I hereby swear and verify that all of the facts asserted herein are true and accurate to the best of my knowledge, recollection and belief. I swear to this under penalty of perjury this 2nd day of May, 2006.

*Brendan M. McGuinness*
Brendan M. McGuinness