UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO.05-11738-EFH

Brendan M. **McGUINNESS**,
    Plaintiff,

vs.

James R. **BENDER, et al.**
    Defendants.

**PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON COUNT SIX OF HIS
AMENDED COMPLAINT.**

Now comes the Plaintiff to respectfully argue that he is entitled to judgment as a matter of law on Count Six of his Amended Complaint; and to respectfully request that such judgment be entered in his favor by this Honorable Court for the reasons stated below.

**The Issue.**

In Massachusetts, General Law chapter 127, §20 establishes a Reception Center within the Department of Correction (DOC) for the purpose of classifying all newly admitted/sentenced inmates in order to determine their needs, their security rating, etc. See also 103 CMR 420.08 (INITIAL CLASSIFICATION PROCESS). These state laws, to which the DOC is indisputably subject, clearly outline the manner in which an inmate is "properly" admitted to the prison

-1-

system. See <u>Abrahams</u> v. <u>Commissioner of Correction</u>, 57 Mass. App. Ct. 861, 866 (2003)(describing this process of classification as the "appropriate[]" manner in which prisoners are to be orientated upon sentencing).

In <u>Haverty</u> v. <u>Commissioner of Correction</u>, 437 Mass. 737 (2003), the Supreme Judicial Court for Massachusetts *decided* a case which dealt with these same regulations (103 CMR 420.00). In so doing, the language used is very instructive to the present case. The SJC stated that §420 confers an "entitle(ment) ... (for) all [] prisoners housed by the (DOC) in **any** facility in the Commonwealth, no matter what level of security" to the process outlined therein. <u>Id.</u> at 748-749. More to the point, in footnote 19 of the same page, we read that the prisoners have "a **right** to participate" in classification proceedings. (Both emphases added.) <u>Cf.</u> <u>Royce</u> v. <u>Commissioner of Correction</u>, 390 Mass. 425, 427 (1983)(agency regulations have "the full force of law").

The <u>Haverty</u> Court also stated that, since the classification regulations "must [] be complied with", it is not even necessary to "reach the constitutional claims or to apply the analysis of <u>Sandin</u> v. <u>Conner</u>," (515 U.S. 472 [1995]). <u>Id.</u>

**The Facts.**

Plaintiff was sentenced to a term of confinement in the State prison (3½ years to 3½ years and one day) by a justice of the Superior Court in Norfolk County on September 28, 2005. "Upon commitment to the (DOC), each inmate shall be admitted to the

Reception Center where he or she will undergo an initial classification process." 103 CMR 420.08. The Reception Center for men is currently located at MCI-Concord. Up until 9/28/05, plaintiff had been held by the DOC as a pretrial detainee; since he was not "committed" at that time, he never received any classification to determine where he would be placed. When plaintiff was finally sentenced to an actual term of confinement on 9/28/05, he was not taken to the Reception Center for the initial classification, to which (as Haverty states) he was "entitled". [1]

Plaintiff is not allowed to grieve a classification issue. See 103 CMR 491.08(1). So what he did do is send a careful and intelligent objection to the Commissioner's office and a copy to Anthony Mendonsa, the Deputy of Classification at Souza-Baranowski Correctional Center (SBCC) in Shirley, MA. See **Exhibit A**, pp. 1-2. Receiving no response, plaintiff wrote to defendant Russo, the Superintendent of SBCC. See **Exhibit B**. To date, plaintiff has not received an answer. For purposes of this Court's analysis, he has exhausted whatever remedies existed to grieve such a peculiar scenario.

**ARGUMENT:** The 420s have the force of law, they confer upon Plaintiff a right, an enforcable entitlement, to the procedural protections contained therein (viz. an initial classification upon commitment to the Department of Correction).

Prior to his 9/28/05 sentencing, plaintiff was held by the DOC as a pretrial detainee. See M.G.L. c. 127, §52A. He was not,

---

[1] Plaintiff was taken to MCI-Concord after sentencing per 103 CMR 420.08, but a call came down from somebody and he was taken to the DDU at SBCC. To date, he has never been classified; he was verbally informed that he will be in DDU until he goes home (9/7/07).

however, "committed". As a result, he was bounced around from one prison to the next without any sort of process to determine such placement. In short, he was never classified while awaiting trial in DOC custody because he was not serving a sentence.

Upon sentencing, when plaintiff finally became legally entitled to such a classification, the DOC denied him on the grounds that he is serving a sanction (accrued during the pretrial period) which, due to its length (five years in DDU), will result in him staying segregated until his sentence ends. In other words, there is no need to obey the law.

The DOC is breaking new ground here. The plaintiff was held in segregation from 10/18/04 until 3/7/05 at SBCC awaiting action upon allegations of misconduct. In nearly five months, the defendants never resolved the allegations. From 3/7/05 until 7/8/05 (a period of four months), plaintiff was out of DOC custody. He was returned to his county of origin (which originally applied for the §52A transfer up-state), which in turn sent him to yet another county.

So the DOC's decision to pursue sanctions in the matter of allegations from a previous period of confinement was highly unorthodox to begin with. Added to it, after plaintiff was actually sentenced, the DOC has been enforcing this pretrial sanction to date, heedless of the mandates of §420.08. Plaintiff is due to be released in the Fall of 2007. If the DOC's decision in this regard goes unchecked, plaintiff will have served $3\frac{1}{2}$ years without having been classified.

103 CMR 420.08 is an explicit, exacting regulation for the



TO: KATHLEEN M. DENNEHY, DOC COMMISSIONER
FROM: BRENDAN M. McGUINNESS  W86294
RE: 103 CMR 420.00 et seq. (Classification)
DATE: February 17th, 2006.

Dear Mrs. Dennehy:

    Hi. I'm writing to you yet again to complain of yet another violation of my rights while in the custody of the Department of Correction. Since you are the commissioner of correction, I would truly appreciate it if you would see fit to reply to my complaint personally. In the recent past, I have been ignored by your deputy, James Bender. On other occasions when either I or my family have written to you, the responses we've met with by your staff here at the prison level have been completely inadequate.

    Mrs. Dennehy, on September 28, 2005, I was sentenced to serve 3½ years to 3½ years-and-one-day in prison by the superior court for Norfolk County. 103 CMR 420.08 demands that:

> "Upon commitment to the (DOC), each inmate shall be
> admitted to a Reception Center where he or she will
> undergo an initial classification process."

I was never admitted to a Reception Center upon sentencing; I was never put through the classification process outlined in the above regulation. As you are well aware, these regulations have the force of law and are binding upon the agency which promulgated them---i.e. the DOC. "The process will provide an opportunity for the Reception Center staff members to become acquainted with each inmate through individual assessment, testing, and structured interviews. As part of the process, each inmate should receive an oral and written orientation to the policies and program opportunities of the Department."

    The "Initial Classification Process" outlined in section 420.08 provides a very clear set of strictures for assessing how to deal with new commitments to the DOC. I was denied all of the protections of your laws. When I wassent to prison on 9/28/05, your Department simply by-passed the law and placed me directly into a maximum-security prison; I was then placed directly into the Department Disciplinary Unit ("DDU") to serve a sanction which the DOC had imposed upon me while I was a pretrial detainee. This is all illegal for the myriad reasons (all of which you will find I have outlined in correspondence to your designees and subordinates if you'll peruse my file) I've submitted to

-1-

Deputy Bender, but it is just as clear from looking at the relevant state law regulations governing the classification of inmates upon sentencing that the manner in which I have been summarily designated "DDU status" represents a clear and blatant violation of my substantive due process rights as a newly committed prisoner.

For five (5) months now I have been in your custody as a sentenced inmate and I have not received any of the process outlined in 103 CMR 420.08; I have not been assessed to determine what (if any) specific needs I may have and how best to deal with them. In short, without classifying me, how can anyone make a determination as to how best to deal with me, where I should be housed, etc. Your staff have consigned me to punitive segregation for the duration of my entire sentence based upon events from the pretrial period.

Section 420.10 provides a seldom-used but viable option for classifying and placing inmates who, inter alia, "present difficult placement issues." I take it from the very existence of a "Department Review Board" that placement of inmates is a decision which merits the attention of an entire board of competent personnel. So how is it that I have been allowed to enter the DOC and disappear to solitary confinement without so much as an initial classification? There is an actual regulation requiring such initial classification; and subsequent classification (see 103 CMR 420.09).

I will also send a copy of this letter to Anthony Mendonsa, the Deputy of Classification here at Souza-Baranowski Correctional Center. You are holding me as a DDU prisoner for something that happened before I was ever even in DOC custody as a sentenced prisoner.

Please address the complete absence of any classification process as the law (103 CMR 420.00 et seq.) mandates. Thank you for your time and attention to this matter.

RESPECTFULLY SUBMITTED,

Brendan M. McGuinness
Brendan M. McGuinness W86294
S.B.C.C.
P.O. BOX 8000
SHIRLEY, MA 01464-8000

cc. Anthony Mendonsa, SBCC
    file.




TO: Lois Russo, Superintendent SBCC
FROM: Brendan McGuinness W86294
RE: Classification
DATE: April 18, 2006.

Mrs. Russo,

Seven months ago I was sentenced to 3½ years. Since that date I have not been classified to date. (See the attached letter of 2/17/06 to Commissioner Dennehy.) 103 CMR 420.08 entitles me to an initial classification upon commitment. Please follow your rules and send me to the Reception Center to be classified. I await your reply.

Brendan McG.

cc. Anthony Mendonsa,
    Deputy of Classification

# ADDENDUM

*590 103 CMR 420.08

CODE OF MASSACHUSETTS
REGULATIONS
TITLE 103: DEPARTMENT OF
CORRECTION
CHAPTER 420.00: CLASSIFICATION

*Current through March 10, 2006, Register #1047*

420.08: Initial Classification Process

Upon commitment to the Department of Correction, each inmate shall be admitted to a Reception Center where he or she will undergo an initial classification process. The process will provide an opportunity for the Reception Center staff members to become acquainted with each inmate through individual assessment, testing, and structured interviews. As part of the process, each inmate should receive an oral and written orientation to the policies and program opportunities within the Department. The Reception Center staff shall monitor each inmate's adjustment closely, providing useful information and services to inmates in need. The initial classification process shall be completed within four weeks following admission to the Reception Center, (unless the receipt of verified data from the sentencing court has been delayed), and shall include the following phases:

(1) Intake. Within 24 hours of admission to a Reception Center an inmate shall be interviewed by a correction program officer to determine any immediate needs or concerns. Where an inmate is admitted on a weekend or holiday the inmate will be interviewed on the next working day. During the interview, the correction program officer will ask specific questions pertaining to the inmate's physical and mental well being, reporting any immediate needs to the appropriate personnel.

(2) Orientation. Within 24 hours of admission to a Reception Center an inmate will be provided with written orientation materials. If the inmate is non-English speaking, a written and/or oral translation of this information shall be provided.

Where a literacy problem exists, a staff member shall assist the inmate in comprehending the material. Completion of this phase of the process shall be documented by a statement that is signed and dated by the inmate and staff member.

(3) Interviews. With ten working days of admission to a reception Center, an inmate shall be assigned to a correction program officer, who will prepare and complete a written initial classification report on the inmate. The report shall contain information obtained from the correction program officer's initial interviews with the inmate, as well as observations and input from staff members who interact with the inmate during the initial classification process, including correction officers, teachers, psychologists, work supervisors, and administrators. The correction program officer shall also gather all record information pertaining to the inmate, review and compare it with information obtained during the inmate interviews and summarize the information in the classification report. The record information shall include, but shall not be limited to, the superior court record, the pre-sentence report prepared by the Probation Department, the official version of the inmate's current offense, the Federal Bureau of Investigation Identifier and, when applicable, the inmate's prior Department of Correction case record.

*591 (4) Need Assessments. Based upon information obtained from the intake, subsequent interviews, and available record information, the correction program officer shall request that an inmate's need assessments be completed by program staff members specializing in particular need areas (e.g. education, vocational training, psychological services, substance abuse, or industrial programs). Once staff members have assessed an inmate's needs in particular areas, the results of those assessments shall be incorporated into the inmate's initial classification report by the correction program officer.

(5) Initial Classification Board Hearing. To conclude the initial classification process, a classification board shall be convened to make recommendations to the Superintendent concerning an inmate's placement. The

© 2006 Thomson/West. No claim to original U.S. Govt. works.

recommendations shall be based upon a review of the inmate's objective point based rating, and all other information available relative to the inmate's security rating, institutional placement and program needs. The following standards shall be adhered to regarding the initial classification board process:

(a) Board Composition. All classification boards shall be comprised of at least three correctional staff members appointed by the Superintendent. One board member shall be designated by the Superintendent to act as Chairperson, and shall be responsible for the overall quality of the review process and for ensuring compliance with existing classification policies and procedures, in accordance with M.G.L. c. 127, § 20.

In instances where community based programs are being considered, i.e. pre-release placement or the electronic monitoring program, the board shall consist of five staff members, two of whom shall be correction officers, in accordance with M.G.L. c. 127, § 49A.

(b) Notice of Hearing. The inmate shall be notified orally 48 hours in advance of the scheduled classification hearing. Prior to the classification hearing, an inmate shall be interviewed by the assigned correction program officer to discuss all matters relevant to the inmate's program plan and custody status.

(c) Case Presentation. The inmate's assigned correction program officer shall make a comprehensive oral and written presentation to the classification board, summarizing the inmate's prior history, present adjustment, current needs, program plans and objective point based rating.

(d) Inmate Presentation. Following the correction program officers presentation, the inmate scheduled for review shall appear before the classification board to present any needs and program goals for consideration. In the event that the inmate is unable or unwilling to attend the classification board hearing, the Chairperson of the board shall, in the absence of justifiable reasons for the inmate's failure to attend, proceed with the hearing.

(e) Classification Board Recommendation. Once all relevant information is presented to the classification board, the Chairperson shall direct the inmate to leave the hearing room so that the board may deliberate. The board's final recommendation to the Superintendent concerning the inmate's placement and program within the correctional system shall be determined by a majority vote. Each board member, including the Chairperson, shall have one equal vote. The board's recommendation and reasons for a minority vote shall be recorded in the Chairperson's written summary report. The inmate shall be notified verbally of all board recommendations.

*592 (f) The Classification Board Summary. At the end of the classification board hearing a written summary of the board's recommendation to the Superintendent shall be prepared by the Chairperson. The summary shall contain, but shall not be limited to, the board's recommendation concerning the inmate's placement, the inmate's program plan, and the date that the inmate's case will be reviewed again. All summaries of board recommendations must be signed by the board Chairperson and the inmate being reviewed, unless the inmate refuses to sign, in which case such refusal shall be documented. A copy of the summary and related materials shall be submitted to the Superintendent within ten working days of the close of the hearing.

(g) Superintendent's Review. Within ten working days after receipt of the classification board's recommendation concerning an inmate's placement and program within the correction system, the Superintendent or his designee shall render a decision concerning the inmate's classification.

(h) Inmate Appeal. Where an inmate is not in agreement with an classification board recommendation, the inmate may submit a written appeal of the classification board's recommendation to the Superintendent within

© 2006 Thomson/West. No claim to original U.S. Govt. works.

five working days of oral notification of the board's recommendation.

The Superintendent or designee shall review the classification materials with any appeal submitted and render a decision within ten working days. Appeal results should be written on the classification board's written summary of the recommendation.

(i) Central Office Review. To finalize the classification process, the Superintendent's decision concerning an inmate's classification shall be submitted for approval to the Commissioner or his designee.

All inmate appeals to the Superintendent will also be forwarded to the Commissioner's office for a final decision as well as addressing the inmate's appeal.

Where an inmate is not in agreement with the final decision rendered by the Commissioner's office, an appeal form will be completed by the inmate and forwarded to assigned institutional personnel. The institution will address pertinent information requested on the appeal form and forward same to the Commissioner's office for final decision.

<General Materials (GM) - References, Annotations, or Tables>

© 2006 Thomson/West. No claim to original U.S. Govt. works.

August 10th, 2006

CLERK OF COURT
U.S. District
One Courthouse Way
Boston, MA

FILED
CLERKS OFFICE

2006 AUG 11  P 3: 39

DISTRICT COURT
DISTRICT OF MASS

RE: McGuinness v. Bender, et al.
    U.S.D.C. Civ. No. 05-11738-EFH

Dear Clerk,

   Please find enclosed for filing along with a Certificate of Service Plaintiff's Motion for Summary Judgment on Count Six of his Amended Complaint.

   Thank you. Sincerely,

                                              Brendan M. McGuinness

## Certificate of Service

   I hereby certify and swear that on the 10th day of August, 2006, I did cause a copy of the enclosed to be mailed to counsel for the defendants via regular mail at his address of record.

                                              Brendan M. McGuinness
                                              S.B.C.C.
                                              P.O. BOX 8000
                                              SHIRLEY, MA 01464

P.S. My repeated requests, and a Motion, requesting Summonses to serve the Amended Defendants have gone unanswered. Am I doing something wrong?