UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRENDAN McGUINNESS,                          CIVIL ACTION NO. 05-11738-EFH

      Plaintiff,

      v.

JAMES R. BENDER,
LOIS RUSSO,
MICHAEL D. FARLEY,
JASON J. OLIVER,
DAVID M. SHAW,
JUAN MEZA,
JOHN A. BELAIR, and
JOHN A. FLOWERS,

      Defendants.

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT SIX OF THE AMENDED COMPLAINT, AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT SIX OF THE AMENDED COMPLAINT

      Defendants James Bender, Lois Russo, Michael D. Farley, Jason J. Oliver, David M. Shaw, Juan Meza, John A. Belair and John A. Flowers, by counsel, submit this memorandum in opposition to the plaintiff's motion for partial summary judgment on Count Six of the amended complaint (Docket Entry 36) and in support of the defendants' cross-motion for partial summary judgment on Count VI of the amended complaint.

### INTRODUCTION

      This is a *pro se* civil rights action brought by Brendan McGuinness ("McGuinness"), a state prisoner who is confined in the Departmental Disciplinary Unit ("DDU"), located at MCI-Cedar Junction. McGuinness is currently serving a sentence for unarmed robbery (G.L. c. 265, § 19(b)), imposed September 28, 2005 by the Norfolk Superior Court. During the pendency of his criminal proceedings, McGuinness was twice detained in state custody

at MCI-Cedar Junction and SBCC pursuant to the provisions of G.L. c. 276, sec. 52A. Section 52A accords the Commissioner of Correction, upon the request of the district attorney, the discretionary authority to transfer a pretrial detainee from a county jail or house of correction to await trial in a correctional facility, so long as the detainee has served prior state time. See MacDougall v. Commonwealth, __ Mass. __, 2006 WL 2457461 (2006) (holding that the Commissioner is authorized to transfer a detainee to a state correctional facility without judicial approval); Commissioner of Correction v. Superior Court, 446 Mass. 123 (2006).

McGuinness was held as a pretrial detainee in Department of Correction custody at MCI-Cedar Junction and SBCC from September 29, 2004 until March 7, 2005, and again from July 8, 2005 until September 26, 2005. On September 26, 2005, he appeared in state court where he plead guilty to his pending criminal charges.[1] He was sentenced to 3 ½ years to 3 ½ years and a day.[2] On September 28, 2005, he was received by SBCC as a sentenced prisoner.

During the first period of his pretrial detention in state custody (September 29, 2004 – March 7, 2005), McGuinness committed serious disciplinary offenses, including two offenses that ultimately resulted in sanctions to the DDU. See Torres v. Commissioner of

---

[1] McGuinness was admitted to state custody under § 52A on September 29, 2004. (Affidavit of Roland Rheault, ¶ 9, appended to defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, and in Support of Defendants' Cross-Motion for Partial Summary Judgment (Docket Entry 27)). He remained in state custody until March 7, 2005, when he was transported to the Concord District Court pursuant to a habeas order. (Affidavit of Roland Rheault, ¶ 14). McGuinness alleges that the judge ordered him to serve 24 days at the Billerica House of Correction to satisfy an old fine, at a rate of $30 per day of custody. (Amended Complaint, ¶ 69 (Docket Entry 8). After residing in Plymouth and Norfolk County custody, he returned as a pretrial detainee to SBCC on July 8, 2005. (Amended Complaint, ¶ 76 (Docket Entry 8)).
[2] Amended Complaint, ¶ 81 (Docket Entry 8); Affidavit of Roland Rheault, ¶ 16 (Docket Entry 27).

<u>Correction</u>, 427 Mass. 611 (1998) (describing the DDU sanction and holding that the disciplinary regulations accorded the requisite due process).[3] These offenses were (1) participating in an October 17, 2004 group assault on another prisoner at MCI-Cedar Junction, and personally assaulting two responding correction officers with closed-fist punches to the face; and (2) assaulting two correction officers at SBCC on January 30, 2005, while the officers were escorting a nurse conducting medication rounds in the SBCC Special Management Unit.[4] The disciplinary charges remained pending into the <u>second</u> period of his pretrial detention. McGuinness entered guilty pleas on both disciplinary offenses on July 27, 2005 while he was still a pretrial detainee. For the first offense he received a 36-month DDU sanction (34 months to serve), and for the second, a 24-month DDU sanction (22 months to serve).

McGuinness began serving the DDU sanctions during his second period of his pretrial detention.[5] After his <u>criminal</u> sentence was imposed, McGuinness returned to SBCC on September 28, 2005 as a sentenced prisoner, and the Department continued to impose the DDU disciplinary sanctions. McGuinness now contends that his change of status from a pretrial detainee to a sentenced prisoner mandates the termination of his DDU disciplinary sanctions. He bases this claim upon provisions of the Department of Correction

---

[3] The Department Disciplinary Unit is defined by regulation as "a restricted area or areas designated by the Commissioner to which an inmate has been sentenced by a special hearing officer." 103 CMR 430.06.

[4] McGuinness's extensive disciplinary history at the Department of Correction is described in detail in the Affidavit of Roland Rheault, appended to defendants' Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment, and in Support of Defendants' Cross-Motion for Partial Summary Judgment (Docket Entry 27).

[5] Until recently, McGuinness had been serving his DDU sanctions in the Special Management Unit ("SMU") at SBCC because the DDU building, located at MCI-Cedar Junction, had been closed since the end of July 2005 for extensive repairs to the door locking mechanisms. (Affidavit of Roland Rheault, ¶ 16.)

classification regulations providing for an initial classification determination at a reception center. Specifically, 103 CMR 420.08, provides in pertinent part:

> Upon commitment to the Department of Correction, each inmate shall be admitted to a Reception Center where he or she will undergo an initial classification process.[6]

Count Six of the amended complaint, for which McGuinness now seeks summary judgment, asserts that after he was sentenced, he was denied an initial classification review in alleged contravention of the classification regulations. He asserts that the denial of a classification review "constitutes the deprivation of a protected liberty interest without due process of law, to wit, the opportunity to earn good time credits." For the reasons set forth below, McGuinness' motion for summary for judgment on count six should be denied, and the defendants' cross-motion for summary judgment on count six should be allowed.

## ARGUMENT

I.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PRISONERS HAVE NO LIBERTY INTEREST IN A CLASSIFICATION REVIEW OR IN EARNING GOOD TIME CREDITS AGAINST A SENTENCE.

McGuinness is plainly wrong that the alleged denial of classification reviews implicates a protected liberty interest. It has long been settled law that the classification of prisoners to institutions of different levels of security neither implicates any protected liberty interest nor triggers any due process protection under the state and federal constitutions. Meachum v. Fano, 427 U.S. 215 (1976) (rejecting notion that reclassification and transfer of a Massachusetts inmate to higher custody infringes on a liberty interest of the due process clause). Indeed,

---

[6] Exhibit B, Addendum, to Plaintiff's Motion for Summary Judgment on Count Six of His Amended Complaint (Docket Entry 36).

> [t]he initial decision to assign the convict to a particular institution is not subject to
> audit under the Due Process Clause, although the degree of confinement in one
> prison may be quite different from that in another. The conviction has sufficiently
> extinguished the defendant's liberty interest to empower the State to confine him in
> *any* of its prisons.

Meachum v. Fano, 427 U.S. at 224. Any claim that the classification regulation itself

engenders a liberty interest has been foreclosed by Sandin v. Conner, 515 U.S. 472 (1995).

Abdullah v. Secretary of Public Safety, 42 Mass.App.Ct. 387, 390 (1997).

Nor can McGuinness assert that the continued imposition of his DDU sanction

deprives him of a liberty interest in sentence credits. Sentenced prisoners do not have a

constitutional right to earn "good time" deductions against their sentences. Haverty v.

Commissioner of Correction, 440 Mass. 1, 5-6 (2003); Jackson v. Hogan, 388 Mass. 376,

379 (1983), citing Wolff v. McDonnell, 418 U.S. 520, 557 (1974).[7] Accordingly,

McGuinness' constitutional claim founded upon the classification regulations must be

rejected.

II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
        BECAUSE THE CLASSIFICATION REGULATIONS DO NOT
        MANDATE THE TERMINATION OF AN ONGOING DISCIPLINARY
        SANCTION.

McGuiness contends that as a matter of state law, the provisions of the state

regulation providing for classification reviews must extinguish an ongoing application of a

lengthy DDU sanction, simply because of a change in the inmate's underlying status from a

detainee to a sentenced prisoner. McGuinness is asking the Court to override the

Department's interpretation of its own regulations, by which inmates serving DDU

sanctions do not receive classification reviews. During the period of McGuinness' DDU

---

[7] Nor are Massachusetts pretrial detainees entitled to earn good time credits. McNeil v.
Commissioner of Correction, 417 Mass. 818 (1994).

sanction it would be pointless to require that the Department provide McGuinness with either an initial classification or ongoing classification reviews. McGuinness' classification options have been extinguished by the imposition of the disciplinary sanction; he must remain on DDU status until he completes the sanction. The regulatory interpretation McGuinness urges is patently absurd. As prison administrators, the defendants "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547 (1979). "Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." Bell v. Wolfish, 441 U.S. at 548, citing Pell v. Procunier, 417 U.S. 817, 827 (1974); see also Lewis v. Casey, 116 S.Ct. 2174, 2185 (1996)(Courts are not to engage in the micro management of prison affairs or become enmeshed in the minutiae of prison operation).

It is important to recognize that DDU sanction is constitutional. See Torres v. Commissioner of Correction, 427 Mass. at 612. An inmate may be "sentenced" to up to ten years in the DDU. Id. at 613-614. Massachusetts state courts have rejected constitutional challenges to the application of the DDU sanction to pretrial detainees. In Commonwealth v. Forte, 423 Mass. 672 (1996), the Supreme Judicial Court held that DDU sentences imposed on pretrial detainees did not bar, on double jeopardy grounds, the subsequent criminal prosecutions of the defendants for the same offenses. The Court concluded that confinement in the DDU served two related purposes: a punitive purpose and also the

purpose of deterring misconduct by other inmates. Id., at 677. Accordingly, the Court

found "that confinement to the DDU has a remedial purpose." Id.

> "[P]rison authorities have a right to make changes in the conditions of a
> wrongdoer's confinement in order to maintain institutional security and order; that
> prompt discipline within the penal system brings home to the wrongdoer and
> other inmates the importance of good conduct; and that there is no reason why the
> State must make a choice between criminal punishment and institutional
> discipline."

Id., at 676.

Were the classification regulations be read so that the imposition of a criminal

sentence extinguishes a pretrial detainee's DDU sanction, a detainee would be able to

engage in violent and disruptive institutional misbehavior with impunity from administrative

discipline. The DDU sanction then would lose its utility for deterring misconduct by pretrial

detainees. Accordingly, McGuinness' state law classification challenge to his DDU sanction

should be rejected.[8]

---

[8] McGuinness' reliance on Haverty v. Commissioner of Correction, 437 Mass. 737, 748-749
(2002) is misplaced. McGuinness contends that Haverty holds that the classification
regulation confers upon all prisoners a right to classification reviews. However, the
prisoners in Haverty were residing in population units at MCI-Cedar Junction; they were not
serving DDU disciplinary sanctions.

CONCLUSION

For the aforementioned reason, the plaintiff's motion for partial summary judgment on Count Six of the Amended Complaint should be DENIED, the defendants' cross-motion for partial summary judgment on Count Six should be ALLOWED.


Dated: September 5, 2006                    Respectfully submitted,

                                            NANCY ANKERS WHITE
                                            Special Asst. Attorney General

                                            /s/ William D. Saltzman
                                            William D. Saltzman, BBO No. 439749
                                            Department of Correction Legal Division
                                            70 Franklin Street, Suite 600
                                            Boston, Massachusetts 02110
                                            (617) 727-3300, Ext. 154
                                            wdsaltzman@doc.state.ma.us

CERTIFICATE OF SERVICE

I hereby certify that this memorandum of law filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 5, 2006.

Dated: September 5, 2006                    /s/ William D. Saltzman
                                            William D. Saltzman