UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRENDAN McGUINNESS,                               CIVIL ACTION NO. 05-11738-EFH

    Plaintiff,

    v.

JAMES R. BENDER, et al.,

    Defendants.

## OPPOSITION TO PLAINTIFF'S MOTION TO DEPOSE THE SUPERINTENDENT OF THE SOUZA BARANOWSKI CORRECTIONAL CENTER

For the reasons set forth below, the defendants, by counsel, oppose the plaintiff's September 27, 2006 motion to allow him to depose defendant Lois Russo, the Superintendent of the Souza Baranowski Correctional Center. (Docket Entry 49).

1.    This is a *pro se* civil rights action brought by Brendan McGuinness ("McGuinness"), a state prisoner who is currently confined at the Departmental Disciplinary Unit ("DDU") at MCI-Cedar Junction.[1] McGuinness' allegations in the original and amended complaint concern the period of his pretrial detention in county and state custody. The original complaint (docket entry 2) alleges that Department of Correction officers (defendants Farley, Oliver, Shaw Meza, Belair and Flowers) employed excessive force on McGuinness on January 31, 2005, while McGuinness was awaiting trial at SBCC. The original complaint also names Lois Russo, the Superintendent of SBCC, and James R. Bender, the Deputy Commissioner of Correction. McGuinness' amended complaint (docket entry 8) is actually a supplemental complaint, since it adds allegations to, rather than

---

[1] According to Department of Correction records, McGuinness is currently serving a sentence a sentence for unarmed robbery (G.L. c. 265, § 19(b), imposed September 28, 2005 by the Norfolk Superior Court.

supersedes, the original complaint. The amended complaint names three additional defendants, all employed by the Norfolk County Jail and House of Correction; Deputy Superintendent David Riley, Superintendent James Matesanz, and Director of Security Castille ("the Norfolk County defendants").[2] The allegations of the amended complaint concern McGuinness' pretrial detention at Norfolk County and at the Department of Correction. With respect to the Norfolk County defendants, McGuinness challenges his pretrial transfer to await trial at other county facilities and at the Department of Correction (Amended Complaint, Count Three). With respect to the Department of Correction defendants, McGuinness challenges the validity of disciplinary sanctions, in total, a five-year commitment to the Departmental Disciplinary Unit ("DDU"), imposed for offenses he committed while awaiting trial in Department custody. (Amended Complaint, Counts Four, Five, Six and Seven).

    2.    McGuinness now asserts that he needs to depose Superintendent Russo in order to pursue the constitutional challenge to his transfer from county custody to await trial as a pretrial detainee at a maximum security state correctional facility. McGuinness states that his pretrial detention in state custody raises a significant question of *state* constitutional law.

    3.    The transfer of a pretrial detainee to await trial in a state correctional institution raises *discrete* Federal and State constitutional issues. The Federal Constitution precludes the imposition of conditions of pretrial detention that amount to punishment, as punishment *per se* is not a proper function of pretrial detention. Bell v. Wolfish, 441 U.S. 520, 535-537 (1979); Richardson v. Sheriff of Middlesex County, 407 Mass. 455, 461

---

[2] The Norfolk County defendants have not been served.

(1990). Whether McGuinness' particular conditions of pretrial detention amounted to unconstitutional punishment is dependent upon the particular facts and circumstances of his case. "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, ... the proper inquiry is whether those conditions amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. at 535. In this regard, it is critical to acknowledge that "effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." Bell v. Wolfish, 441 U.S. at 540.[3] Conditions of pretrial detention that are reasonably calculated to achieve the governmental purpose of pretrial detention do not amount to *punishment* in the constitutional sense. See O'Connor v. Huard, 117 F.3d 12, 16 (1st Cir. 1997) (The government may impose administrative restrictions and conditions upon a pretrial detainee that effectuate his detention and maintain security and order in the detention facility).

    4.    The Supreme Judicial Court has not yet determined how a pretrial detainee's challenge to state detention in maximum security shall be analyzed under Article 12 of the Declaration of Rights. MacDougall v. Commonwealth, 447 Mass. 505, 512 n.11 (2006) (declining to decide the matter where the petitioner was no longer incarcerated at MCI-

---

[3] "The Government also has legitimate interests that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial. For example, the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees. Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell v. Wolfish, 441 U.S. at 540.

Cedar Junction and where the record was insufficient to determine the conditions of detention.) The question posed under Article 12 is unique and distinct from the question posed under the Fourteenth Amendment. Article 12 provides in pertinent part:

> No subject shall be held to answer for any crimes or offense, until the same is fully and plainly, substantially and formally, described to him...
>
> And the legislature shall not make any law, that shall subject any person to a capital or infamous *punishment*, excepting for the government of the army and navy, without trial by jury. (Emphasis added)

In Brown v. Commissioner of Correction, 394 Mass. 89 (1985), the Supreme Judicial Court held that Article 12 precludes the confinement at the state prison of a *convicted* prisoner who has neither been indicted nor has waived indictment. Brown follows the decision in Jones v. Robbins, 74 Mass. 329 (1857), which interprets Article 12 as mandating that "punishment in the state prison is an infamous punishment, and cannot be imposed without both indictment and trial by jury." Brown v. Commissioner of Correction, 394 Mass. at 92 (quoting Jones v. Robbins, 74 Mass. at 349). Section 1(o) of G.L. c. 125 defines the term "State Prison" to mean the "Massachusetts Correctional Institution, Cedar Junction."

     5.     Whether the unique language of Article 12 poses an absolute prohibition against housing a pretrial detainee at a maximum security prison, rather than an individual determination as to the appropriateness of the conditions of pretrial detention, is an unsettled question of state constitutional law. Accordingly, the defendants respectfully suggest that this Court abstain from determining this issue and dismiss the amended complaint (docket entry 8) without prejudice to its refilling in state court . See Guiney v. Roache, 833 F.2d 1079, 1082 (1st Cir. 1987) (abstention is more appropriate where state constitutional provision is unique and has not been authoritatively construed by the state court).

6.      Assuming that the state constitutional claim is to be adjudicated in this forum, McGuinness has not provided any reason why he needs to depose Superintendent Russo in order to try his case. Presumably, McGuinness has personal knowledge of the conditions of his pretrial detention, and therefore, he can testify as to these issues without the need of deposing the Superintendent. Moreover, McGuinness' reliance on the slip opinion in <u>Foxworth, et al. v. Maloney</u>, Suffolk SUCV2003-00895-E is inapposite. (The slip opinion and the final judgment are appended as Exhibit 1). The narrow issue addressed in <u>Foxworth</u> is whether practices governing canteen and television privileges in a special management unit comported with Department of Correction regulations. <u>Foxworth</u> has no bearing on whether the conditions of McGuinness' pretrial detention were unconstitutional.

WHEREFORE, plaintiff's motion to depose Superintendent Russo should be DENIED.

Dated: October 31, 2006                               Respectfully submitted,

                                                      NANCY ANKERS WHITE
                                                      Special Asst. Attorney General

                                                      /s/ William D. Saltzman
                                                      William D. Saltzman, BBO No. 439749
                                                      Department of Correction Legal Division
                                                      70 Franklin Street, Suite 600
                                                      Boston, Massachusetts 02110
                                                      (617) 727-3300, Ext. 154
                                                      wdsaltzman@doc.state.ma.us

CERTIFICATE OF SERVICE

I hereby certify that this opposition filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 31, 2006.

Dated: October 31, 2006                               /s/ William D. Saltzman
                                                      William D. Saltzman

**Commonwealth of Massachusetts**
County of Suffolk
The Superior Court

CIVIL DOCKET#: SUCV2003-00895-E

RE:   Foxworth, W52274 et al v Maloney, Comr Dept Corrections et al.,

TO:   Julie E Daniele, Esquire
Mass Corrections Dept
70 Franklin Street
Suite 600 Legal Division
Boston, MA 02110-1300

### NOTICE OF DOCKET ENTRY

You are hereby notified that on **04/19/2006** the following entry was made on the above referenced docket:

**MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT -- ORDER For the foregoing reasons, it is ORDERED that the plaintiffs' cross-motion for summary judgment be allowed in part. It is FURTHER ORDERED that a status hearing be held in this case to clarify the status of each plaintiff and to identify the remaining live issues in the case, as well as, the manner in which they will be addressed. (Margot Botsford, Justice) (entered 04/14/2006) Notice Sent 04/19/2006**
Dated at Boston, Massachusetts this 19th day of April, 2006.

Michael Joseph Donovan,
Clerk of the Courts

BY: Elaina M. Quinn
Assistant Clerk

Telephone: 617-788-7646

**Disabled individuals who need handicap accommodations should contact the Administrative Office**

cvdgeneric_2.wpd 2893579 memord hegartym

**Commonwealth of Massachusetts**
**County of Suffolk**
**The Superior Court**

of the Superior Court at (617) 788-8130

Case 1:05-cv-11738-EFH   Document 54-2   Filed 10/31/2006   Page 2 of 13

cvdgeneric_2.wpd 2893579 memord hegartym

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| SUFFOLK, ss.<br>NOTICE SENT: 04/19/2006 (ah)<br>R.F.-C.H.-T.G.   J.E.D.-M.C.D.<br>M.A.-D.W.C.T.   J.R.P.-M.C.L.S. | SUPERIOR COURT<br>CIVIL ACTION<br>NO. 03-00895 |

ROBERT FOXWORTH, and others[1],
Plaintiffs

v.

MICHAEL MALONEY, COMMISSIONER
OF THE DEPARTMENT OF CORRECTION, and others[2],
Defendants

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

The plaintiffs are either current inmates in Massachusetts Correctional Institution-Cedar Junction ("MCI-Cedar Junction") or former inmates who have completed their sentences and have been released from custody. In February of 2003, the plaintiffs commenced this suit against the defendants, all officials or employees of the Department of Correction ("the department") at the time the suit was commenced, challenging certain policies applied by the defendants to inmates placed in "10-Block," a special management unit at MCI-Cedar Junction; the plaintiffs seek injunctive relief and damages. The defendants have moved to dismiss the plaintiffs' complaint or in the alternative for summary judgment, and the plaintiffs have filed a cross-

---

[1] Craig Hood, Tony Gaskins, Michael Adessa, Dornell Wigfall and Charles Thore

[2] Peter Allen, Superintendent of MCI-Cedar Junction, and John Luongo, Deputy Superintendent of MCI-Cedar Junction, Mellisa Coache

1

motion for summary judgment.[3] The defendants' motion to dismiss any claim by the plaintiffs to bring this case as a class action is not opposed and is allowed, and on the narrow issue of whether the defendants restricted the plaintiffs' television and canteen privileges in violation of the department's own regulations, the plaintiffs' cross-motion for summary judgment is allowed. No further action will be taken on the pending motions until a further hearing is held.

### Background

MCI-Cedar Junction operates a special management unit (SMU) that it calls "10-Block." Under the department's regulations applicable to SMUs, 103 Code Mass. Regs. § 423.00 et seq., an inmate may be placed in an SMU, among other reasons, when awaiting a hearing on a charge of violating the institution's rules and procedures, and when the department is investigating a report of serious disciplinary offenses. See 103 Code Mass. Regs. § 423.08. While an inmate is in an SMU, he is isolated from the general prison population, and is generally restricted to his cell for 23 hours a day, with one hour available for recreation.

Each of the plaintiffs in this case was placed in 10-Block on awaiting action status because of his alleged participation in a serious disciplinary offense. In particular, the plaintiff Robert Foxworth was placed in 10-Block on January 17, 2003, pending an investigation of a charge of distributing heroin within the institution. After a disciplinary hearing that appears to have been held in March of 2003, Foxworth was found guilty of the charged offense and was sentenced to eighteen months in the MCI-Cedar Junction departmental disciplinary unit (DDU). He was transferred from the SMU to the DDU in June 2003, and was given credit on his

---

[3] Massachusetts Correctional Legal Services has filed a memorandum as *amicus curiae* supporting the plaintiffs' cross-motion for summary judgment and opposing the defendants' motion.

2

disciplinary sentence for the time spent in the SMU.

Plaintiff Hood served time on 10-Block on two occasions between 2002 and 2004. He was placed in 10-Block on September 6, 2002, pending an investigation into a fight allegedly involving several inmates, including Hood. A disciplinary report against him was issued October 31, 2002, and was ultimately heard on January 23, 2003. On appeal, the disciplinary report was dismissed, and Hood was returned to general population. In July of 2003 Hood was placed in 10-Block again in connection with another disciplinary offense. He was transferred from there to the DDU on January 12, 2004.

Plaintiff Gaskins was transferred to 10-Block on September 3, 2002, pending an investigation of an altercation that took place in the prison, involving Gaskins and two other inmates. After the conclusion of the investigation, the disciplinary report against Gaskins was dismissed. However, he was in 10-Block from September 3, 2002, to March 28, 2003, when he was transferred to general population.

On October 30, 2002, plaintiff Adessa received two disciplinary reports and was placed on 10-Block. He remained on and off 10-Block following additional disciplinary reports until June 2, 2003, when he was transferred to MCI Souza-Baranowski (SBCC). Plaintiff Thore was placed on 10-Block for over three months pending his transfer to SBCC. Finally, plaintiff Wigfall was transferred to 10-Block on December 5, 2002, on awaiting action status after receiving a disciplinary report for disruptive and violent behavior. A disciplinary hearing was held on or about January 31, 2003. On February 11, 2003, Wigfall was returned to general population, but was transferred again to 10-Block on November 30, 2003. After a ten-day period in later December 2003 when he was temporarily transferred to general population, Wigfall was

transferred back to 10-Block on December 29, 2003. The record does not indicate where he is assigned at the present time.

The department's SMU regulations, 103 Code Mass. Regs. § 423.00, contain specific provisions for inmates who are assigned to an SMU on administrative segregation status – a term that applies to all the plaintiffs in this case. With respect to "personal items," the regulations state:

> "(a) Personal Items: Inmates should, as far as reasonably practicable, be provided clothing that is comparable to that permitted in population. Property will be restricted to what is permitted in 103 CMR 403.11, Approved Inmate Personal Property – Transient with the exception of a cigarette lighter that is prohibited. **In addition, each inmate will be permitted a television or radio. The superintendent is authorized to further limit the amount of property and to issue jumpsuits in lieu of such clothing for security purposes, if there is imminent danger that an inmate or inmates will destroy an item, or induce injury to self or others.**"

103 Code Mass. Regs. § 423.09(a)(emphasis supplied). On the subject of canteen, the regulations provide:

> "(k) Canteen: Inmates may order items from the canteen. Items from the canteen may be withheld if determined by the institution's director of security to be a threat to the security of the special management unit."

*Id.*, § 423.09(k). Finally, with respect to telephone access, these regulations state:

> "(i) Telephone Access: Inmates shall be allowed telephone privileges in accordance with institutional procedure. Superintendents may set limits on the permitted number of telephone calls."

*Id.*, § 423.09(i).

Despite the existence of these SMU regulations, MCI-Cedar Junction has issued a "MCI-Cedar Junction Ten Block Inmate Booklet"(referred to hereafter as the "inmate handbook") that outlines rules and procedures for the 10-Block inmates. The inmate handbook provides that

4

inmates in 10-Block "are permitted to possess a radio" (Inmate handbook, p. 6 [Exhibit Q to Defendants' Motion to Dismiss]), but there is no authorization for a television. With respect to canteen privileges, the booklet states:

"**CANTEEN**

A.  Inmates may only order stamps, cosmetics and legal supplies.

B.  Any misuse of canteen articles purchased i.e., creating a health hazard, assaulting with, excessive property, etc. may result in the loss of this privilege.
. . . ."

(Inmate handbook, p. 9 [Exhibit Q to Defendants' Motion to Dismiss].)

## Discussion

### 1. Class Action

The defendants move to dismiss any claims by the plaintiffs to bring this case as a class action. The plaintiffs, however, do not assert any such claims. No one disputes that this case is not a class action or a putative class action.

### 2. Mootness

It appears to be the case that none of the plaintiffs currently remains on 10-Block, and indeed one or more of the plaintiffs may have been released from the department's custody completely. In the circumstances, there is an argument that at least the plaintiffs' claims for injunctive or declaratory relief are moot. See Pidge v. Superintendent, Mass. Correctional Inst. Cedar Junction, 32 Mass. App. Ct. 14, 19-20 (1992). Nevertheless, there are two exceptions to the application of the mootness doctrine which are applicable here. See Blake v. Massachusetts Parole Bd., 369 Mass. 701, 707-708 (1976). First, this is a case which promises "a good likelihood that the same disputes would recur between the same parties." Id.(citations omitted).

Plaintiffs Foxwood, Hood, Gaskins, and Wigfall are currently serving time in MCI-Cedar Junction and a review of their institutional records that are included in the summary judgment materials suggests that there is certainly a possibility they may be returned to 10-Block in the future and suffer from the same loss of privileges.

Additionally, the plaintiffs' claims fit within a second exception, namely, they are "capable of repetition, yet evading review." See In the Matter of Strutz, 410 Mass. 58, 60 (1991) (citing Commonwealth v. Yameen, 401, Mass. 331 (1987)); Wolf v. Commissioner of Pub. Welfare, 367 Mass. 293, 298 (1975). Inmates who are placed on 10-Block spend varying amounts of time there. Particularly for those who, like the plaintiffs in this case, go to 10-Block on administrative segregation or awaiting action status, the duration of the stay may well not be long enough to litigate a claim at the trial court level, much less on appeal. See Lockhart v. Attorney General, 390 Mass. 780, 783 (1984) ("we have on occasion answered questions in moot cases where ... appellate review could not be obtained before the recurring question would again be moot"). It is therefore appropriate for the court to review the plaintiffs' claims that can be characterized as seeking injunctive or declaratory relief.

### 3. Plaintiffs' Television, Canteen and Telephone Access Claims

The department is subject to the provisions of the Administrative Procedure Act that govern the adoption of agency regulations. G. L. c. 30A, § 1A. Dougan v. Commissioner of Correction, 34 Mass. App. Ct. 147, 148 (1993). Once the commissioner promulgates a set of regulations, the regulations "carry 'the force of law'" and the department is obligated to follow them. Id. Accord, Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983). Such regulations "may not be arbitrarily disregarded by individual members of the rule-making body to

the prejudice of a party's essential rights." DaLomba's Case, 352 Mass. 598, 603 (1967). See generally Kenney v. Commissioner of Correction, 393 Mass. 28, 33 (1984).

The SMU regulations of the department permit inmates who are segregated and awaiting disciplinary action a television or a radio and to make general purchases at the canteen, including food purchases. The 10-Block inmate handbook permits neither of these privileges. However, the inmate handbook was not promulgated in accordance with the provisions of G. L. c. 30A, §§ 2-6, and is not a regulation within the meaning of G. L. c. 30A, § 1(5). It does not have the same binding legal effect as the SMU regulations, and the department is not free to ignore the provisions of its own formal regulation in favor of the handbook. See Dougan v. Commissioner of Correction, supra, 34 Mass. App. Ct. at 148-149. Because the provisions in the SMU regulations that generally authorize inmates to have a television or radio and to purchase food from the canteen remain in effect, inmates who are placed in 10-Block are entitled to the benefit of these provisions, regardless of contrary provisions in the inmate handbook.[4]

The defendants disagree. They argue first the plaintiffs have failed to state an actionable claim with respect the defendants' failure or refusal to follow the SMU regulations in their administration of 10-Block because these regulations expressly state that they are "not intended to confer any procedural or substantive rights not otherwise granted by state or federal law." 103 Code Mass. Regs. § 423.02. The argument fails. The issue here is not whether the plaintiffs can

---

[4] Telephone access presents a different story. The pertinent SMU regulation provides that inmates are to "be allowed telephone privileges in accordance with institutional procedure . . . ." This provision thus authorizes MCI-Cedar Junction to establish its own rules and procedures for the inmates' use of the telephone without creating any issue of inconsistency. The plaintiffs accordingly cannot succeed on any claim that the telephone access provision in the inmate handbook violates or contradicts a provision in the SMU regulations. I do not discuss the issue of telephone access further.

7

recover damages or obtain injunctive relief against a party whose conduct is claimed to violate a statute or regulation allegedly intended for the benefit of the plaintiffs or a class of persons which includes the plaintiffs. See, e.g., Loffredo v. Center for Addictive Behaviors, 426 Mass. 541, 545 (1998); Ludlow Education Ass'n v. Ludlow, 31 Mass. App. Ct. 110, 118-120 (1991). Rather, the question is whether the plaintiffs, as inmates who have been housed in an SMU operated by the department, may obtain declaratory or injunctive relief to require that the department and the individual defendants – all of whom were or are employed by the department – to follow the department's duly promulgated regulations. As the Kenney, Royce, and DaLomba cases demonstrate, the defendants cannot insulate themselves or the department from judicial review when there is a claim that the department and its employees are failing or refusing to follow the department's own regulations. See Kenney v. Commissioner of Correction, supra, 393 Mass. at 33; Royce v. Commissioner of Correction, supra, 390 Mass. at 427; DaLomba's Case, supra, 352 Mass. at 603.

The defendants also contend that in any event, they have complied with the provisions of the SMU regulations governing television access and canteen privileges, because those regulations contain provisos that permit the superintendent of a particular institution to (1) limit access to items of personal property – including televisions – if there is an "imminent danger that an inmate or inmates will destroy an item, or induce injury to self or others," 103 Code Mass. Regs. § 423.09(a); and (2) withhold item(s) from what may be purchased from the canteen if the director of security for that institution determines that the item(s) would be "a threat to the security of the [SMU]," id. at § 423.09(k).[5]

---

[5] See page 4 above, where these provisions are quoted in full.

The language in § 423.09(a) and (k) on which the defendants rely does not support the defendants. With respect to items of personal property, the regulatory language by its terms indicates that the superintendent must affirmatively justify any determination to restrict an inmate's – or a group of inmates' – access to a particular item of property that inmates are generally authorized to have, by defining the "imminent danger" on which the restriction is based. Insofar as televisions are concerned, the inmate handbook contains no showing that inmates' access to televisions on 10-Block creates any danger, imminent or otherwise, that one or more inmates will destroy the televisions or injure themselves or others with a television. Similarly, under § 423.09(k), for a limitation on canteen privileges to a few specified items that do not include any food items, the director of security for MCI-Cedar Junction must present an actual determination that permitting inmates on 10-Block to purchase any food items would be a threat to the security of 10-Block. There is no such determination set out in the inmate handbook.

### 3. Other Matters

This memorandum of decision resolves in the plaintiffs' favor the question of whether they are entitled to a declaratory judgment on the claim that the defendants are bound to comply with the terms of the SMU regulations, and with 103 Code Mass. Regs. § 423.09(a) and (k) in particular, despite conflicting provisions in the MCI-Cedar Junction inmate handbook. This resolution makes it unnecessary to consider the plaintiffs' claims that the defendants have violated their constitutional rights by denying them access to televisions or the ability to purchase food from the canteen while they are on 10-Block. See, e.g., Royce v. Commissioner of Correction, supra, 390 Mass. at 426.

There are, however, a variety of issues that are, or may be, raised by the plaintiffs' complaint that are not resolved here, because I am not clear about what specific claims the plaintiffs are raising. I also have not addressed the regulatory issue presented by Massachusetts Correctional Legal Services in its memorandum, viz., whether 10-Block is in fact equivalent to a DSU, and the department therefore should be required to apply its DSU regulations to 10-Block.[6] In light of the passage of time, the changed status of the various plaintiffs since the commencement of the suit and the filing of these cross-summary judgment motions, and my lack of clarity as to what actually remains in issue in this case, I believe a status hearing is in order.

### Order

For the foregoing reasons, it is **ordered** that the plaintiffs' cross-motion for summary judgment be allowed in part. It is **further ordered** that a status hearing be held in this case to clarify the status of each plaintiff and to identify the remaining live issues in the case as well as the manner in which they will be addressed.

*/s/ Margot Botsford*
Margot Botsford
Justice of the Superior Court

Dated: April 14, 2006

---

[6] I note that the defendants have not addressed this issue either.

# Commonwealth of Massachusetts
## County of Suffolk
## The Superior Court

CIVIL DOCKET#: **SUCV2003-00895-E**

RE: Foxworth, W52274 et al v Maloney, Comr Dept Corrections et al

TO: Julie E Daniele, Esquire
Mass Corrections Dept
70 Franklin Street
Suite 600 Legal Division
Boston, MA 02110-1300

OCT 26 2006

## NOTICE OF DOCKET ENTRY

You are hereby notified that on **10/25/2006** the following entry was made on the above referenced docket:

**FINAL JUDGMENT** pursuant to 103 Code Mass. Regs. 423.09 (a) and (k), currently in effect, the defendant correctional officials are required to permit an inmate assigned to a Special Management Unit (SMU) on administrative segregation status (1) to have the personal items specified in the regulation, including a television, and (2) to order items from the canteen including food items, except insofar as the institution's director of security specifically determines that a particular canteen item or items would be a threat to the security of the SMU; and The remaining claims of plffs are dismissed against defts entered on docket pursuant to Mass R Civ P 58(a) and notice sent to parties pursuant to Mass R Civ P 77(d)

Dated at Boston, Massachusetts this 25th day of October, 2006.

Michael Joseph Donovan,
Clerk of the Courts

BY: Elaine R. Lombardi
Assistant Clerk

Telephone: 617-788-8144

cvdgeneric_2.wpd 3005045 judgm phillips