UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 05-11738-EFH

Brendan M. McGUINNESS,
    Plaintiff,

vs.

James R. BENDER, et al.
    Defendants.

PLAINTIFF'S RESPONSE TO DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION
TO DEPOSE DEFENDANT RUSSO, SUPERINTEND-
ENT OF SOUZA-BARANOWSKI CORRECTIONAL CENTER.

The defendants, through counsel, have pointed out a fact that is glaringly obvious, i.e. the plaintiff has filed this civil action pro se. This is not his choice, rather a circumstance he could not avoid. As a result of his pro se status, he is mightily out-gunned in this case as far as legal expertise is concerned.

On the other hand, facts are facts. Given the fair chance to muster the evidence which he alleges support the facts he alleged in his complaint, plaintiff is confident that he can persuade a trier of fact that he is entitled to relief on several couts of his complaint.

But the defendants now seek to have this Honorable Court deny plaintiff's reasonable, timely request to depose defendant Russo, the superintendent of the Souza-Baranowski Correctional

-1-

Center ("SBCC") in Shirley, MA. Meanwhile, the defense has moved to depose the plaintiff and he has acquiesced in this regard, notifying attorney Saltzman to pick the time and place. With his minimal practical knowledge of the rules which govern the procedure for garnering evidence through the discovery process, plaintiff has filed resquests for interrogatories and admissions directed at other defendants. Defense counsel has objected to the manner in which this was done.

To date, plaintiff has received his requested interrogatories/admissions and a photo-stat copy of photographs he had requested. (They arrived in miniature and plaintiff asked for enlargements of a few, which counsel obliged.)

The evidence-gathering process here is moving at a snail's pace. Defense counsel asked for three extensions to respond to basic interrogatories concerning the fooced cell extraction in which plaintiff suffered serious injuries to his head. Now as plaintiff directs his attention toward defendant Russo, who is responsible for holding him in SBCC's Special Management Unit ("SMU") as a presumedly innocent pretrial detainee for approximately six (6) months under conditions which plaintiff alleges to have been illegally punitive[1] since he was deprived of all of the things which are traditionally taken as a disciplinary sanction after guilty findings of misconduct: loss of radio and/or television, loss of visits, loss of phone, etc. See 103 CMR 430.

As the defense has pointed out, a Superior Court justice (Botsford, J.) has entered final judgment in a separate case

---

[1] The SMU is governed by 103 CMR 423; §423.09 governs the conditions which inmates "awaiting action" there (i.e. those not serving sanctions) ought to be held to. They include property such as TVs, radio, access to canteen food items, etc.

-3-

declaring that SMU inmates are in fact entitled to the items listed in 103 CMR 423.09 and the DOC's practice of withholding canteen items (such as food, etc.) and televisions violated the regulation. Foxworth v. Maloney, slip op. attached to Opposition.

The defendants have forwarded no grounds to deny the deposition of defendant Russo. Plaintiff, who (as you'll recall) was a presumedly innocent pretrial detainee, languished in the SMU under illegal conditions for half of a year purportedly awaiting action on disciplinary charges. Foxworth says he was supposed to be treated non-punitively, as does 103 CMR 902; by no stretch of the imagination can Russo's deprivation of canteen, television, radio, visits with plaintiff's child[2/], etc., be brushed off as a legitimate penological concern.[3/]

Russo's testimony as to why she did what she did will be crucial at trial, currently scheduled for January 2, 2007, since motions by both parties pursuant to Fed. R. Civ. P. 56 have been denied.

Should plaintiff be forced to try to extract the necessary information out of Russo via correspondence in the short time which remains before trial? At the very least, the Court should order expedited written depositions. (Counsel for the defense sent the response to interrogatories via e-mail.) A phone deposition would suffice (i.e. conference call). Plaintiff is willing to work to make this case come to a resolution as scheduled.

---

[2/] Defendant Russo's SMU is the only one in the commonwealth which denies visits with children---and these are no-contact visits to begin with. As can be seen in a letter to plaintiff from Russo's deputy, once plaintiff became convicted, he was allowed the long sought visits with his little girl. EX.A, p.8-

[3/] Getting plaintiff to court and securing the institution were the only legitimate concerns. Moreover, only the Director of Security is to deem which canteen items should be banned in SMU. See §423.09(a)(k).

The defendants call <u>Foxworth</u> inapposite. This could hardly be further from the truth. *at the time* That case squarely decided that inmates in the DOC's SMUs were supposed to be living under substantially better conditions than they were held under. As a detainee, this sort of sub-standard, quasi-punitive arrangement spells **punishment** prior to trial. And it is clearly established that "[t]he Federal Constitution precludes the imposition of conditions of pretrial detention that amount to punishment of the detainee." See **Defendants' Opposition** at pp.2-3, citing <u>Bell v. Wolfish</u>, 441 U.S. 520. 535-537 (1979); <u>accord</u> <u>O'Connor v. Huard</u>, 117 F.3d 12, 16 (1st Cir. 1997)(requiring a legitimate governmental objective for apparently punitive conditions, and demanding that the government's response not be excessive).

Plaintiff has moved for reconsideration of his Rule 56 motion based on <u>Foxworth</u>, which he argues is <u>prima facie</u> evidence of punitive conditions in SMU as well as a basis for <u>res judicata</u> (or collateral estoppel).

Finally, the defense has asked this Court to dismiss the issue raised in his Amended Complaint as to whether Article 12 of the Massachusetts Declaration of Rights precludes housing inmates/detainees at the State prison in Walpole who have not been "...both indict(ed) and tri(ed) by (a) jury." <u>Id.</u>

This is an issue which oddly evaded review in <u>MacDougall v. Commonwealth</u>, 447 Mass. 505 (2006)[4], but which (in this instant case) was argued under Rule 56 and is scheduled for trial soon.

---

[4] The SJC declared the argument moot since MacDougall was no longer at Walpole, but this is an issue which (as we see here) is capable of evading review. Also, MacDougall was sure to return to Walpole, as he has. He is there now.

-5-

In MacDougall, the Supreme Judicial Court was faced with the same argument presented here. They left it open to civil litigation, which they clearly saw as the proper forum. Id. at 512 n. 11. That issue, properly stated, is as follows: since art. 12 prohibits subjecting any body who has not been both indicted and tried by a jury to an "infamous punishment", and the matter of Brown v. Commissioner of Correction, 394 Mass. 89 (1985) stated that confinement at Walpole is an infamous punishment, is it permissible to continue housing pretrial detainees (who have yet to be tried by a jury---or waive the right) at Walpole?

The entire matter springs from the plaintiff's pretrial transfer absent due process to Walpole State Prison on September 29, 2004. Actually, they did conduct some sort of process[5/], just not one which gave plaintiff a chance to be heard. See G.L. c. 276, §52A. Plaintiff objected vehemently from the outset that detainees could not be housed among the convicts at Walpole. See **EXHIBIT A**, pp. 1-4. In Jones v. Robbins, 74 Mass. 329 (1857), the SJC decided that the State prison is an "infamous punishment" as imagined by art. 12; Brown merely reiterated the issue in deciding that Walpole is the State prison for purposes of art. 12.

On the authority of Guiney v. Roache, 833 F.2d 1079 (1st Cir. 1987), the defense would have this Court believe that the present "unique" question of law is better left to a state court. But

---

[5/] As plaintiff pointed out in his motion to strike portions of a DOC affidavit, every time he was accused of wrongdoing at any of the county jails to which he had been illegally transferred, the result was never a disciplinary process, but yet another transfer to yet another county without any procedural action taken as the law requires.

Guiney dealt with an issue which had in no respect been authoritatively construed by the state court. At bar we have Jones and Brown. For instance, art. 12 prohibits subjecting anyone to an infamous punishment unless s/he has first been "...both indict(ed) and tri(ed) by (a) jury." Brown is a man who was not indicted, hence he could not be housed at Walpole; plaintiff is a man who had not (at the time) gone to trial, ergo he should not have been held at Walpole. Brown's holding implicitly bars untried detainees from the infamy that is Walpole State Prison.[6]

The defense motion to move this issue to another court should be denied. This Court is thoroughly familiar with the facts of this matter and the case is well-advanced. Both Brown and Jones[7] are authorities for plaintiff's position. Guiney's reasoning should not be stretched to include an issue such as the one at bar.

**WHEREFORE**, the plaintiff should be allowed to depose Russo; the art. 12 issue should stay in this Court, and trial should not be delayed.

RESPECTFULLY SUBMITTED,

/s/Brendan McGuinness
BRENDAN M. McGUINNESS
MCI-CEDAR JUNCTION
P.O. BOX 100
SOUTH WALPOLE, MA 02071

Dated: November 9, 2006

cc. William Saltzman, Esq.
    file.

---

[6] The inmate in Brown had in fact been convicted and was legally subject to punishment, yet he could not go to Walpole. Plaintiff had been convicted of nothing; he was not subject to punishment, yet he was housed at Walpole. To uphold this mind-boggling happenstance would be perverse.

[7] In Brown, the DOC conceded that the rule of Jones applies to detainees. Id. at    .




To: Bender 8/1/05 D.O.U. Appeal    EX. A    (1)

JOHN A. LUONGO, JR.
DEPUTY SUPERINTENDENT,
MCI-CEDAR JUNCTION @ WALPOLE.

RE: M.G.L.A. c. 276, section 52A, etcetera.

Dear Mr. Luongo:
  I am in receipt of your 10/13/04 reply to my 10/1/04 letter to the superintendent, in which I complained that my rights are being violated by virtue of the fact that I am being held at the state's maximum-security prison in Walpole as a pre-trial detainee. Specifically, I alleged that I was transferred here to Walpole from the Norfolk County Correctional Facility (NCCF) in Dedham absent an order of the superior court (as is required by M.G.L.A. c. 276, section 52A).
  In your reply, you state that the Office of the District Attorney has, in fact, sought and obtained authorization to remove me from NCCF and move me to "a correctional institution of the commonwealth". As I am without evidence of the veracity, vel non, of your claim in that regard, I am going to take you at your word.
  My problem, Mr. Luongo, is that the question of whether I may lawfully be held at the State prison in Walpole requires closer scrutiny. My research has led me to the conclusion that the Constitution of Massachusetts (specifically the First Part, article 12) forbids holding pre-trial detainees at Walpole. I'd like you to take a few minutes to carefully consider your opinion on the matter, and I'll tell you why: in our state, employees of the government such as yourself enjoy a qualified immunity to any law suits seeking monetary damages for acts or omissions you are alleged to have committed in the course of performing your duties. The immunity does not, however, apply to your acts or omissions when you commit them in violation of "clearly established" laws. As I will explain below, the conclusion I have reached (i.e. that pre-trial detainees may not be housed at Walpole) is a clear and long-standing legal axiom in our state.

  Article 12 states, in pertinent part, that "the legislature shall not make any law, that shall subject any person to a capital or infamous punishment...without trial by jury." This has been construed by the Supreme Judicial Court as prohibiting the confinement of men at Walpole who have not been indicted or had an opportunity to waive indictment. See Brown v. Commissioner of Correction, 394 Mass. 89 (1985)(attached, for your consideration and convenience).
  In Brown, the Department of Correction defended against a legal challenge by an inmate who was transferred to Walpole in the course of serving a sentence to MCI-Concord. Brown argued that he could not be placed or retained in Walpole whereas his

-1 of 3-



indeterminate sentence to MCI-Concord was imposed at the district court level and he was never indicted. The Superior Court ruled in favor of Brown, stating that the commissioner "could not transfer an unindicted prisoner to MCI Walpole, pursuant to G.L. c. 127, section 97". See Brown, 394 Mass. at 90.

You will notice that G.L. c. 127, sec. 97 (hereafter "sec. 97") and G.L. c. 276, sec. 52A (hereafter "sec. 52A") both allow the commissioner of correction to place prisoners in her care and custody in "correctional institutions".

| Section 97 | Section 52A |
|---|---|
| "commissioner may transfer any sentenced prisoner from one correctional institution of the commonwealth to another" | "persons (whom) have been previously incarcerated in (an MCI facility)...may... be removed by the commissioner of correction to a correctional institution of the commonwealth". |

Nevertheless, the SJC held that sec. 97 provided no authority for the commissioner to place Brown in Walpole. In so doing, they quoted the lower court's rationale:

> "though the differences between confinement at Walpole and at other correctional institutions may have diminished, Walpole, as a practical matter is the maximum-security prison in the state which houses the most serious and dangerous criminals".
>
> Brown, supra at 94.

I have not yet been convicted, yet I am being housed here in Walpole. Walpole is a place where people are sentenced for crimes of infamy, as that has been defined by the Brown Court in relation to Article 12. Article 12, you will remember, does not split hairs; it clearly prohibits infamous punishment absent a trial by jury. I have yet to be brought to trial; I am what you would call "an accused criminal defendant".

The DOC in Brown used this term: an accused criminal defendant. "The commissioner contends that the Jones rule (see Jones v. Robbins, 8 Gray 329 (1857)) should be confined 'to the rights and protections of an accused criminal defendant." Brown, supra at 92. In other words, the DOC acknowledged in Brown that Jones applies squarely to pre-trial detainees; the point was beyond cavil.

Oh, have I not explained the Jones rule? Let me back up a bit then. In 1857, the SJC decided that a person cannot be held



*in state prison*

at ~~Walpole~~ absent an indictment and subsequent conviction. The Court based its decision on Article 12, coming "to a strong conclusion of the general understanding of the legislators and jurists of Massachusetts, that punishment in the state prison is an infamous punishment, and cannot be imposed without both indictment and trial by jury". Jones, supra at 349.

Mr. Luongo, the prisoner in the Brown case argued that the rule of Jones applied to him because Walpole is the State prison and he was never indicted. The SJC agreed completely. They ruled that his confinement at Walpole was illegal because being sent to Walpole without indictment or trial by jury is in fact infamous punishment as set forth in Article 12.

Sir, to sum up, Article 12 forbids the state from imposing infamous punishment on unindicted, non-tried persons; the SJC ruled, before the civil war, that punishment in the State prison is such an infamous penalty; M.G.L. c. 125, sec. 1(o) as cited in Brown declares Walpole to be the State prison. As in Brown, my "confinement without indictment at MCI Walpole was in violation of art. 12." Id. at 92. (Footnote 7 recognizes the name change of Walpole to Cedar Junction.)

I want to be removed from Walpole and placed in one of the correctional institutions where pre-trial detainees enjoy more freedom. My behavior does not warrant Walpole placement.

In case you are thinking that my confinement here at Walpole is not technically "punishment" and, therefore, the DOC might be able to play semantics if this is forced to litigation, consider this: the DOC currently houses pre-trial/ex-felon detainees at MCI-Concord, Old Colony Correctional Center in Bridgewater and MCI-Norfolk. These are the ones I'm aware of. (Oh! Souza Baranoski Correctional Center in Shirley as well.) So why was it that I was sent directly to Walpole? If there are so many less harsh institutions to house sec. 52A prisoners, the decision to send me to Walpole speaks for itself.

The law requires me to exhaust my administrative remedies at this level prior to filing an action seeking relief in court. My grounds for relief are persuasive; any failure to act on your part at this juncture will merely exacerbate the injury and place me in the position of plaintiff. I have not been a problem for your staff; it is within your power to get me out of here. I do hope you will see reason. The law is clear.

SINCERELY,

*Brendan M. McGuinness*
Brendan M. McGuinness
A-91830  Orientation Unit
Cell #210                                    DATE: October 18th, 2004.

cc. Kathleen Dennehy, Comm'r of Correction;
    Michael Bellotti, Sheriff of Norfolk County;
    John Gibbons, Attorney at Law;
    File.



D.D.U.
Appeal to Bender 8/1/05

EX. A

④

TO: KATHLEEN M. DENNEHY, COMMISSIONER OF CORRECTION
FROM: BRENDAN M. McGUINNESS A-91830
RE: M.G.L. c.276, § 52A
DATE: OCTOBER 31st, 2004.

Dear Mrs. Dennehy;
　　I am writing to you regarding my detention at the Souza-Baranowski Correctional Center (SBCC) in Shirley. As you can see (in the attached letter which I had planned to send to the Deputy Superintendent of MCI-Cedar Junction @ Walpole), I am a pre-trial detainee. I have served time in a State Prison in the past, so it would appear that somebody requested and obtained permission per M.G.L. c. 276, § 52A, to transfer me into your custody.
　　On 9/29/04, I was taken from the jail in Dedham directly to the State Prison at Walpole. Why is that? I have had nothing but trouble over the years there, yet your staff always sends me to that shit-hole. And it is a shit-hole; the better part of the administration there has a grudge of one form or another against me.
　　So now I'm in SBCC's Special Management Unit (SMU). There is an illogical, pointless rule here which declares that visits are limited to one adult. In other words, no children. I have a 16-month-old daughter; her mother works very hard to keep things on track while I'm here trying to make bail. She cannot come to see me now because we have nobody to watch the baby. 103 CMR 423 (the SMU regulations) states that limits such as this may only be put upon visits when there is a "substantial need".
　　I am being held in a maximum-security prison under conditions of confinement which are arguably more harsh than those which you impose upon convicted prisoners who are serving actual sanctions such as DDU, or DSU (not a sanction, but a condition requiring a whole range of due process prior to putting me there).
　　I feel that you are treating me like a convicted prisoner. I am familiar with the law; there is to be a distinction drawn between pre-trial conditions of confinement and those which rise from an actual conviction. You have blurred the lines so much as to render the differences inconsequential here at SBCC and up at Walpole.
　　As I've outlined in the attached letter, pre-trial detainees cannot be held legally in a maximum-security prison. Such confinement is literally infamous punishment and the law prohibits the infliction thereof on those who have not been convicted. (Even the commissioner conceded in <u>Brown</u> v. <u>Comm'r of Correction</u>, 394 Mass. 89, 92 [1985] that "an accused criminal defendant" enjoyed protection under the rule of <u>Jones</u> v. <u>Robbinson</u>, 8 Gray 329 [1857]. The Jones rule says nobody goes to a maximum-security prison if he hasn't been indicted and convicted of that offense.)
　　I want to see my baby; I should not have been turned over to your custody. Please send me back to the sheriff of Norfolk County.

SUBMITTED WITH ALL DUE RESPECT;

_Brendan M. McGuinness_
Brendan M. McGuinness
SMU/ L-3 #27

Did not get copy

Copies to: ~~Mike Bellotti,~~
~~Sheriff,~~
John Gibbons, Esq.



EX.A (6)

TO: LOIS RUSSO, SUPERINTENDENT OF SOUZA-BARANOWSKI
FROM: BRENDAN M. MCGUINNESS A91830
RE: SPECIAL MANAGEMENT UNIT (SMU) CONDITIONS
DATE: NOVEMBER 22nd, 2004.

Dear Mrs. Russo:
    I am writing to complain to you about the conditions under which I am living in the SMU here at SBCC. I am being held here pursuant to M.G.L.A. c. 276, §52A; I am a pre-trial detainee. In other words, I have not yet been found guilty of a crime. Until I am found guilty, I cannot be punished. Innocent until proven guilty.
    So I am not to be punished as a general rule for the case I am awaiting trial on. Now, I am being held on "Awaiting Action" status in your SMU; I have been here since 10/18/04. AA status, I was just informed, is supposed to be non-punitive as well. See 103 CMR 902 ("shall not be punitive").

    Specific to my case, I have a problem with the conditions I am being forced to live under. The law says that I am not to be subjected to punishment as a pre-trial detainee, and your regulations (which have the force of law) mandate that the SMU shall not operate in a punitive way. I see it as clear and irrefutable that SBCC is a super-maximum security prison; every aspect of confinement here was designed to be punitive. And why not? After all, it is convicted felons of the very worst sort who are held here.
    But now the DOC has taken to housing pre-trial detainees as well as convicts at SBCC. So how are you supposed to divorce the punitive goals and character of SBCC from a pre-trial detainee's confinement here? As far as I can see, you have not succeeded or haven't been trying.
    When a court reviews a claim that conditions of confinement are punitive, it will look to the purpose that the conditions are meant to serve. If the goal is legitimate, courts will usually defer to the DOC. See Love v. Sheahan, 156 F. Supp. 2d 749 (N.D. Ill. 2001). You should note, however, that the traditional goals of confinement in a SMU-type unit all deal with deterrence, discipline, rehabilitation, etc. In other words, guys like me (who have not yet been found guilty) are not subject to this sort of rationale. See also Inmates of Suffolk County v. Einstadt. (I do not have the citation for Einstadt, a federal case from the 1970s; it states that pre-trial conditions must be better than those attendant upon conviction.)

    I live in a SMU with 64 cells. Your satallite law library can only be used by one man at a time; it is only to be used on the 3 to 11pm shift, and they only use it from 6pm to 9pm. That allows 21 hours of access per week for 64 men. You do the math. I am pre-trial. I just had to fire my lawyer because my access to



the courts is such that I can only file motions before the judge to address any of this stuff if I represent myself. Talk about a catch-22!

Furthermore, I have been nursing a couple of broken bones in my right hand since 10/17/04. It took your medical staff 26 days to get me to surgery. Then they cut me off of pain killers after only 7 days; the surgeon recommended 21 days. At the time they were stopped, my finger was severely infected from the pins the surgeon put in my hand. Please note that the surgery ignored another broken bone in my hand which is snapped clear as day on the x-ray.

I have been in your SMU since 10/18/04 and I see evidence of punishment all around me. To list a few:

1.) while the regulations authorize you to let SMU inmates get canteen and have a TV or radio, your rule book disallows TVs and stipulates that canteen orders be confined to cosmetics, stationary, and other non-food items. Why? This is punishment. Why can't I have a cup of coffee in the morning like all the other convicts here at SBCC. OH yeah, I'm not a convict. So my conditions should by law be better than theirs. Why does your rule book disallow us televisions in SMU? 103 CMR 423 says you could give them to us if you want; your denial thereof can only be viewed as punishment. I have a 16-month-old daughter whom you will not allow me to see. I want to know what the legitimate penological justification for this is. The visits here are non-contact and there are two (2) phones on th visitors side. Why do you limit visits to one adult? You only allow three (3) pieces of reading material in SMU; every where else it is 10. Why else except to punish me would you place such an arbitrary limit on my privileges?

For all these reasons and others I cannot add because my time slot in the satallite library is over, I ask that I be moved to a jail or prison that is more suited to non-punishment. You are punishing me without due process and ruining my chances of getting a fair trial. My criminal case came to a stand-still the day I got here. Please discuss this with your legal department.
Sincerely,

Brendan M. McGuinness
SMU/L-3 #27    A91830

cc. file.




# The Commonwealth of Massachusetts
## Executive Office of Public Safety

### Department of Correction
### Souza-Baranowski Correctional Center

**Mitt Romney**
Governor
**Kerry Healy**
Lieutenant Governor
**Edward A. Flynn**
Secretary

P. O. Box 8000
Shirley, Massachusetts 01464

**Kathleen M. Dennehy**
Commissioner
**James R. Bender**
Deputy Commissioner
**Lois Russo**
Superintendent

October 3, 2005

Ms. Michelle Fidler
93 F Martha Drive
Rockland, MA 02370

RE: SPECIAL VISIT – Brendan McGuiness, A-91830

Dear Ms. Fidler:

This is in response to your letter to me regarding a special visit with inmate Brendan McGuiness, A-91830. I am approving your request to visit on Sunday, October 9, 2005. This visit will take place in the non-contact visiting room between the hours of 10:00 a.m. and 11:00 a.m. I will advise appropriate staff of my decision.

I trust this addresses your concerns.

Sincerely,

Duane MacEachern, Deputy Superintendent

DM/bs

cc: Visit Processor
    Outer Control
    SMU Lt.
    7x3 Shift Commander
    Inmate file
    file

